UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ,<br><br>    Plaintiff,<br><br> v.<br><br>STATE OF LIBYA,<br><br>    Defendant. | Case No. 22-cv-864 (JMC) |

## MEMORANDUM OPINION

Plaintiff Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak"), a Turkish company, prevailed in a 2019 arbitration against Defendant, the State of Libya ("Libya"). ECF 21 ¶¶ 26–30.[1] Etrak seeks to confirm the arbitration award. ECF 28. Libya opposes, ECF 29, and asks this Court to stay the case, ECF 22. Because the Court has no grounds to either stay this case or decline to confirm the award, the Court will **DENY** Libya's motion to stay and **GRANT** Etrak's petition to confirm the arbitration award.

## I. BACKGROUND

The following facts are undisputed except where noted. Beginning in the 1980s, Etrak—a Turkish company—carried out a number of public construction projects for Libya. ECF 21 ¶¶ 3, 16. When Libya failed to pay Etrak for its services, Etrak sued in Libyan court. *Id.* ¶¶ 16, 18. In October 2012, the Court of First Instance in Beida, Libya ordered the state to pay Etrak LYD (Libyan dinar) 1,906,360.23, plus interest, as well as LYD 1,000,000 in damages. *Id.* ¶ 18.

---

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this opinion, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

In December 2013, Etrak and Libya entered into a settlement agreement. *Id.* ¶ 19. Etrak settled its claims against Libya in return for payment of LYD 5,420,308.707, and the parties agreed to abandon further court proceedings relating to the Libyan court's award. *Id.* It is Libya's position that the settlement agreement was invalid because the Undersecretary of the Ministry of Finance, who signed the agreement, did not have authority to do so. *Id.*

Libya failed to pay Etrak in violation of the settlement agreement. *Id.* ¶ 20. Etrak initiated arbitration proceedings pursuant to Libya and Turkey's bilateral investment protection treaty (the "BIT"). *Id.* ¶¶ 21, 23. The BIT requires Libya to accord Turkish investors "fair and equitable treatment" and settle disputes "in good faith," and provides for arbitration if those disputes cannot be resolved. *Id.* ¶ 22; ECF 1-4 at 44. Etrak submitted its request for arbitration in August 2016, and the parties agreed to Geneva, Switzerland as the legal seat of the arbitration. ECF 21 ¶¶ 23–24.

While arbitral proceedings were pending, Libya returned to the Court of First Instance in Beida and appealed its 2012 judgment. *Id.* ¶ 25. In January 2018, the Libyan appellate court overturned the judgment. ECF 1-7 at 24. In March 2018, Libya also initiated proceedings before the Court of First Instance in Tripoli, Libya, asking that the settlement agreement be declared invalid. ECF 21 ¶ 25.

The arbitral tribunal issued an award for Etrak in July 2019. *Id.* ¶¶ 26–30; *see* ECF 1-4. First, the tribunal found that the settlement agreement was valid under Libyan law because the finance minister who signed the agreement had apparent authority to do so. ECF 1-4 at 32–33 ¶¶ 127, 131. Libya argued that the agreement's validity was at issue in the pending Tripoli proceedings—but the tribunal found that made no difference. Rather, the tribunal was persuaded "as a matter of fact [that] the Settlement Agreement is valid under Libyan law. . . . [and] this

conclusion is not affected by the fact that Respondent argues otherwise before a Libyan court." *Id.* at 37 ¶ 152. Second, the tribunal determined that both the construction projects Etrak undertook in the 1980s and the settlement agreement were "investments" or "claim[s] to money related to an investment" within the meaning of the BIT. *Id.* at 39–40 ¶¶ 163, 167. And third, the tribunal concluded that Libya "failed to accord [Etrak]'s investment fair and equitable treatment" in violation of the BIT by (1) "violat[ing] [Etrak's] legitimate expectation with respect to the specific representations made prior to the conclusion of, and enshrined in, the Settlement Agreement," *id.* at 68 ¶ 313, when it failed to pay Etrak and appealed the Libyan court's judgment, *id.* at 71 ¶ 334; (2) breaching the Settlement Agreement itself, *id.* at 72 ¶ 335; and (3) "act[ing] arbitrarily and inconsistently" in its dealings with Etrak, *id.* at 74 ¶ 349. The tribunal awarded Etrak $21,865,554 USD in damages, plus interest and arbitration costs. *Id.* at 91–92.

