**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ,

Plaintiff,

-against-

THE STATE OF LIBYA,

Defendant.

Case No. 1:22-cv-00864-JMC

**PETITIONER'S OPPOSITION TO MOTION TO WITHDRAW**

Petitioner Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak" or "Petitioner"), through undersigned counsel, respectfully files this memorandum in opposition to counsel's Motion to Withdraw as Counsel for Defendant ("Motion") (R. Doc. 40). For the reasons set forth below, this Court should deny the Motion.

**INTRODUCTION**

Motions to Withdraw are generally uncontentious and unremarkable, but the instant Motion raises serious questions of propriety that the Court must address. Rather than a run-of-the-mill withdrawal, the request at issue here smacks of procedural gamesmanship intended to delay and avoid compliance with this Court's Judgment confirming the arbitral award that Etrak obtained against the State of Libya in 2019 (the "Award"), and which reflects sums that Libya has owed Etrak for decades. It must be denied.

Eversheds Sutherland, LLP, has consistently represented Libya throughout the dispute with Etrak: An arbitral tribunal issued the Award in an arbitration that Etrak initiated in 2016 against Libya. Eversheds represented Libya for the entirety of those proceedings. When Etrak sought confirmation and enforcement of its Award in Germany, Eversheds again represented Libya. When Etrak sought enforcement of its Award in France, Eversheds again represented Libya. Indeed, Eversheds has for the last five months consistently corresponded with Etrak's counsel in Turkey on Libya's behalf to arrange meetings between the parties regarding Etrak's Award. In this Court, too, of course, Eversheds has represented Libya. Yet, once Libya was faced with the prospect of responding to Etrak's post-judgment discovery requests in this case, Eversheds suddenly took the position before this Court that it was no longer representing Libya. It now asks this Court for permission to withdraw.

For the past ten years, Eversheds has represented (and continues to represent) Libya across the globe regarding Etrak's claims; that the identities of the particular Eversheds lawyers who have appeared before this Court differ from those who have appeared on Libya's behalf in other jurisdictions is of no moment.[1] Allowing Eversheds to withdraw now without implementing procedural safeguards to ensure that Etrak receives timely and substantive responses to its post-judgment discovery requests is an invitation to future international litigants to run the same gambit. As discussed below, the Court should not countenance such a result. Etrak asks the Court to deny the Motion to Withdraw outright, or to alternatively grant only partial relief that ensures Libya does not frustrate Etrak's efforts to obtain post-judgment discovery.

[1] Here, Mssrs. William T. O'Brien and John W. Lomas, Jr. of Eversheds' Washington, D.C. office have appeared on behalf of Libya and the instant Motion seeks their withdrawal. *See* ECF Nos. 18, 19, 40.

## BACKGROUND

Beginning in the 1980s, Etrak—a Turkish company—carried out a number of public construction projects for Libya. ECF 21 ¶¶ 3, 16. When Libya failed to pay Etrak for its services, Etrak sued in Libyan court. Id. ¶¶ 16, 18. In October 2012, the Court of First Instance in Beida, Libya ordered the state to pay Etrak LYD (Libyan dinar) 1,906,360.23, plus interest, as well as LYD 1,000,000 in damages. Id. ¶ 18.

In December 2013, Etrak and Libya entered into a settlement agreement. Id. ¶ 19. Etrak settled its claims against Libya in return for payment of LYD 5,420,308.707, and the parties agreed to abandon further court proceedings relating to the Libyan court's award. Id.

When Libya failed to pay Etrak in violation of the settlement agreement, Etrak initiated arbitration proceedings with the International Chamber of Commerce ("ICC") pursuant to Libya and Turkey's bilateral investment protection treaty (the "BIT"). Id. ¶¶ 20-21, 23. The BIT requires Libya to accord Turkish investors "fair and equitable treatment" and settle disputes "in good faith," and provides for arbitration if those disputes cannot be resolved. Id. ¶ 22; ECF 1-4 at 44. Etrak submitted its request for arbitration to the ICC in August 2016, and the parties agreed to Geneva, Switzerland as the legal seat of the arbitration. ECF 21 ¶¶ 23– 24. Eversheds represented Libya in the ICC proceedings. ECF 1-4, at 2.

While arbitral proceedings were pending, Libya returned to the Court of First Instance in Beida and appealed its 2012 judgment. Id. ¶ 25. In January 2018, the Libyan appellate court overturned the judgment. ECF 1-7 at 24. In March 2018, Libya also initiated proceedings before the Court of First Instance in Tripoli, Libya, asking that the settlement agreement be declared invalid. ECF 21 ¶ 25.

