IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ, <br><br> *Plaintiff*, <br><br> v. <br><br> STATE OF LIBYA, <br><br> *Defendant*. | Case No. 1:22-cv-00864 (JMC) |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF NON-PARTY NATIONAL OIL CORPORATION OF LIBYA'S MOTION FOR PROTECTIVE ORDER**

CURTIS, MALLET-PREVOST,
 COLT & MOSLE, LLP

Joseph D. Pizzurro
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com

Robert B. Garcia (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 696-6000
robert.garcia@curtis.com

*Attorneys for Non-Party National Oil Corporation of Libya*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................1

FACTUAL BACKGROUND......................................................................................................2

      A.    NOC Is a Foreign State Under the FSIA .......................................................2

      B.    The Underlying Dispute and Confirmation Proceedings............................2

      C.    The Subpoenas ..................................................................................................3

      D.    The Parties' Communications Regarding the Subpoenas ...........................5

ARGUMENT ................................................................................................................................6

    I.    NOC Is Entitled to Sovereign Immunity ................................................................7

    II.    Etrak Is Not Entitled to Discovery About NOC's Assets Because NOC Is a Non-Party to the Action ..................................................................................9

CONCLUSION...........................................................................................................................10

## **TABLE OF AUTHORITIES**

**Cases**

*Agudas Chasidei Chabad v. Russian Federation*,
  528 F.3d 934 (D.C. Cir. 2008) .................................................................................................. 7

*Alpern v. Frishman*,
  465 A.2d 828 (D.C. 1983) ......................................................................................................... 9

*Broidy Capital Mgmt. LLC v. Muzin*,
  61 F.4th 984 (D.C. Cir. 2023) .................................................................................................... 1

*Burak v. Scott*,
  29 F. Supp. 775 (D.D.C. 1939) .................................................................................................. 9

*Carey v. Nat'l Oil Corp.*,
  453 F. Supp. 1097 (S.D.N.Y. 1978) .......................................................................................... 2

*Doraleh Container Terminal SA v. Republic of Djibouti*,
  No. 23-83, 2023 U.S. Dist. LEXIS 168667 (D.D.C. Sept. 21, 2023) ........................................ 9

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  150 F.3d 172 (2d Cir. 1998) ...................................................................................................... 7

*First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*,
  462 U.S. 611 (1983) ................................................................................................................... 8

*Flota Maritima Browning De Cuba, Sociadad Anonima v. Motor Vessel Ciudad De La Habana*,
  335 F.2d 619 (4th Cir. 1964) ..................................................................................................... 1

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
  No. 07 Civ. 3219, 2012 U.S. Dist. LEXIS 72897 (S.D.N.Y. May 22, 2012) ............................ 9

*Griffith v. United States*,
  No. M8-85, 2007 U.S. Dist. LEXIS 36672 (S.D.N.Y. April 25, 2007) .................................... 9

*Letelier v. Republic of Chile*,
  748 F.2d 790 (2d Cir. 1984) ...................................................................................................... 8

*LNC Invs., Inc. v. Republic of Nicaragua*,
  115 F. Supp. 2d 358 (S.D.N.Y. 2000) ....................................................................................... 8

*OBB Personenverkehr AG v. Sachs*,
  577 U.S. 27 (2015) ..................................................................................................................... 7

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
  134 F. Supp. 2d 528 (S.D.N.Y. 2000) .................................................................................... 8, 9

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
    134 F. Supp. 2d 528 (S.D.N.Y. 2001) ................................................................................ 8

*Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*,
    476 F.3d 140 (2d Cir. 2007) ........................................................................................ 7, 8

*Peterson v. Islamic Republic of Iran*,
    563 F. Supp. 2d 268 (D.D.C. 2008) ................................................................................ 8

*Popli v. Air India Airline*,
    No. 17-337, 2017 U.S. Dist. LEXIS 68786 (E.D. Pa. May 5, 2017) .............................. 7