At the time the tribunal rendered its award, none of the parties involved—including the tribunal and the lawyers representing Libya during the arbitration—were aware that the Tripoli court had issued an opinion declaring the settlement agreement invalid. *See* ECF 22-1 ¶ 10. The Tripoli court had issued its decision in May 2019, *see* ECF 22 at 6; ECF 22-1 at 20, but "due to the security situation in Libya at the time due to the Second Libyan Civil War, neither counsel . . . nor the Tribunal were aware." ECF 22 at 6. Etrak received notification of the Tripoli judgment on September 20, 2019. *See* ECF 1-7 at 32.

In September 2019, Libya appealed the arbitral award to the Swiss Federal Court, arguing that the tribunal lacked jurisdiction and the award should be set aside. ECF 21 ¶ 31. In November 2020, the Swiss court found for Etrak. *Id.* The court considered whether the Tripoli judgment undermined the arbitral award and concluded that it did not. *See* ECF 1-7 at 30. Under Swiss law, "[i]f an international arbitral tribunal seated in Switzerland is the first court, i.e. if the proceedings

were first brought before it, the existence of parallel proceedings before a state court . . . (in Switzerland or abroad) need not be taken into account." *Id.* The arbitration began in August 2016, while the Tripoli proceedings did not begin until March 2018. *See id.* Libya argued that the arbitral tribunal was nonetheless bound by the Tripoli decision as a matter of *res judicata*, but as the Swiss court explained, "a decision rendered abroad will not be recognized in Switzerland if one party proves that a dispute between the same parties on the same subject matter was first instituted in Switzerland, even if the Swiss proceedings last longer than the foreign proceedings." *Id.* at 32.

Over the next few years, Etrak sued in Turkey, Germany, France, and Curaçao to confirm the arbitration award. ECF 22-1 at 3–4; ECF 26 at 8–9. The German court declined to recognize the award because it found the settlement agreement was not an "investment" within the meaning of the BIT. *See* ECF 22-1 at 42. Etrak appealed that decision and lost. *See id.* at 60–61. A French court declared the award enforceable in France. *See* ECF 26 at 14–15. Libya appealed to the Paris Court of Appeals, which affirmed the French court's decision. *See* ECF 34-2 at 34. As of the parties' most recent filings, confirmation proceedings in Turkey and Curaçao remain ongoing. *See* ECF 22-1 at 3; ECF 26-1 at 2.

Etrak filed the instant case asking this Court to confirm the arbitration award. ECF 1. Libya moved to stay the case due to the ongoing confirmation proceedings abroad. ECF 22. Etrak moved to confirm the arbitration award. ECF 28. Both motions are fully briefed and ripe for decision.

## II.   LEGAL STANDARD

The parties agree that this case is governed by the New York Convention, "a multilateral treaty that, with exceptions, obligates participating countries to honor international commercial arbitration agreements and to recognize and enforce arbitral awards rendered pursuant to such agreements." *Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281, 283

(D.C. Cir. 2016); *see* ECF 28-1 at 11–12; ECF 29 at 1. Congress incorporated the Convention in the Federal Arbitration Act (FAA) at 9 U.S.C. §§ 201–208. "Consistent with the 'emphatic federal policy in favor of arbitral dispute resolution' recognized by the Supreme Court as 'appl[ying] with special force in the field of international commerce,' the FAA affords the district court little discretion in refusing or deferring enforcement of foreign arbitral awards." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). The court must confirm the award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. The party opposing confirmation has the "heavy burden" of establishing that one of the grounds for denying confirmation applies. *Chevron Corp. v. Republic of Ecuador*, 949 F. Supp. 2d 57, 64 (D.D.C. 2013), *aff'd*, 795 F.3d 200 (D.C. Cir. 2015).