The ICC arbitral tribunal issued Etrak's Award in July 2019. Id. ¶¶ 26–30; see ECF 1-4. First, the tribunal found that the settlement agreement was valid under Libyan law because the finance minister who signed the agreement had apparent authority to do so. ECF 1-4 at 32–33 ¶¶ 127, 131. Libya argued that the agreement's validity was at issue in the pending Tripoli proceedings—but the tribunal found that made no difference. Rather, the tribunal was persuaded "as a matter of fact [that] the Settlement Agreement is valid under Libyan law. . . . [and] this conclusion is not affected by the fact that Respondent argues otherwise before a Libyan court." Id. at 37 ¶ 152. Second, the tribunal determined that both the construction projects Etrak undertook in the 1980s and the settlement agreement were "investments" or "claim[s] to money related to an investment" within the meaning of the BIT. Id. at 39–40 ¶¶ 163, 167. Third, the tribunal concluded that Libya "failed to accord [Etrak]'s investment fair and equitable treatment" in violation of the BIT by (1) "violat[ing] [Etrak's] legitimate expectation with respect to the specific representations made prior to the conclusion of, and enshrined in, the Settlement Agreement," id. at 68 ¶ 313, when it failed to pay Etrak and appealed the Libyan court's judgment, id. at 71 ¶ 334; (2) breaching the Settlement Agreement itself, id. at 72 ¶ 335; and (3) "act[ing] arbitrarily and inconsistently" in its dealings with Etrak, id. at 74 ¶ 349. The tribunal awarded Etrak $21,865,554 USD in damages, plus interest and arbitration costs. Id. at 91–92.

In September 2019, Libya appealed the Award to the Swiss Federal Court, arguing that the tribunal lacked jurisdiction and the Award should be set aside. ECF 21 ¶ 31. In November 2020, the Swiss court found for Etrak. Id. Etrak commenced confirmation and enforcement proceedings around the world, including in Germany and France, where Eversheds again represented Libya. *See* ECF 29-2, at 36 (showing Eversheds represented Libya in Germany proceeding); ECF 31-4, at 1 (showing Eversheds represented Libya in France proceeding).

In 2022, Etrak initiated this confirmation action in the United States. ECF 1. Etrak effected service on Libya under 28 U.S.C. § 1608(3) on August 21, 2022. ECF 17. Etrak sought to have this Court confirm the Award to permit enforcement against Libya's U.S.-based assets. ECF 1, 28. On September 8, 2022, Eversheds attorneys John W. Lomas, Jr., William T. O'Brien, and Daniel G. Morris entered appearances on behalf of Libya. ECF 18-20. They moved on Libya's behalf to stay the case due to the ongoing confirmation proceedings abroad. ECF 22. These attorneys have continued to represent Libya in this action to present.

On February 4, 2025, this Court issued its Memorandum Opinion and Order granting Etrak's motion to confirm the Award and denying Libya's motion to stay. ECF 36 & 37.

One week later, Eversheds lawyer Jonathan Leach contacted Etrak's Turkish counsel to discuss the parties' ongoing dispute over Etrak's Award. *See* Ex. A, Email exchange between Etrak's and Libya's counsel. Mr. Leach and counsel for Etrak have been engaged in a consistent back-and-forth since that date. *See id.*

On March 3, 2025, this Court entered Judgment for Etrak in the amount of USD 30,128,994.40 plus post-judgment interest at the statutory rate under 28 U.S.C. § 1961. ECF 39. The Judgment is now final.

Although Eversheds continued to engage with Etrak's Turkish counsel regarding Etrak's dispute with Libya and the Award, *see* Ex. A, Libya has failed to date to honor the Judgment. As a result, Etrak issued post-judgment discovery requests under Rule 69 of the Federal Rules of Civil Procedure to gather information regarding assets of Libya against which the Judgment may be enforced. *See* Ex. B, Post-Judgment Discovery. In compliance with Rule 69 and Rule 5(b)(1), Etrak served these requests on May 21, 2025, by sending them to Eversheds Counsel, who remain enrolled in this action for Libya. *See* Ex. C, E-mail exchange between counsel, at 2. Etrak

followed up on the requests on June 25, 2025, given Libya's failure to respond to the same despite the passage of the 30-day window for response. *Id.* at 1. Etrak sought to confer with Libya regarding the lack of response and indicated that it would pursue a motion to compel if the responses were not forthcoming. *See id.* Although Eversheds was still enrolled in this action and still acting explicitly on behalf of Libya's State Litigation Department in correspondence with Etrak's Turkish counsel, Eversheds's Mr. Lomas responded on June 26, 2025 that Eversheds purportedly was not "authorized to accept service of discovery requests on Libya's behalf." *See id.* at 1.