*Robertson v. Cartinhour*,
    No. 09-1642, 2011 U.S. Dist. LEXIS 156059 (D.D.C. Sept. 16, 2011) ........................ 9

*United States v. Morton Salt Co.*,
    338 U.S. 632 (1950) ........................................................................................................ 7

**Statutes**

26 U.S.C. § 7216 .................................................................................................................. 10

28 U.S.C. § 1603(b) ............................................................................................................... 2

28 U.S.C. § 1604 .................................................................................................................... 7

Tex. Bus. Orgs. Code § 9.001 ................................................................................................ 7

**Other Authorities**

Restatement (Fourth) on Foreign Relations Law § 453 (Am. Law Inst. 2018) .................... 7

**Rules**

Fed. R. Civ. P. 26(c) .............................................................................................................. 6

Fed. R. Civ. P. 69 .................................................................................................................. 3

Non-party National Oil Corporation of Libya ("NOC") respectfully submits this memorandum of law in support of its motion for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq. ("FSIA"), to preclude any and all discovery from NOC and its agents, employees or independent contractors.[1]

## PRELIMINARY STATEMENT

Although NOC is a complete stranger to this action, plaintiff Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak") is seeking post-judgment discovery concerning NOC's assets for purposes of satisfying its judgment against the State of Libya ("Libya"). Specifically, Etrak has issued subpoenas to NOC and its employees, as well as third parties such as banks and NOC's accounting firm, in an attempt to uncover information concerning NOC's assets, financial information and corporate structure.

It is fundamental that a court may not issue or enforce process, including a subpoena, without jurisdiction over the person to whom that process is directed. As a separate entity formed under the laws of Libya, and wholly owned by Libya, NOC is "an agency or instrumentality" of a foreign state, and thus a "foreign state" under the FSIA and presumptively immune from the jurisdiction of U.S. courts. Courts have consistently found that immunity under the FSIA protects foreign states and their agencies and instrumentalities such as NOC from discovery unless one of the exceptions enumerated in the FSIA to that immunity applies. Since

---

[1] By making this application, NOC asserts and preserves its sovereign immunity, and in no way waives that sovereign immunity. *See Broidy Capital Mgmt. LLC v. Muzin*, 61 F.4th 984, 996-97 (D.C. Cir. 2023) (observing that there is no waiver of sovereign immunity when a foreign state "appears specially for the purpose of asserting her immunity") (quoting *Flota Maritima Browning De Cuba, Sociadad Anonima v. Motor Vessel Ciudad De La Habana*, 335 F.2d 619, 625 (4th Cir. 1964)).

Etrak has failed to establish any exception to immunity with respect to NOC, the Court lacks subject matter jurisdiction over NOC and Etrak is not entitled to any discovery from NOC.

Separate from its immunity, NOC is a non-party to this action, and Federal Rule of Civil Procedure 69 does not permit discovery into the assets of non-parties such as NOC, whether directly or indirectly.

## FACTUAL BACKGROUND

### A. NOC Is a Foreign State Under the FSIA

NOC is a separate Libyan entity formed under the laws of, and wholly owned by Libya. An entity that is: (1) a separate legal person, corporate or otherwise; (2) a majority of whose shares or other ownership interest is owned by a foreign state; and (3) neither a citizen of a State of the United States nor created under the laws of any third country qualifies as an agency or instrumentality of a foreign state under the FSIA. *See* 28 U.S.C. § 1603(b). Under this definition, NOC is an agency or instrumentality of Libya and thus is itself a "foreign state" under the FSIA. *See* 28 U.S.C. §§ 1603(a)-(b); *Carey v. Nat'l Oil Corp.*, 453 F. Supp. 1097, 1100 n.2 (S.D.N.Y. 1978), *aff'd on other grounds*, 592 F.2d 673 (2d. Cir. 1979) ("NOC is clearly a 'foreign state' for jurisdictional immunity purposes.").