## III.  JURISDICTION

Neither party challenges this Court's subject matter jurisdiction, *see* ECF 28; ECF 29, but the Court must nevertheless assure itself that jurisdiction is proper, *see Verlinden B.V. v. Cent. Bank of Nigeria*, 461 U.S. 480, 493–94 (1983). Although foreign states are generally immune from suit in the United States under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1604, this Court has subject matter jurisdiction over this dispute under the FSIA's arbitration exception, 28 U.S.C. § 1605(a)(6).

The arbitration exception requires (1) an arbitration agreement made by a foreign state either "with" or "for the benefit of" a private party, (2) an arbitration award, and (3) a treaty that potentially governs enforcement of the award. *NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100–01 (D.C. Cir. 2024). The BIT satisfies the first requirement. In

*NextEra*, the D.C. Circuit held that "an arbitration provision in an investment treaty can . . . constitute an agreement 'for the benefit' of a private party." 112 F.4th at 1101. In signing the BIT, Libya and Turkey agreed that "[d]isputes between one of the Contracting Parties and an investor of the other Contracting Party, in connection with his investment," can be submitted to international arbitration. ECF 1-5 at 14–15. "That agreement is 'for the benefit' of the signatory's investors, and therefore satisfies the FSIA's arbitration exception." *NextEra Energy Glob. Holdings B.V.*, 112 F.4th at 1103.

As to the arbitration exception's second requirement, there is no dispute that Etrak holds an authentic arbitration award. *See* ECF 1-4; ECF 21 ¶¶ 26–30. And as to the third requirement, the New York Convention is a treaty that governs enforcement of the arbitration award. "[T]he New York Convention 'is exactly the sort of treaty Congress intended to include in the arbitration exception.'" *Creighton Ltd. v. Gov't of State of Qatar*, 181 F.3d 118, 123–24 (D.C. Cir. 1999) (quoting *Cargill Int'l S.A. v. M/T Pavel Dybenko*, 991 F.2d 1012, 1018 (2d Cir. 1993)). An arbitral award falls under the Convention if it "aris[es] out of a legal relationship, whether contractual or not, which is considered as commercial." 9 U.S.C. § 202. In *Zhongshan Fucheng Industrial Investment Co. LTD v. Federal Republic of Nigeria*, 112 F.4th 1054 (D.C. Cir. 2024), the D.C. Circuit held that an investment treaty between China and Nigeria created a legal relationship between Nigeria and a Chinese investor because the treaty "confer[s] specified benefits upon investors . . . [and] expressly guarantees Chinese investors protection of their investments and fair and equal treatment." *Id.* at 1062–63. The same is true here: Etrak and Libya share a legal relationship because Libya owes Turkish investors legal duties under the BIT. *Compare* ECF 1-5 at 11–12, 14–15 (requiring that Libya accord Turkish investors "fair and equitable treatment and full protection," treat Turkish investors as favorably as its own, and arbitrate disputes with those

investors subject to certain requirements and processes); *with Zhongshan Fucheng Indus. Inv. Co. LTD*, 112 F.4th at 1062 (same). The legal relationship between Etrak and Libya is commercial in nature because, as in *Zhongshan*, the BIT "is expressly designed to promote commerce." 112 F.4th at 1063. The BIT's stated goals are to "promote greater economic cooperation" between the two countries and "stimulate the flow of capital and technology and economic development" in both Libya and Turkey." ECF 1-5 at 10. And the BIT expressly recognizes that "fair and equitable treatment of investment is desirable in order to maintain a stable framework for investment and maximum effective utilization of economic resources." *Id.*; *see Zhongshan Fucheng Indus. Inv. Co. LTD*, 112 F.4th at 1063–64 (recounting investment treaty's similar goals, and noting that the phrase "considered as commercial" covers "anything with a connection to commerce"). Because the arbitration award arises out of Etrak and Libya's legal relationship, which is "considered as commercial," the New York Convention governs its enforcement. 9 U.S.C. § 202.