One week later, on July 3, 2025, Eversheds attorneys Mr. Lomas and Mr. O'Brien (collectively, "Eversheds Counsel") filed their Motion, purportedly on behalf of Libya despite the alleged cessation of representation following the Judgment. ECF 40. In the Motion, they seek to withdraw from the representation of Libya in this matter without substitution of other counsel. *Id.* Eversheds Counsel provide no compelling reason for the withdrawal, and they seek to require Etrak to make service of its discovery requests and any further pleadings in this matter in the manner allegedly "customary [for] notifying countries of any proceedings"—specifically, via "diplomatic channels." *Id.* Eversheds Counsel neither conferred with undersigned counsel prior to filing the Motion as required by Local Rule 7(m) for all nondispositive motions in a civil action nor provided a proposed order for the motion as required by Local Rule 7(c). Further, in violation of Local Rule 83.6(c), the Motion and accompanying certificate of service fails to certify that Eversheds Counsel advised Libya to obtain other counsel or to inform the Clerk in writing within 7 days that it intends to proceed *pro se*. Notably, though Eversheds's Mr. Morris enrolled in this action, he is not included in the Motion. Undersigned counsel located a LinkedIn

page for Mr. Morris indicating that he left Eversheds in 2023 and currently works for the Office of Legal Counsel for the Office of the Governor of Guam.[2]

Because the Motion is made entirely for strategic purposes to evade service of and the obligation to respond to post-judgment discovery, would prejudice Etrak and impede justice, and provides no compelling reason to justify withdrawal, this Court should deny it. In the alternative, if this Court is inclined to grant Eversheds Counsel's Motion, it should condition that grant to minimize prejudice and disruption to the post-judgment proceedings. No matter what, this Court should specify that Etrak's service of documents on Libya was effective when the documents were sent to Eversheds Counsel through the date of any order of this Court granting withdrawal, as is certainly the case under the Federal Rules of Civil Procedure. Additionally, this Court should condition Eversheds Counsel's withdrawal on Libya enrolling new U.S.-based counsel. Yet, to the extent that this Court permits Libya to proceed *pro se*, this Court should first order Eversheds Counsel to complete all briefing on pending matters (*see, e.g.*, ECF 42) and to provide an e-mail address and/or mailing address to permit alternative service of all documents related to this matter via e-mail and/or common carrier to the specified addresses. Such service must be deemed made at the time the communication is sent. As a further means of avoiding delay, this Court should impose a deadline for responding to the post-judgment discovery attached hereto and should set monetary fines for any failure to meet such deadline in the amount of at least USD 5,000 per week, doubling every four weeks until reaching a maximum of at least USD 80,000 per week unless and until Libya satisfies its discovery obligations.

---

[2] Though Mr. Morris—a former Eversheds associate who seems to have departed in 2023—remains enrolled in this action and does not join the Motion, Eversheds Counsel has effectively conceded that Mr. Morris does not continue to represent Libya. Eversheds Counsel argues that, if the withdrawal is granted, service on Libya should be made via diplomatic channels *and not via CM/ECF notice to Mr. Morris*.

**LAW AND ARGUMENT**

"As a fundamental premise, counsel is under an obligation to see the work through to completion when he agrees to undertake the representation of his client." *Laster v. D.C.*, 460 F. Supp. 2d 111, 113 (D.D.C. 2006) (citing *Streetman v. Lynaugh,* 674 F.Supp. 229, 234 (E.D.Tex.1987) (citations omitted)). "The decision to grant or deny counsel's motion to withdraw is committed to the discretion of the district court." *Id.* (citing *Whiting v. Lacara,* 187 F.3d 317, 320 (2d Cir.1999); *Fleming v. Harris,* 39 F.3d 905, 908 (8th Cir.1994); *Washington v. Sherwin Real Estate, Inc.* 694 F.2d 1081, 1087 (7th Cir.1982)). "When ruling on a motion to withdraw, courts may consider the disruptive impact that the withdrawal will have on the prosecution of the case." *Id.* (citing *Whiting,* 187 F.3d at 320; *Brown v. Nat'l Survival Games,* 1994 WL 660533, at *3–4, 1994 U.S. Dist. LEXIS 16572, at *9–10 (N.D.N.Y. Nov. 18, 1994); *Goldsmith v. Pyramid Commcn's, Inc.* 362 F.Supp. 694, 696 (S.D.N.Y.1973)). Withdrawal cannot be used strategically to advantage oneself or impede justice. *See, e.g., U.S. v. Quesada-Ramos*, 429 F. App'x 909, 912–13 (11th Cir. 2011) (noting withdrawal cannot be employed strategically "to obstruct the orderly procedure in the courts or to interfere with the fair administration of justice" in finding no abuse of discretion in denial of withdrawal motion).