### B. The Underlying Dispute and Confirmation Proceedings

This dispute arises out of a series of public construction projects that Etrak conducted in Libya pursuant to a number of contracts with various Libyan authorities. *See* Petition to Confirm Arbitral Award ("Petition") at ¶¶ 16-20 [ECF No. 1]. NOC was not a party to any of those contracts, and played no role in the construction projects. *See* Final Award, *Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi v. State of Libya*, dated July 22, 2019 [ECF No. 1-3]. In August 2016, Etrak initiated arbitration proceedings against Libya before the International Chamber of

Commerce ("ICC"). *See* Petition at ¶ 23. NOC was not a party in the arbitration and did not participate therein. In July 2019, the ICC tribunal issued an award in favor of Etrak and against Libya in the amount of $21,865,554 in damages, plus interest and arbitration costs. *See* Petition at ¶ 29.

On March 22, 2022, Etrak filed a petition in this Court against Libya to enforce its arbitral award. [ECF No. 1]. NOC was not named as a defendant in the enforcement action. On March 3, 2025, the Court entered judgment in favor of Etrak and against Libya in the amount of $30,128,994.40, plus post-judgment interest at the statutory rate (the "Judgment"). [ECF No. 39].

    C.    <u>The Subpoenas</u>

Following the entry of the Judgment, Etrak initiated post-judgment discovery under Federal Rule 69. Fed. R. Civ. P. 69. As part of that discovery, Etrak has sought information regarding NOC's own assets both directly from NOC, as well as through third-party subpoenas (collectively, the "Subpoenas").

On September 2, 2025, Etrak issued a subpoena for the production of documents on NOC (the "NOC Subpoena"). A copy of the NOC Subpoena is attached to the Declaration of Robert Garcia, dated December 22, 2025 ("Garcia Decl.") as Exhibit 1. The NOC Subpoena seeks information regarding NOC's bank accounts and other assets in the United States, as well as information regarding the corporate relationship between NOC and Libya. The definition of "NOC" in the NOC Subpoena includes Libya:

> "You" refers to [NOC], including each of its branches, offices, predecessors, successors, parents, subsidiaries, departments, divisions, affiliates, employees, personnel, representatives, consultants, directors, members, agents, managers, attorneys, and/or any other persons acting on behalf of, at the direction of, for the benefit of, or under the supervision of [NOC]."

3

Garcia Decl. Ex. 1 at ¶ 10.

Later in September and November 2025, Etrak issued subpoenas to seven individual NOC employees (the "Individual Subpoenas"), requesting that the employees appear for deposition in Houston, Texas.  *See* Garcia Decl. Exs. 2-8.  Although the Individual Subpoenas do not identify any specific topics, it is clear that by attempting to depose NOC's employees, Etrak is seeking information about NOC's assets in the United States.

In addition, Etrak has served subpoenas on banks and other third parties seeking information about NOC's assets.  In September 2025, Etrak served subpoenas on Bank ABC and JP Morgan Chase Bank, N.A. in New York, and Bank of America, N.A. in Texas (the "Bank Subpoenas").  *See* Garcia Decl. Exs. 9-11.  The Bank Subpoenas seek information regarding Libya's accounts, and broadly define "Libya" to include all of its agencies and instrumentalities, including the NOC:

> 'Libya,' refers to the The State of Libya, as well as its agencies, instrumentalities, ministries, political subdivisions, representatives, alter-egos, and assigns, and all other Persons acting or purporting to act for or on Libya's behalf, whether or not authorized to do so, including but not limited to the **Libyan National Oil Corporation or Libyan National Oil Corporation Houston Branch, Central Bank of Libya,** Libyan Arab Foreign Investment Company, Organization for Development of Administrative Centres, Libyan Investment Authority, Oilinvest Group, and Tamoil Group.

*See, e.g.,* Garcia Decl. Ex. 9 at ¶ 9 (emphasis added).