In sum: the BIT is an arbitration agreement "for the benefit of" private parties; Etrak holds an arbitration award; and the New York Convention governs enforcement of the award. The Court therefore has subject matter jurisdiction under the arbitration exception to the FSIA. 28 U.S.C. § 1605(a)(6); *see NextEra Energy Glob. Holdings B.V.*, 112 F.4th at 1100–01.

Finally, Libya has not challenged this Court's personal jurisdiction and has therefore waived any objection to it. *See* Fed. R. Civ. P. 12(h)(1); *see also* 28 U.S.C. § 1330(b) ("Personal jurisdiction over a foreign state shall exist as to every claim for relief over which the district courts have jurisdiction under [the FSIA]," provided proper service has been made); ECF 17 (serving Libya).

7

**IV.    ANALYSIS**

Two motions are pending before the Court: Libya's motion to stay the case, ECF 22, and Etrak's motion to confirm the arbitration award, ECF 28. The Court assesses each in turn.

**A. Motion to Stay**

Libya urges this Court to stay the case in light of the pending confirmation proceedings in Turkey and Curaçao.[2] ECF 22 at 7. But "Article VI of the Convention limits the grounds for deferral of a decision on enforcement." *Belize Soc. Dev. Ltd.*, 668 F.3d at 727. This Court may stay enforcement proceedings "only if 'an application for the setting aside or suspension of the award has been made to a competent authority,' N.Y. Convention art. VI, 'of the country in which, or under the law of which, that award was made,' *id.* art. V(1)(e)." *Belize Soc. Dev. Ltd.*, 668 F.3d at 727. The parties agreed to Geneva as the legal seat of the arbitration, ECF 21 ¶ 24, and further agree that this award was made in, or under the law of, Switzerland, *see* ECF 26 at 12; ECF 27 at 2 n.1. So, this Court may stay the confirmation proceeding only if "an application for the setting aside or suspension of the award" is pending in a Swiss court. N.Y. Convention art. VI. And that is not the case. Libya appealed the award to the Swiss courts and lost. *See* ECF 22 at 9 (conceding that "Libya was unsuccessful in its set aside action in the Swiss courts"); ECF 1-7. With Swiss proceedings complete, there is no danger that the underlying arbitration award might be annulled or set aside—and hence no basis for a stay under Article VI. *See TermoRio S.A. E.S.P. v. Electranta S.P.*, 487 F.3d 928, 937 (D.C. Cir. 2007) (explaining that a petition to confirm an award may be filed in any jurisdiction in which the awardee seeks to enforce the award, but a request to annul an award must be filed in the seat of the arbitration). Parallel confirmation proceedings in other countries—here, Turkey and Curaçao—do not justify a stay: they have no effect on the validity of

---

[2] At the time of briefing, there were also ongoing proceedings in France. *See* ECF 22 at 7. The French appeal was resolved in March 2023. *See* ECF 34.

the underlying arbitration award and no preclusive effect on this Court. *See Belize Soc. Dev. Ltd.*, 668 F.3d at 730 (holding that pending confirmation proceeding abroad "has no preclusive effect on the district court's disposition of the petition to enforce pursuant to the FAA and the New York Convention").

Libya argues that this Court should stay the confirmation proceeding under the six-factor test established in *Europcar Italia, S.P.A. v. Maiellano Tours*, 156 F.3d 310 (2d Cir. 1998). *See* ECF 22 at 7–13. But the *Europcar* factors only come into play when there is a "parallel proceeding[] in the *originating* forum." *Id.* at 316 (emphasis added). Thus, the D.C. Circuit has applied the *Europcar* factors (or some version of them) when there is an ongoing proceeding in the originating forum (here, Switzerland), but not when there is merely an ongoing confirmation proceeding in another jurisdiction. *Compare LLC SPC Stileks v. Republic of Moldova*, 985 F.3d 871, 879–81 (D.C. Cir. 2021) (applying *Europcar* factors where pending proceedings remained ongoing in the originating jurisdiction, France), *with Belize Soc. Dev. Ltd.*, 668 F.3d at 729–34 (no *Europcar* analysis where there was no pending proceeding in the originating jurisdiction, England).[3]