"Additionally, Local Civil Rule 83.6(d) guides the court's ruling on an attorney's motion to withdraw." *Id.* (citing Local Civil Rule 83.6(d)). "The rule provides that '[t]he court may deny an attorney's motion for leave to withdraw if the withdrawal would unduly delay trial of the case, or be unfairly prejudicial to any party, or otherwise not be in the interests of justice.'" *Id.* "In reaching its ruling, the court also may consider factors such as the length of time the case and dispositive motions have been pending, the time it would take for the unrepresented party to search for and secure new legal representation, and the degree of financial burden that counsel

would suffer if the court required him to remain in the case." *Id.* (citing *Barton v. District of Columbia*, 209 F.R.D. 274, 277–78 (D.D.C.2002)).

"In denying motions to withdraw, Courts have also considered the fact that withdrawal would leave the opposing party with an 'intractable litigant' who 'resides overseas' and have [sic] already shown 'significant difficulties in communicating.'" *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 657 B.R. 382, 392 (Bankr. S.D.N.Y. 2024) (citing *Worldspan, L.P. v. Ultimate Living Grp., LLC*, No. CIV.A. 03-1081-JJF, 2006 WL 1046942, at *1 (D. Del. Apr. 20, 2006)). "The Court has discretion to condition leave to withdraw mitigating the prejudice or disruption that withdrawal would otherwise cause." *Sec. Inv. Prot. Corp.*, 657 B.R. at 392-93 (citing *Mario Valente Collezioni, Ltd. v. Semeraro*, No. 02 CIV. 196 (SHS), 2004 WL 1057790, at *1 (S.D.N.Y. May 10, 2004)); *see also U.S. v. Nabaya*, 765 F. App'x 895, 902 (4th Cir. 2019) (denying without prejudice attorney's motion to withdraw to permit attorney to refile only if necessary and after satisfying certain procedures); *Barton v. D.C.*, 209 F.R.D. 274, 277–78 (D.D.C. 2002) (granting motion to withdraw in part to permit the withdrawal only after counsel opposed pending motion).

The circumstances giving rise to the Motion demonstrate that it is made for strategic purposes and with the intent to prejudice Etrak's post-judgment discovery efforts. This Court issued Judgment in Etrak's favor in the amount of USD 30,128,994.40, plus post-judgment interest. Libya has not honored the Judgment to date. Furthermore, its continual efforts to evade paying Etrak the amounts it is owed show that it will never honor the Judgment voluntarily. In other words, it will flout this Court's Judgment unless or until Etrak successfully enforces the Judgment against Libyan assets. Indeed, it is ultimately for this reason that Etrak instituted this action in the United States in 2022. Now, roughly three years later, Etrak is finally in the position

to conduct discovery on Libya's assets and make progress toward execution and collection. The law unequivocally grants Etrak that right. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 138, 134 S. Ct. 2250, 2254, 189 L. Ed. 2d 234 (2014) ("The rules governing discovery in post-judgment execution proceedings are quite permissive."); *id.* at 142-46 (holding FSIA does not limit availability and scope of post-judgment discovery); *see also, e.g.*, *Owens v. Republic of Sudan*, No. CV 01-2244 (JDB), 2020 WL 4039302, at *2 (D.D.C. July 17, 2020) (granting motion to compel post-judgment discovery against Sudan).