Etrak also served subpoenas on two unaffiliated companies, Sky Petroleum Inc. and Weatherford Inc., seeking contracts, bills of lading, invoices, and other documents relating to their business with Libya (the "Company Subpoenas").  *See* Garcia Decl. Exs. 12-13.  Like the

4

Bank Subpoenas, the definition of "Libya" in the Company Subpoenas includes all of its agencies and instrumentalities, including NOC. *See, e.g.,* Garcia Decl. Ex. 13 at ¶ 8.

Finally, on November 4, 2025, Etrak issued a subpoena to BDO USA, P.C., an accounting firm that has purportedly provided tax-related services for NOC (the "BDO Subpoena"). *See* Garcia Decl. Ex. 14. The BDO Subpoena seeks the production of financial reports, audit workpapers, tax materials, party transactions, and assets of Libya. The definition of "Libya" in the BDO Subpoena also includes all of its agencies and instrumentalities, including NOC. *Id.* at ¶ 12.

D. <u>The Parties' Communications Regarding the Subpoenas</u>

On or about November 18, 2025, counsel for NOC and Etrak conferred by telephone regarding the Subpoenas. *See* Garcia Decl. ¶ 17.[2] Counsel for NOC stated that NOC is immune from discovery under the FSIA, and that Etrak cannot circumvent that immunity by targeting its discovery requests at NOC's employees or third parties. Counsel for Etrak expressed their disagreement and stated that the matter would have to be resolved in court.

By letter dated December 2, 2025, counsel for Etrak affirmed its intent to move forward with its depositions of NOC's employees. *See* Garcia Decl. Ex. 15. Counsel for NOC responded on December 4, 2025, reiterating NOC's position that as a non-party to the litigation between Etrak and Libya, it is entitled to assert its own sovereign immunity with respect to Etrak's discovery requests, and that such immunity cannot be circumvented through subpoenas to its employees and that employees would not be appearing for depositions. *See* Garcia Decl. Ex. 16.

---

[2] At that time, Curtis, Mallet-Prevost, Colt & Mosle, LLP had been retained by NOC to represent NOC's interests in this litigation. However, the firm was not retained by Libya to represent it in this action until December 17, 2025.

Counsel for Etrak responded via email on December 5, 2025, inquiring whether counsel for NOC represents the five individual employees it subpoenaed in November. *See* Garcia Decl. Ex. 17. Counsel for NOC replied the same day, confirming that it had instructed those employees not to appear for the depositions in the firm's capacity as counsel to NOC because the subpoenas were clearly issued to the employees in their capacity as agents of NOC. *Id.* Counsel for NOC further requested that Etrak withdraw the NOC Subpoena, the Individual Subpoenas, as well as the Bank Subpoenas, BDO Subpoena, and Company Subpoenas to the extent that they seek disclosure of information relating to NOC or its assets. *Id.* Counsel for Etrak responded on December 8, 2025, stating that Etrak did not intend to withdraw any of the subpoenas. *Id.*

Pursuant to Federal Rule of Civil Procedure 26(c)(1) and LCvR 7(m), counsel for NOC and counsel for Etrak conferred on December 22, 2025 regarding this Motion. Counsel for Etrak stated that it does not consent to the relief requested herein.

## **ARGUMENT**

Federal Rule of Civil Procedure 26(c)(1) provides that "upon motion by . . . the person from whom discovery is sought, and for good cause shown, the court in which the action is pending . . . may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Here, good cause exists to preclude any discovery from NOC or from third parties regarding NOC's assets or other information, because not only is NOC immune from this Court's jurisdiction under the FSIA, it is a non-party to the action and therefore Etrak is not entitled to information about its business, assets or corporate structure.

I.   **NOC Is Entitled to Sovereign Immunity**

Etrak is not entitled to any discovery from NOC because NOC is immune from the jurisdiction of this Court under the FSIA, and a "district court may not issue a subpoena or impose contempt sanctions without jurisdiction." *Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*, 476 F.3d 140, 143 (2d Cir. 2007) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (stating that judicial subpoena power "is subject to those limitations inherent in the body that issues them").