In its reply brief, Libya takes a different tack. Libya contends that the New York Convention gives courts discretion to stay a case provided "an application for the setting aside or

---

[3] And even if the *Europcar* factors did apply, the Court would not find a stay to be appropriate. The first two factors carry the greatest weight: "(1) the general objectives of arbitration—the expeditious resolution of disputes and the avoidance of protracted and expensive litigation; [and] (2) the status of the foreign proceedings and estimated time for those proceedings to be resolved." *Europcar Italia, S.p.A.*, 156 F.3d at 317–18; *see LLC SPC Stileks*, 985 F.3d at 880 (holding that district court must consider the first two *Europcar* factors but expressing "doubt" that the entire six-factor balancing test is appropriate). Neither factor weighs in favor of a stay. A stay would not serve the general objectives of arbitration—it would only prolong this litigation unnecessarily, because the pending proceedings have no effect on the merits of the instant case. The status of the pending foreign proceedings is unclear. The Turkish case seems to be stalled at an early procedural stage, with no anticipated end date. *See* ECF 22-1 at 3. The Curaçaoan court granted Etrak's request for attachments in March 2020, and Etrak filed its recognition and enforcement action in June 2020. ECF 26 at 9. The record contains no further information about the Curaçao proceedings or when they might conclude. Because there is no estimated end date for either of the pending proceedings and staying this case would not serve the general objectives of arbitration, the Court would not grant Libya's motion to stay the case even if the *Europcar* test did apply.

9

suspension of the award *has been made* to a competent authority," N.Y. Convention art. VI (emphasis added)—and here, such an application "has been made" to the Swiss courts. ECF 27 at 2 (emphasis omitted). In other words, Libya posits that "Article VI lists a necessary condition precedent—the institution of a set aside proceeding—but does not restrict the Court's authority [to stay the case] to the pendency of that proceeding." *Id.* at 3.

"Issues may not be raised for the first time in a reply brief." *Rollins Env't Servs. (NJ) Inc. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991). But regardless, Libya's new argument cannot succeed. First, Libya points to no court that has embraced such an interpretation of Article VI. *See* ECF 27 at 1–3. In fact, many courts—both in this District and beyond—have indicated that Article VI empowers a court to stay a case only if there is an ongoing proceeding in the originating jurisdiction. *See, e.g.*, *Europcar Italia, S.p.A.*, 156 F.3d at 317 (explaining that district court may stay case under the New York Convention "where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside"); *Hulley Enterprises Ltd. v. Russian Fed'n*, 211 F. Supp. 3d 269, 286 (D.D.C. 2016) ("[T]he New York Convention expressly contemplates staying an action to confirm an arbitral award in the case of *ongoing* proceedings in the originating country to set aside the award." (emphasis added)); *Novenergia II - Energy & Env't (SCA) v. Kingdom of Spain*, No. 18-CV-1148, 2020 WL 417794, at *2 (D.D.C. Jan. 27, 2020) (similar). Second, Libya's interpretation of Article VI would seem to contradict the very purpose of these stays. As the *Europcar* court explained:

> One of the grounds for refusing to enforce an award under Article V(1)(e) is if the award "has been set aside or suspended by a competent authority of the country in which . . . the award was made." Thus, where a parallel proceeding is ongoing in the originating country and there is a possibility that the award will be set aside, a district court may be acting improvidently by enforcing the award prior to the completion of the foreign proceedings.