To that end, Etrak lawfully issued its discovery requests to counsel enrolled in this action on Libya's behalf on May 21, 2025. *See, e.g.*, *Berry v. Hawaiian Express Serv., Inc.*, No. 03-00385 SOM-LEK, 2007 WL 2225800, at *3 (D. Haw. July 30, 2007) ("[T]he Court finds that Rule 69(a) entitles Defendants to obtain discovery from Plaintiff, . . . and that Rule 5(b)(1) directs that service of any order, pleading or paper relating to discovery made on Plaintiff's attorney shall be considered service on Plaintiff as a party to this action."). Counsel for Libya did not respond. For more than thirty days, Etrak's lawfully served discovery requests were met with silence. Thus, on June 25, 20205, having received no response despite the deadline for responses and objections having passed, Etrak again contacted counsel enrolled for Libya in this matter. Only then did Eversheds Counsel respond to undersigned counsel with the statement that they were not "authorized to accept service of discovery requests on Libya's behalf." *See* Ex. C, at 1. Eversheds Counsel then filed this Motion seeking to withdraw and asking this Court to require Etrak to make service of simple post-judgment discovery requests and other future pleadings via "diplomatic channels" to Libya's Litigation Department. Such an outcome would be untenable, and this Court cannot condone it.

Permitting withdrawal and requiring, as counsel for Libya seeks, service of all documents via "diplomatic channels" would result in unfair prejudice and would not be in the interest of justice. Presumably, counsel for Libya intends to invoke the means of service described under the Foreign Sovereign Immunities Act ("FSIA") service provision, which may provide means of service for commencing an action but is not ordinarily applicable for service of discovery or pleadings after service of the action is made. *See* 28 U.S.C.A. § 1608. The service provision provides "four methods of service [for new actions] in descending order of preference." *Barot v. Embassy of the Republic of Zambia*, 785 F.3d 26, 27 (D.C. Cir. 2015). It is only the last and therefore least preferential of the four options[3] that calls for service via diplomatic channels, which the FSIA describes as follows:

> [I]f service cannot be made within 30 days under paragraph (3), by sending two copies of the summons and complaint and a notice of suit, together with a translation of each into the official language of the foreign state, by any form of mail requiring a signed receipt, to be addressed and dispatched by the clerk of the court to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services--and the Secretary shall transmit one copy of the papers through diplomatic channels to the foreign state and shall send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted.

28 U.S.C.A. § 1608(4). Forcing Etrak to serve post-judgment discovery requests, motions to compel, and other post-judgment pleadings by providing two copies of same to the clerk of court for dispatch "to the Secretary of State in Washington, District of Columbia, to the attention of the Director of Special Consular Services" so that he or she may then "transmit one copy of the papers through diplomatic channels to [Libya and then] send to the clerk of the court a certified copy of the diplomatic note indicating when the papers were transmitted" is on its face

[3] Even when Etrak served Libya at the start of this proceeding, it did not do so under Section 1608(4). Rather, it effected service under Section 1608(3) via common carrier DHL on Libya's Ministry of Foreign Affairs. ECF 17. Libya did not argue that such service was insufficient.

overwhelmingly prejudicial. By way of example, Etrak is in the process of serving Libya via diplomatic channels in conjunction with Etrak's exequatur application in France, and the process has so far taken more than one year and with service not yet confirmed. *See* Ex. D, Declaration of Molly L. Wells. Courts have held that such difficulties in making service weigh against permitting withdrawal of counsel. *See, e.g.*, *Sec. Inv. Prot. Corp.*, 657 B.R. at 392 (denying motion to withdraw where withdrawal "would significantly delay proceedings that the parties have litigated for over a decade[ and n]o one would be accountable to respond to discovery"); *Cochran v. UMH 3 Rivers LLC*, 579 F. Supp. 3d 732, 735–36 (W.D. Pa. 2022) ("Finally, the potential for increased difficulty on the part of the other litigants in obtaining a 'just, speedy, and inexpensive determination' of an action—as required by the foundational principles of Federal Rule of Civil Procedure 1—may also justify denying withdrawal[, as where] withdrawal would make service of filings more difficult for the other parties because they could not simply rely on the Court's CM/ECF system but would have to ensure actual delivery to an unrepresented party." (citing *Miller v. Native Link Constr., LLC*, 2019 WL 1277172, at *1 (W.D. Pa. Jan. 29, 2019)); *see also Sprint Sols., Inc. v. Fils-Amie*, 83 F. Supp. 3d 1290, 1294 (S.D. Fla. 2015) (noting court denied defense counsel's motion to withdraw that she made instead of responding to discovery requests where the rules did not mandate withdrawal and "defense counsel's withdrawal would disrupt the progress of this action"). Certainly, it is not in the interest of justice to permit Libya, once again, to hide behind such procedural hurdles in its continued efforts to evade this Court's Judgment and its decades-old debt to Etrak.