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015). Thus, absent an applicable statutory exemption to that immunity, foreign states are immune from the jurisdiction of any court of the United States. *See* 28 U.S.C. § 1604; *see also First City, Texas-Houston, N.A. v. Rafidain Bank*, 150 F.3d 172, 176 (2d Cir. 1998).

Immunity under the FSIA applies not just to foreign sovereigns but also to their agencies and instrumentalities. As discussed above, NOC is by definition a "foreign state" because it is an agency or instrumentality of Libya. *See* 28 U.S.C. §§ 1603 (a)-(b). Once a party has made a *prima facie* showing that it is a foreign state, the plaintiff bears the burden of asserting at least some facts showing that an FSIA exception applies. *See Agudas Chasidei Chabad v. Russian Federation*, 528 F.3d 934, 940 (D.C. Cir. 2008). Etrak has not alleged, let alone established, that any exception to immunity applies with respect to NOC.[3]

---

[3] The fact that NOC has a registered office in Houston, Texas does not provide for jurisdiction under the FSIA because the Texas business registration statute does not explicitly mention immunity. *See* Tex. Bus. Orgs. Code § 9.001. *See e.g., Popli v. Air India Airline*, No. 17-337, 2017 U.S. Dist. LEXIS 68786 at *10 (E.D. Pa. May 5, 2017) (registering to do business in New Jersey does not constitute implied waiver where New Jersey business registration statute does not mention immunity); Restatement (Fourth) on Foreign Relations Law § 453 rep. n. 1 (Am. Law Inst. 2018) ("Merely doing (or registering to do) business in the United States, even if

Courts have found foreign states and their agencies and instrumentalities immune from post-judgment discovery where they were not parties to the underlying litigation. *See Peninsula Asset Mgmt.*, 476 F.3d at 142-43 (affirming denial of contempt motion against foreign state in post-judgment discovery proceedings); *Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*, 134 F. Supp. 2d 528, 535-36 (S.D.N.Y. 2000) (Report & Recommendation) (quashing judgment creditor's subpoena to non-party agency or instrumentality of foreign state), *adopted by* 134 F. Supp. 2d 528 (S.D.N.Y. 2001); *cf. Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268 (D.D.C. 2008). Here, NOC is similarly immune from the jurisdiction of this Court, including with respect to Etrak's post-judgment discovery proceedings.

To the extent that Etrak's post-judgment discovery requests suggest that NOC is an alter ego of Libya, those requests are also improper. It is well established that agencies and instrumentalities of a foreign state, as defined under the FSIA, are deemed presumptively separate from the foreign state. *See First Nat'l City Bank v. Banco Para El Comercio Exterior De Cuba*, 462 U.S. 611 (1983) ("*Bancec*"). The plaintiff bears the burden of overcoming that presumption, and must do so through specific allegations sufficient to pierce the corporate veil. *See Letelier v. Republic of Chile*, 748 F.2d 790, 795 (2d Cir. 1984) ("Plaintiffs had the burden of proving that [the state instrumentality] was not entitled to separate recognition."); *LNC Invs., Inc. v. Republic of Nicaragua*, 115 F. Supp. 2d 358, 363 (S.D.N.Y. 2000), *aff'd*, 228 F.3d 423 (2d. Cir. 2000) (finding that plaintiff failed to carry its burden to overcome the presumption of separateness between the foreign sovereign and its agency or instrumentality). Etrak has not sought such a determination, much less alleged facts supporting the existence of an alter ego

---

sufficient to meet the requirements for personal jurisdiction, does not constitute an implied waiver of immunity.").

8

relationship between NOC and Libya.  Consequently, NOC remains presumptively immune from the jurisdiction of this Court.