10

*Europcar Italia, S.p.A.*, 156 F.3d at 317. By contrast, if proceedings in the originating forum have concluded, there is no danger that the district court may be acting improvidently by enforcing an award. But Libya's interpretation of Article VI would mean that, even once a party seeking to set aside an arbitration award has lost, that losing party could always seek to stay confirmation proceedings merely because they had once—however long ago—initiated set-aside proceedings. That cannot be right.

The only remaining basis for a stay would be the Court's general discretion to manage its docket under *Landis v. North American Co.*, 299 U.S. 248 (1936). *See Belize Soc. Dev. Ltd.*, 668 F.3d at 731–32. But Libya has made no argument for such a stay, *see* ECF 22, and the Court sees no basis for one. *See Belize Soc. Dev. Ltd.*, 668 F.3d at 731–33 (holding that district court's stay violated the New York Convention and exceeded the bounds of its authority under *Landis*).

"A stay of confirmation should not be lightly granted lest it encourage abusive tactics by the party that lost in arbitration." *Europcar Italia, S.p.A.*, 156 F.3d at 317. Because Libya has presented no persuasive argument that a stay is warranted, the Court will deny its motion.

### B. Motion to Confirm the Arbitration Award

This Court must confirm Etrak's arbitration award "unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the [New York] Convention." 9 U.S.C. § 207. Libya's sole argument against confirmation rests on Article V(2)(b) of the Convention, which provides that a court may decline to confirm an award if "recognition or enforcement of the award would be contrary to the public policy of that country." N.Y. Convention art. V(2)(b); *see* ECF 29 at 6–9. Libya contends that confirming the award would run "contrary to the United States' public policy in favor of *res judicata*," because the Tripoli judgment invalidating

11

the settlement agreement was a final judgment on the merits that should have had *res judicata* effect in the arbitral proceeding. ECF 29 at 7–9.

The D.C. Circuit has emphasized that "courts should rely on the public policy exception only 'in clear-cut cases' where 'enforcement would violate the forum state's most basic notions of morality and justice.'" *Newco Ltd. v. Gov't of Belize*, 650 F. App'x 14, 16 (D.C. Cir. 2016) (quoting *TermoRio S.A. E.S.P.*, 487 F.3d at 938). The Circuit has therefore declined to apply the public policy exception even where parties alleged that an awardee's parent company had engaged in fraud, *see Enron Nigeria Power Holding, Ltd. v. Fed. Republic of Nigeria*, 844 F.3d 281 (D.C. Cir. 2016), or that confirming an award would undermine international comity, *see Newco Ltd.*, 650 F. App'x 14; *BCB Holdings Ltd. v. Gov't of Belize*, 650 F. App'x 17 (D.C. Cir. 2016). Libya can point to no court that has declined to enforce an arbitration award under the public policy exception on *res judicata* grounds. *See* ECF 29 at 7–9.

But even assuming that *res judicata* goes to our "most basic notions of morality and justice," confirming this award would not run contrary to *res judicata* principles. *Res judicata* bars a subsequent lawsuit "if there has been prior litigation (1) involving the same claims or cause of action, (2) between the same parties or their privies, and (3) there has been a final, valid judgment on the merits, (4) by a court of competent jurisdiction." *Porter v. Shah*, 606 F.3d 809, 813 (D.C. Cir. 2010) (quoting *Capitol Hill Grp. v. Pillsbury, Winthrop, Shaw, Pittman, LLC*, 569 F.3d 485, 490 (D.C. Cir. 2009)). But the claims in the Tripoli proceeding and the arbitration were not the same. The issue before the Tripoli court was whether the settlement agreement was invalid as a matter of Libyan law. *See* ECF 22-1 at 20–25. The question before the arbitral tribunal was a broader one: did Libya breach its duties to Etrak under the BIT? *See* ECF 1-4 at 74 ¶ 350. Breaching the settlement agreement was one element of that broader breach, but the tribunal also

found that Libya violated the BIT by "violating [Etrak's] legitimate expectation with respect to the specific representations made *prior to the conclusion of* . . . the Settlement Agreement," *id.* at 68 ¶ 313 (emphasis added), and "act[ing] arbitrarily and inconsistently" in its dealings with Etrak, *id.* at 74 ¶ 349. Those are questions the Tripoli court had no occasion to reach.