This apparent prejudice to Etrak and impediment to justice is all the more persuasive when weighed against Evershed Counsel's nonexistent justification for withdrawal. Eversheds Counsel have not, for example, alleged that Libya has failed to pay their bills. *Cf. Commissions*

*Imp. Exp. S.A. v. Republic of the Congo*, No. CV 13-713 (RJL), 2017 WL 6626205, at *1 (D.D.C. Mar. 31, 2017). Indeed, as described above, Eversheds and Libya have a longstanding attorney-client relationship spanning many years and jurisdictions. Notably, Eversheds has continued to represent Libya in ongoing discussions related to Etrak's arbitral Award *to present*, having sent no fewer than fifteen emails to Etrak's legal team *since this Court's March 3, 2025, Judgment*, the date allegedly marking the conclusion of Eversheds Counsel's representation. *See generally* Ex. A (listing fifteen emails from Eversheds lawyer Jonathan Leach to Etrak's counsel since March 3, 2025); Motion, at 1 (claiming representation ended with March 2025 Judgment and a lack of authority to accept service). Eversheds Counsel's utter failure to provide any cause whatsoever to justify the withdrawal warrants denial of the Motion, especially where Eversheds continues to represent Libya around the world, including with respect to Etrak's Award, and the withdrawal would prejudice Etrak. *See, e.g.*, *Byrd v. D.C.*, 271 F. Supp. 2d 174 (D.D.C. 2003) (denying motion to withdraw where it would cause undue delay and prejudice due to nearness of deadlines and no countervailing interest justified withdrawal).

In the alternative, if this Court is inclined to grant Eversheds Counsel's Motion, it should condition that grant to minimize prejudice and disruption to the post-judgment proceedings. *See, e.g.*, *Sec. Inv. Prot. Corp.*, 657 B.R. at 392-93. No matter what, this Court should specify that Etrak's service of documents on Libya was effective when the documents were sent to Eversheds Counsel through the date of any order of this Court granting withdrawal, as is certainly the case under the Federal Rules of Civil Procedure. *See, e.g.*, *Berry*, 2007 WL 2225800, at *3. Additionally, this Court should condition Eversheds Counsel's withdrawal on Libya enrolling new U.S.-based counsel. Yet, to the extent that this Court permits Libya to proceed *pro se*, this Court should first order Eversheds Counsel to complete all briefing on pending matters (*see, e.g.*,

ECF 42) and to provide an e-mail address and/or mailing address to permit alternative service of all documents related to this matter via e-mail and/or common carrier to the specified addresses. *See, e.g.*, *Barton*, 209 F.R.D. at 277–78 (requiring completion of briefing prior to withdrawal). Such service must be deemed made at the time the communication is sent. As a further means of avoiding delay, this Court should impose a deadline for responding to the post-judgment discovery attached hereto and should set monetary fines for any failure to meet such deadline. *See Commissions Imp. Exp. S.A.*, 2017 WL 6626205, at *2 (granting withdrawal but ordering Congo to respond to post-judgment discovery within 45 days or face fines of "$5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, unless and until [Congo] satisfies its discovery obligations").

**CONCLUSION**

For the reasons stated herein, the Motion must be denied.

In the alternative, if this Court is inclined to grant Eversheds Counsel's Motion, it should condition that grant to minimize prejudice and disruption to the post-judgment proceedings. No matter what, this Court should specify that Etrak's service of documents on Libya was effective when the documents were sent to Eversheds Counsel through the date of any order of this Court granting withdrawal, as is certainly the case under the Federal Rules of Civil Procedure. Additionally, this Court should condition Eversheds Counsel's withdrawal on Libya enrolling new U.S.-based counsel. Yet, to the extent that this Court permits Libya to proceed *pro se*, this Court should first order Eversheds Counsel to complete all briefing on pending matters (*see, e.g.*, ECF 42) and to provide an e-mail address and/or mailing address to permit alternative service of all documents related to this matter via e-mail and/or common carrier to the specified addresses. Such service must be deemed made at the time the communication is sent. As a further means of

avoiding delay, this Court should impose a deadline for responding to the post-judgment discovery attached hereto and should set monetary fines for any failure to meet such deadline in the amount of at least USD 5,000 per week, doubling every four weeks until reaching a maximum of at least USD 80,000 per week unless and until Libya satisfies its discovery obligations.

**DATED:** July 17, 2025

Respectfully submitted,

/s/ *Molly L. Wells*
Molly L. Wells (*pro hac vice*)
Benjamin D. Reichard (*pro hac vice*)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
Email: mwells@fishmanhaygood.com

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record this date via the Court's CM/ECF system.

*/s/ Molly L. Wells*
Molly L. Wells