## II. Etrak Is Not Entitled to Discovery About NOC's Assets Because NOC Is a Non-Party to the Action

Separate from its immunity, given that NOC is a non-party to this action, Etrak is not entitled to discovery concerning NOC's assets—whether that information is sought directly from NOC or from third parties.  The Federal Rules "do not give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor." *Burak v. Scott*, 29 F. Supp. 775, 776 (D.D.C. 1939); *see also, e.g., Alpern v. Frishman*, 465 A.2d 828, 829 (D.C. 1983); *Robertson v. Cartinhour*, No. 09-1642, 2011 U.S. Dist. LEXIS 156059, at *4-5 (D.D.C. Sept. 16, 2011); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219, 2012 U.S. Dist. LEXIS 72897, at *14 (S.D.N.Y. May 22, 2012).  A party not named as a defendant in the underlying action thus cannot be compelled "to make disclosure of their individual assets." *Burak*, 29 F. Supp. at 776.

Moreover, a non-party has standing to contest a subpoena directed at a third party if the subpoena seeks information regarding the non-party's assets or financial affairs. *See Doraleh Container Terminal SA v. Republic of Djibouti*, No. 23-83, 2023 U.S. Dist. LEXIS 168667, at *5 (D.D.C. Sept. 21, 2023) (standing to contest a third-party subpoena exists where the entity "claims some personal right or privilege in the information sought by the subpoena"); *see also Olympic Chartering*, 134 F. Supp. 2d at 535 (S.D.N.Y. 2000) ("A party whose records have been subpoenaed has 'a sufficient privacy interest in the confidentiality of [the] records' so as to assert standing to challenge the subpoena."); *Griffith v. United States*, No. M8-85, 2007 U.S. Dist. LEXIS 36672, at *1 (S.D.N.Y. April 25, 2007) ("[I]ndividuals whose banking records are

9

subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution.").

NOC has an interest in the information sought in the Individual Subpoenas, the BDO Subpoena, the Bank Subpoenas, and the Company Subpoenas. Although those Subpoenas are purportedly directed at uncovering Libyan assets, each Subpoena defines "Libya" to include all of its agencies and instrumentalities, including NOC. By broadly defining "Libya" to include NOC, the Subpoenas in fact seek the disclosure of information regarding NOC's assets and other financial affairs. Similarly, although the Individual Subpoenas do not identify any specific information sought, they are directed to NOC employees who have no association with Libya, and who have no knowledge regarding NOC's assets beyond their official capacity as agents of NOC. Since Federal Rule of Civil Procedure 69 does not allow Etrak to seek discovery into the assets of non-parties such as NOC, Etrak cannot circumvent that prohibition by redirecting its discovery requests to third parties such as banks or individuals. *Id.*[4]

## CONCLUSION

For the foregoing reasons, this Court should enter a protective order, quashing the subpoena against NOC and precluding Etrak from seeking any discovery from any party into NOC's business affairs, assets or corporate structure.

---

[4] BDO is also prohibited by Section 7216 of the Internal Revenue Code from disclosing any information regarding NOC's tax returns absent a court order or express written consent of NOC. *See* 26 U.S.C. § 7216. Since NOC has not granted its consent under Section 7216, this statutory prohibition alone provides sufficient grounds for entry of a protective order with barring the disclosure of any information regarding NOC's tax returns pursuant to the BDO Subpoena

Dated: December 22, 2025

                                      Respectfully submitted,

                                      CURTIS, MALLET-PREVOST,
                                        COLT & MOSLE, LLP

                                      */s/ Joseph D. Pizzurro*
                                      Joseph D. Pizzurro
                                      1717 Pennsylvania Avenue NW
                                      Washington, D.C. 20006
                                      (202) 452-7373
                                      jpizzurro@curtis.com

                                      Robert B. Garcia (*pro hac vice*)
                                      101 Park Avenue
                                      New York, NY 10178
                                      (212) 696-6000
                                      robert.garcia@curtis.com

                                      *Attorneys for Non-Party National Oil Corporation of Libya*

## CERTIFICATE OF SERVICE

  I hereby certify that on __December 22___, 2025, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Plaintiff.

                   */s /Joseph D. Pizzurro*
                    Joseph D. Pizzurro

Dated: December 22, 2025