Further, the Swiss court has already considered—and rejected—this same *res judicata* argument. The court explained that, under Swiss law, "a decision rendered abroad will not be recognized in Switzerland if one party proves that a dispute between the same parties on the same subject matter was first instituted in Switzerland, even if the Swiss proceedings last longer than the foreign proceedings." ECF 1-7 at 32. Libya asks this Court to override the Swiss court's application of Swiss law and impose a different rule in its place. *See* ECF 29 at 9 ("When cases 'proceed in parallel, the first to reach judgment controls the other, through claim preclusion' (res judicata)." (quoting *Blair v. Equifax Check Servs.*, 181 F.3d 832, 838 (7th Cir. 1999))). But the parties agreed to Geneva as the legal seat of the arbitration, understanding that Swiss procedural law would govern any subsequent appeal. *See* ECF 21 ¶ 24. It does not violate our "most basic notions of morality and justice" to hold Libya to that agreement. *TermoRio S.A. E.S.P.*, 487 F.3d at 938 (quoting *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 305–06 (5th Cir. 2004)); *see id.* at 937 ("[A] primary State necessarily may set aside an award on grounds that are not consistent with the laws and policies of a secondary Contracting State. The Convention does not endorse a regime in which secondary States (in determining whether to enforce an award) routinely second-guess the judgment of a court in a primary State.").

In fact, by raising an argument here that has already been considered and rejected by another court, it is Libya—not Etrak—that seeks a second bite at the apple in violation of *res judicata* principles.[4]

Because confirming the arbitration award would not violate our "most basic notions of morality and justice," and Libya has identified no other grounds for refusal or deferral of recognition or enforcement of the award, the Court will grant Etrak's motion to confirm the arbitration award.

\* \* \*

For the foregoing reasons, Libya's motion to stay, ECF 22, is **DENIED**, and Etrak's motion to confirm the arbitration award, ECF 28, is **GRANTED**. A separate order accompanies this memorandum opinion.

The arbitral tribunal awarded Etrak "USD 21,865,554, including pre-award simple interest accrued at 4% per annum," plus "interest on the sum USD 21,865,554 awarded from the date of the notification of the Award at the rate of LIBOR + 3% per annum, compounded annually." ECF 1 ¶ 29. It further ordered that Libya "shall pay the costs of this Arbitration fixed by ICC Court at USD 542,600. Therefore, [Libya] shall pay USD 478,850 to [Etrak] as compensation for the costs already paid by [Etrak]." *Id.* Finally, Etrak requests "post-judgment interest pursuant to 28 U.S.C. § 1961, and the costs of this proceeding." *Id.* at 1. Accordingly, Etrak shall file a proposed order of judgment by **February 18, 2025** reflecting the exact monetary amount sought, including interest, consistent with the award and this opinion. Libya may respond to Etrak's proposed order

---

[4] Libya notes in passing that "the Award's infirmities have already been recognized abroad," pointing to the German court's decision declining to enforce the award. ECF 29 at 9–10. But Libya does not argue that the German decision has any preclusive effect on this Court. *See id.* Nor does it press the argument that prevailed in Germany—that the settlement agreement was not an "investment" within the meaning of the BIT. *See id.* Because the German court's decision has no preclusive effect here, it does not alter this Court's decision. *See BCB Holdings Ltd. v. Gov't of Belize*, 110 F. Supp. 3d 233, 246 (D.D.C. 2015), *aff'd*, 650 F. App'x 17 (D.C. Cir. 2016) ("Secondary jurisdictions may refuse to enforce an award, but these decisions do not preclude other jurisdictions from enforcing it.").

by **February 25, 2025** if it disagrees with Etrak's calculations, and Etrak's reply, if any, is due by **March 4, 2025**.

    **SO ORDERED.**

_____
JIA M. COBB
United States District Judge

Date: February 4, 2025