## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ, | : | |
| *Plaintiff,* | : | Case No. 1:22-cv-00864 (JMC) |
| v. | : | |
| STATE OF LIBYA, | : | |
| *Defendant.* | : | |

## NON-PARTY NATIONAL OIL CORPORATION OF LIBYA'S
## REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PROTECTIVE ORDER

CURTIS, MALLET-PREVOST,
 COLT & MOSLE, LLP

Joseph D. Pizzurro
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com

Robert B. Garcia (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 696-6000
robert.garcia@curtis.com

*Attorneys for Non-Party National Oil Corporation of Libya*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .........................................................................................1

ARGUMENT .......................................................................................................................2

    I.    The Court Lacks Jurisdiction Over NOC .............................................................2

        A.    NOC is Entitled to Sovereign Immunity .................................................2

        B.    This Court's Ancillary Jurisdiction Does Not Support a Finding of Alter Ego .................................................................................................6

        C.    Etrak Has Made No Showing that NOC is an Alter Ego ........................11

    II.    Etrak is Not Entitled to Discovery About NOC's Assets Because NOC is a Non-Party to the Action ........................................................................................16

CONCLUSION ..................................................................................................................17

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Agudas Chasidei Chabad v. Russian Federation,*
   528 F.3d 934 (D.C. Cir. 2008) ......................................................................... 3

*Alpern v. Frishman,*
   465 A.2d 828 (D.C. 1983) .............................................................................. 16

*Amduso v. Republic of Sudan,*
   288 F. Supp. 3d 90 (D.D.C. 2017) ................................................................... 4

*BRIDAS S.A.P.I.C v. Government of Turkmenistan,*
   447 F.3d 411 (5th Cir. 2006) ......................................................................... 15

*Broidy Capital Mgmt. LLC v. Muzin,*
   61 F.4th 984 (D.C. Cir. 2023) .......................................................................... 1

*Burak v. Scott,*
   29 F. Supp. 775 (D.D.C. 1939) ...................................................................... 16

\* *Butler v. Sukhoi Co.,*
   579 F.3d 1307 (11th Cir. 2009) ................................................................ 10, 11

*C.F. Tr., Inc. v. First Flight Ltd. P'ship,*
   306 F.3d 126 (4th Cir. 2002) ........................................................................... 8

*Cont'l Transfert Technique Ltd. v. Federal Government of Nigeria,*
   308 F.R.D. 27 (D.D.C. 2015) ........................................................................... 5

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) ...................................................................................... 11

*Doraleh Container Terminal SA v. Republic of Djibouti,*
   No. 23-83, 2023 U.S. Dist. LEXIS 168667 (D.D.C. Sept. 21, 2023) ...................... 16

*Duggan v. Martorello,*
   No. 23-mc-91208-AK, 2023 U.S. Dist. LEXIS 246135 (D. Mass. Aug. 31, 2023) ......... 6

*Ellis v. All Steel Constr., Inc.,*
   389 F.3d 1031 (10th Cir. 2004) ....................................................................... 8

*EM Ltd. v. Republic of Argentina,*
   473 F.3d 463 (2d Cir. 2007) .......................................................................... 13

*Epperson v. Ent. Express, Inc.,*
   242 F.3d 100 (2d Cir. 2001) ............................................................................ 8

\*  *First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ................................................................................ 12, 13, 14

*Flame S.A. v. Freight Bulk Pte. Ltd.*,
    807 F.3d 572 (4th Cir. 2015) ............................................................................. 8

*Flatow v. Islamic Republic of Iran*,
    308 F.3d 1065 (9th Cir. 2002) ......................................................................... 14

*Flota Maritima Browning De Cuba, S.A. v. Motor Vessel Ciudad De La Habana*,
    335 F.2d 619 (4th Cir. 1964) ............................................................................. 1

*Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*,
    144 F.3d 7 (1st Cir.1998) ................................................................................... 8

*GMA Accessories, Inc. v. Elec. Wonderland, Inc.*,
    No. 07 Civ. 3219, 2012 U.S. Dist. LEXIS 72897 (S.D.N.Y. May 22, 2012) ........................ 16

*Griffith v. United States*,
    No. M8-85, 2007 U.S. Dist. LEXIS 36672 (S.D.N.Y. April 25, 2007) ................................. 16

*GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia & Republic of Liberia*,
    822 F.3d 598 (D.C. Cir. 2016) ......................................................................... 15

*Hercaire Int'l, Inc. v. Argentina*,
    821 F.2d 559 (11th Cir. 1987) ......................................................................... 15

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ............................................................................................. 3

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
    134 F. Supp. 2d 528 (S.D.N.Y. 2000) ............................................................. 3, 16

*Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*,
    134 F. Supp. 2d 528 (S.D.N.Y. 2001) ................................................................. 3

*Owens v. Republic of Sudan*,
    No. 01-2244 (JDB), 2020 U.S. Dist. LEXIS 126196 (D.D.C. July 17, 2020) ...................... 5

\*  *Peacock v. Thomas*,
    516 U.S. 349 (1996) ................................................................................. 2, 7, 8, 9

\*  *Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*,
    476 F.3d 140 (2d Cir. 2007) ............................................................................. 3

\*  *Peterson v. Bank Markazi*,
    121 F.4th 983 (2d Cir. 2024) ......................................................................... 9, 10

*Peterson v. Islamic Republic of Iran*,
   563 F. Supp. 2d 268 (D.D.C. 2008) ....................................................................... 3

*Process & Indus. Devs. v. Federal Republic of Nigeria*,
   962 F.3d 576 (D.C. Cir. 2020) ............................................................................ 11

*Republic of Argentina v. NML Capital, Ltd.*
   573 U.S. 134 (2014) ....................................................................................... 2, 4

*Robertson v. Cartinhour*,
   No. 09-1642, 2011 U.S. Dist. LEXIS 156059 (D.D.C. Sept. 16, 2011) .................................. 16

*Samantar v. Yousuf*,
   560 U.S. 305 (2010) .......................................................................................... 6

*Tatneft v. Ukraine*,
   No. 17-582 (CKK), 2021 U.S. Dist. LEXIS 224418 (D.D.C. Oct. 18, 2021) ........................... 4

*TIG v. Republic of Argentina*,
   110 F.4th 221 (D.C. Cir. 2024) ........................................................................... 14

*TransAmerica Leasing Inc. v. Republic of Venezuela*,
   200 F.3d 843 (D.C. Cir. 2000) ............................................................................ 14

*United States v. Morton Salt Co.*,
   338 U.S. 632, 642 (1950) .................................................................................... 3

*USI Props. Corp. v. M.D. Const. Co.*,
   230 F.3d 489 (1st Cir. 2000) ................................................................................ 8

**Statutes**

28 U.S.C. § 1603 ................................................................................................. 3

28 U.S.C. § 1604 ................................................................................................. 3

28 U.S.C. § 1605 ................................................................................................. 3

28 U.S.C. § 1608 ................................................................................................. 3

**Rules**

Fed. R. Civ. P. 26 ........................................................................................... 1, 17

Fed. R. Civ. P. 69 ............................................................................................. 17

Non-party National Oil Corporation of Libya ("NOC") respectfully submits this reply memorandum of law in further support of its motion to quash the subpoenas against it and for a protective order pursuant to Federal Rule of Civil Procedure 26(c) and the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602, et seq. ("FSIA"), to preclude any and all discovery from NOC and its agents, employees or independent contractors,[1] and from any other party into NOC's business affairs, assets or corporate structure.

## PRELIMINARY STATEMENT

Despite reciting in its Opposition more than 20 pages worth of background information, Etrak succeeds only in confirming that NOC has absolutely nothing to do with this case. Etrak fails to allege a single fact that would connect NOC to its dispute with Libya. NOC has had no dealings with Etrak and was not involved in any events giving rise to Etrak's claims. NOC was not a party to Etrak's settlement agreement with Libya, the ICC arbitration against Libya, or the enforcement action in this Court. Nor is NOC liable to Etrak on either its arbitration award or judgment. Most glaringly, Etrak fails to allege—let alone establish—any exception to NOC's sovereign immunity that would allow this Court to enforce the subpoenas on NOC.

Etrak has aggressively pursued extensive discovery into NOC's business affairs, assets, and corporate structure through subpoenas issued on NOC, NOC's employees, and third-party institutions. In opposing NOC's motion, Etrak completely and deliberately mischaracterizes NOC's argument. NOC is not asserting some notion of immunity from post-judgment discovery.

---

[1] By making this response, NOC asserts and preserves its sovereign immunity, and in no way waives that sovereign immunity. *See Broidy Capital Mgmt. LLC v. Muzin*, 61 F.4th 984, 996-97 (D.C. Cir. 2023) (observing that there is no waiver of sovereign immunity when a foreign state "appears specially for the purpose of asserting her immunity") (quoting *Flota Maritima Browning De Cuba, S.A. v. Motor Vessel Ciudad De La Habana*, 335 F.2d 619, 625 (4th Cir. 1964)).

The Supreme Court decision in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) and the other cases cited by Etrak are simply inapplicable. NOC, as an agency and instrumentality of a foreign state, is asserting its own immunity which deprives this Court of the subject matter or personal jurisdiction to enforce any process against NOC. And, because NOC is a non-party, this Court's ancillary post-judgment jurisdiction in these proceedings does not extend to or justify any attempt to attribute liability on the judgment to NOC on some theory of alter ego. *See Peacock v. Thomas*, 516 U.S. 349 (1996).

Finally, Etrak has completely failed to answer NOC's argument that Rule 69 of the Federal Rules of Civil Procedure does not permit discovery of assets of non-parties such as NOC.

For the reasons that follow, this Court should enter a protective order, quashing the subpoena against NOC and precluding Etrak from seeking any discovery from any party into NOC's business affairs, assets or corporate structure.

## ARGUMENT

### I.    The Court Lacks Jurisdiction Over NOC

#### A.    NOC is Entitled to Sovereign Immunity

In its Opposition, Etrak sets up a straw man by mischaracterizing NOC as having asserted "blanket immunity" under the FSIA from *discovery*. ECF No. 68 at 24-25. NOC made no such assertion. Rather, NOC established that it is immune under the FSIA from this Court's *jurisdiction* because it is a non-party foreign state and no exception to its immunity applies. ECF No. 66-1 at 6, 11-13.

The FSIA "provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country." *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 30 (2015) (citation

omitted). Under the FSIA, a plaintiff can establish a basis for jurisdiction over claims against a foreign sovereign only by demonstrating that (1) subject matter jurisdiction exists because an exception to immunity applies; and (2) personal jurisdiction exists because the defendant has been served in accordance with FSIA requirements. 28 U.S.C. §§ 1605, 1608. Each separate agency or instrumentality is entitled to its own separate determination of immunity. *See Olympic Chartering S.A. v. Ministry of Industry and Trade of Jordan*, 134 F. Supp. 2d 528, 535 (S.D.N.Y. 2000) (Report & Recommendation) (quashing judgment creditor's subpoena seeking post-judgment discovery from non-party agency or instrumentality of foreign state), *adopted by* 134 F. Supp. 2d 528 (S.D.N.Y. 2001).

 As Etrak concedes, NOC meets the definition of a "foreign state" under the FSIA as an agency or instrumentality of Libya. *See* 28 U.S.C. § 1603(a)-(b). It is therefore Etrak's burden to demonstrate that an FSIA exception applies to NOC's immunity. ECF No. 66-1 at 11. *See Agudas Chasidei Chabad v. Russian Federation,* 528 F.3d 934, 940 (D.C. Cir. 2008). Yet Etrak has not asserted, let alone established, that any such exception applies. Therefore, this Court lacks jurisdiction over NOC. *See* 28 U.S.C. § 1604.

Without jurisdiction over a person, a court may not issue or enforce process directed to that person. *See Peninsula Asset Mgmt. (Cayman) v. Hankook Tire Co.*, 476 F.3d 140, 143 (2d Cir. 2007) (citing *United States v. Morton Salt Co.*, 338 U.S. 632, 642 (1950) (stating that judicial subpoena power "is subject to those limitations inherent in the body that issues them")). Courts therefore will quash on immunity grounds subpoenas seeking discovery from non-party foreign states, including in post-judgment proceedings. *See Olympic Chartering*, 134 F. Supp. 2d at 535-36; *cf. Peterson v. Islamic Republic of Iran*, 563 F. Supp. 2d 268, 272-74 (D.D.C. 2008).

Here, this Court similarly lacks jurisdiction over NOC and may not enforce Etrak's subpoenas issued upon NOC.

Etrak nevertheless asks this Court to disregard these cases on the grounds that they were supposedly overruled by *Republic of Argentina v. NML Capital, Ltd.*, which, according to Etrak, "holds that the FSIA provides no immunity from 'discovery.'" ECF No. 68 at 28-29; 573 U.S. at 142. This argument is a *non sequitur*. NOC has not asserted categorical immunity from "discovery," and none of the cases it cites rely on such an immunity. Rather, these cases rely on the district court's lack of *jurisdiction* to issue and enforce subpoenas against a non-party foreign state entitled to immunity under the FSIA unless an exception to that immunity applies. *NML Capital, Ltd.* is not to the contrary. There, the Supreme Court held that Argentina, a judgment debtor whose jurisdictional immunity had already been overcome, could not assert immunity from discovery of its assets worldwide, including from third-party banks who did not assert any jurisdictional immunity. *NML Cap., Ltd.*, 573 U.S. at 139, 142.  In reaching this holding, the Court rejected Argentina's contention that post-judgment discovery was limited to its assets "that do not fall within an exception to execution immunity." *Id.* at 143. But this holding did not in any way implicate a district court's jurisdiction to enforce subpoenas against a non-party foreign state or instrumentality with separate immunity and with no involvement whatsoever in the underlying proceedings.

The remaining cases that Etrak cites are irrelevant because they concern subpoenas issued on foreign state *judgment debtors* themselves, who were already subject to the jurisdiction of the district court. *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 94-95 (D.D.C. 2017) (permitting discovery from judgment debtor itself); *Tatneft v. Ukraine*, No. 17-582 (CKK), 2021 U.S. Dist. LEXIS 224418, at *12 (D.D.C. Oct. 18, 2021) (same); *Cont'l Transfer Technique Ltd.*

4

*v. Federal Government of Nigeria*, 308 F.R.D. 27, 33-35 (D.D.C. 2015) (same); *Owens v. Republic of Sudan*, No. 01-2244 (JDB), 2020 U.S. Dist. LEXIS 126196, at *23, *26 (D.D.C. July 17, 2020) (same). None of these cases imply that a district court may exercise jurisdiction over a non-party with separate sovereign immunity that has not been overcome, such as NOC, when it has been served with subpoenas requesting post-judgment discovery. The fact that Etrak has attempted to serve these subpoenas in the context of post-judgment discovery does not distinguish them from attempts to serve process in any other context. NOC is entirely immune from this Court's jurisdiction in all contexts unless Etrak can prove that an exception to this immunity applies.

Similarly irrelevant is Etrak's contention that "Libya was required to object" to discovery requests served by Etrak on Libya (which are not at issue in this motion) "and make 'a specific factual showing" that Libya has no control over the records of NOC. ECF No. 68 at 27. Such an objection would concern only Libya's own disclosure obligations— not NOC's immunity from process directed to itself or its right to seek a protective order concerning discovery of its private information.

Etrak attempts to elide the distinction between judgment debtor and non-party by mischaracterizing NOC as "a foreign government sued under the Foreign Sovereign Immunities Act (FSIA)." ECF No. 68 at 27. But NOC has not been "sued" by Etrak and is not liable for any judgment. There is thus no basis for the Court to treat NOC as if it were a judgment debtor already subject to the Court's jurisdiction.

Etrak alternatively asserts that its subpoenas targeted at NOC's employees may be enforced because these "employees enjoy no immunity under the FSIA" "for acts undertaken in their official capacity for a foreign sovereign." ECF No. 68 at 28; *Samantar v. Yousuf*, 560 U.S.

305, 325 (2010) (holding that immunity of foreign officials is governed by the common law, not the FSIA). Etrak again mischaracterizes NOC's argument. NOC has not argued that its employees have individual sovereign immunities from claims against themselves, but rather that NOC's sovereign immunity precludes Etrak from directing subpoenas at these employees as representatives of NOC, concerning NOC's assets, and in pursuit of an alter ego determination against NOC. *See Duggan v. Martorello*, No. 23-mc-91208-AK, 2023 U.S. Dist. LEXIS 246135, at *16-17 (D. Mass. Aug. 31, 2023) (quashing subpoena against employee of Native American tribe because the tribe's sovereign immunity extended to its employees for what was "in effect, a suit against the Tribe" and the party seeking discovery could not "circumvent tribal immunity by merely naming officers or employees of the Tribe"). Etrak cites no authority that would allow it to circumvent NOC's immunity in this manner, and it would be nonsensical to allow Etrak to do so. NOC, like any corporate entity, cannot act except through its employees. Such a loophole would therefore render its immunity effectively meaningless.

B.    This Court's Ancillary Jurisdiction Does Not Support a Finding of Alter Ego

Etrak's Opposition to NOC's motion makes clear that Etrak is asserting that NOC, a non-party with no involvement in the underlying dispute or arbitration, is required to respond to its discovery requests because in fact NOC is liable on the judgment against Libya as its purported alter ego. *See e.g.*, ECF No. 68 at 14, 26-28 (asserting entitlement to post-judgment discovery "regarding Libya's executable assets" including with respect to NOC's assets, because NOC is supposedly "Libya's agent or alter ego"). However, this Court cannot rely on its ancillary jurisdiction in these post-judgment proceedings to entertain a claim against a non-party on the basis of alter ego. That determination requires an independent basis for subject matter jurisdiction and no such basis exists.

In *Peacock v. Thomas*, the Supreme Court drew a distinction between post-judgment proceedings to collect a judgment by executing against property of the judgment debtor, which come within a court's ancillary enforcement jurisdiction, and claims, such as Etrak's, that seek to shift liability on an existing judgment to a third party not otherwise liable on the judgment. 516 U.S. 349 (1996). In *Peacock*, a plaintiff obtained an ERISA judgment against his former corporate employer. *Id.* at 351. After failing to collect on that judgment from the employer, the plaintiff amended his complaint to assert a new claim to pierce the corporate veil and assert liability against an officer/shareholder of the corporation who was not named in the original judgment. *Id.* at 352. The district court found in favor of the plaintiff, and the Fourth Circuit affirmed after holding that the district court had properly exercised its ancillary jurisdiction over the plaintiff's new veil-piercing claim. *Id.* The Supreme Court reversed and held that the district court lacked jurisdiction because its ancillary jurisdiction did not extend to the new veil-piercing claim against the officer/shareholder. *Id.* The Court stated: "We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. The Court explained that an action to enforce a federal judgment against a third party based on new facts and new legal theories, such as "veil piercing", does not fall within the district court's ancillary jurisdiction. Rather, there must be an independent basis for the court's subject matter jurisdiction over that claim. *Id.* at 358-59. Because no provision of ERISA, nor any other federal law, provided an independent basis for subject-matter jurisdiction over the veil-piercing claim, the district court lacked jurisdiction over that claim. *Id.* at 359-60.

*Peacock* therefore requires an independent basis of jurisdiction any time a judgment creditor attempts to enforce a judgment against a third party on the ground that the third party's

separateness should be disregarded, such as through veil-piercing and alter ego theories. *Id*. Any claim seeking to overcome a third party's separate status — regardless of how the claim is characterized — is based on "different facts" and "entirely new theories of liability" from the original claim. *Id.* at 358.

Circuit courts have followed *Peacock* by requiring plaintiffs to demonstrate an independent basis of jurisdiction for alter ego claims, rather than relying solely on the district court's ancillary jurisdiction to enforce the underlying judgment. *USI Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 499 (1st Cir. 2000) ("Since the alter ego argument offers a new substantive theory that seeks to establish liability directly on the part of a third party, the residual federal jurisdiction from the original action does not flow to such a claim, and hence some independent ground for federal jurisdiction is necessary."); *Futura Development of Puerto Rico, Inc. v. Estado Libre Asociado de Puerto Rico*, 144 F.3d 7, 12 (1st Cir. 1998) ("an alter ego claim involves an independent theory of liability under equity, complete with new evidence."); *Epperson v. Ent. Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) ("claims of alter ego liability and veil-piercing" require an independent basis for jurisdiction because they "raise an independent controversy with a new party in an effort to shift liability."); *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 133 (4th Cir. 2002) (acknowledging that *Peacock* requires "an independent basis for jurisdiction" to hear "a subsequent, post-judgment alter ego claim"); *see also Flame S.A. v. Freight Bulk Pte. Ltd.*, 807 F.3d 572, 581-582 (4th Cir. 2015); *Ellis v. All Steel Constr., Inc.*, 389 F.3d 1031, 1035 (10th Cir. 2004).

Here, the facts are on all fours with *Peacock*. Etrak has obtained a judgment against only Libya, but asks this court to disregard NOC's corporate separateness and find NOC liable for that judgment as an alleged alter ego. *Peacock* therefore requires that Etrak demonstrate an

independent basis for subject matter jurisdiction over its alter ego claim against NOC, rather than rely solely on the Court's ancillary jurisdiction to enforce the judgment against Libya. Because Etrak cannot demonstrate any such basis, this Court lacks jurisdiction over Etrak's alter ego claim and cannot enforce the judgment — or any process — against NOC or any other agency or instrumentality of Libya.

The Second Circuit recently applied *Peacock* to reject plaintiffs' efforts to enforce, on a theory of alter ego, a judgment against the Islamic Republic of Iran on Bank Markazi, Iran's central bank and non-party to the judgment. *Peterson v. Bank Markazi*, 121 F.4th 983, 999, 1001 (2d Cir. 2024). The parties did not dispute that Bank Markazi was an instrumentality of Iran, and that no provision of the FSIA stripped Bank Markazi of its jurisdictional immunity in the judgment enforcement proceedings. *Id*. at 994. The plaintiffs nevertheless argued that the district court possessed ancillary subject matter jurisdiction over the claims against Bank Markazi because it was allegedly Iran's "alter ego," and therefore jurisdiction over these claims proceeded from the jurisdiction in the merits action. *Id*. at 999-1000. The Second Circuit rejected that argument, finding that Bank Markazi was "neither the custodian of the [a]ssets nor the judgment debtor, given that it was not a party to the cases in which the [p]laintiffs secured their judgments against Iran." *Id*. at 999. Therefore, the plaintiffs' claim was "ultimately an attempt to establish liability directly on the part of a new party." *Id.* at 1000. The Second Circuit held that "ancillary jurisdiction cannot extend to this type of claim." *Id.* Rather, "a post-judgment enforcement proceeding against an instrumentality of the foreign sovereign judgment debtor cannot be supported by ancillary jurisdiction from the proceeding in which the judgment was issued, but must instead have an 'independent basis for jurisdiction.'" *Id.* at 1000 n. 5 (citing *Peacock*, 516 U.S. at 355). Because the plaintiffs' claim fell "outside the scope of the district

court's ancillary jurisdiction, the district court lacked subject matter jurisdiction over the turnover claim against Bank Markazi," regardless of whether Bank Markazi could be considered Iran's alter ego. *Id.* at 1001.

Similarly, the Eleventh Circuit in *Butler v. Sukhoi Co.* rejected an attempt to impose alter ego liability on foreign state entities in an enforcement proceeding. 579 F.3d 1307, 1313-14 (11th Cir. 2009). In *Butler*, the plaintiffs sought to enforce a default judgment rendered against an instrumentality of the Russian Federation against Russia itself as well as several other Russian instrumentalities, all of which were non-parties to the original action. *Id.* at 1310. The defendants asserted immunity under the FSIA, but the plaintiffs argued in response that "they were merely seeking to execute a judgment . . . and that Rule 69 of the Federal Rules of Civil Procedure" allowed the court to exercise jurisdiction. *Id.* at 1311. The plaintiffs requested "limited jurisdictional discovery as to the alter ego basis for subject matter jurisdiction and to discovery in aid of execution as to the location of the judgment debtors' assets." *Id.* The district court initially granted the discovery, but the Eleventh Circuit reversed after finding that doing so was an abuse of discretion. The Eleventh Circuit explained that the plaintiffs had failed to establish that the alleged "conduct" of the supposed alter ego satisfied any of the FSIA's statutory exceptions to immunity. Thus, there was no basis to grant the plaintiffs "jurisdictional discovery" on their alter ego claim because their allegations, even "if proven through additional discovery, would not demonstrate a basis for jurisdiction in any event." *Id.* at 1315.

The facts of *Butler* are indistinguishable from this case. Here, Etrak has similarly obtained a judgment against one sovereign entity and seeks jurisdictional and asset discovery to enforce that judgment against a different sovereign entity on an alter ego theory. As in *Butler*, Etrak can establish subject matter jurisdiction over its claim against NOC only by proving that an

independent exception to immunity applies *with respect to NOC*. But Etrak has not, and cannot establish that any exception to NOC's immunity applies because, as Etrak concedes, NOC had no involvement whatsoever in the events giving rise to Etrak's claim or its arbitration against Libya. Thus, the alter ego theory, even if proven, would not provide an exception to immunity and is irrelevant to this Court's jurisdiction over NOC. Therefore, no discovery is permissible, whether into NOC's assets or alleged alter ego status, because no possible facts could support this Court's exercise of subject matter jurisdiction over any process against NOC.[2]

      C.     Etrak Has Made No Showing that NOC is an Alter Ego

Notwithstanding the dispositive jurisdictional analysis set out above, it is clear that, in opposing this discovery motion, Etrak has made no plausible showing that would warrant a finding that NOC is Libya's alter ego. As an initial matter, Etrak has not put forward any reliable evidence in its Opposition to demonstrate that NOC is Libya's alter ego. Etrak primarily relies on the report of its alleged expert, Alaref Kashar, but by his own admission Mr. Kashar is trained in Libyan law— not U.S. law. ECF No. 68-2 at 199. He is therefore not qualified to render an opinion on NOC's status under U.S. law, and his testimony would not likely survive a challenge under the reliability standard in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993). Nor has NOC had any opportunity to depose or cross-examine Mr. Kashar, and his unsworn report constitutes inadmissible hearsay. Moreover, Mr. Kashar's opinions largely consist of conclusory

---

[2] This reasoning applies equally to any other agencies or instrumentalities of Libya against whom Etrak may seek to enforce its judgment against Libya. No discovery would be warranted for any such entities because even if alter ego were established, it would provide no basis for jurisdiction under the FSIA. And as the Eleventh Circuit held in *Butler*, any order against a non-party foreign sovereign that "call[s] for discovery" constitutes a denial of "immunity from suit under the FSIA" and is immediately appealable "notwithstanding the lack of a final judgment." 579 F.3d at 1311; *see also Process & Indus. Devs. v. Federal Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020) (reversing district court order that required foreign sovereign to brief merits of dispute prior to determination on immunity) (citing *Butler*, 579 at 1307).

assertions and are drawn in some cases from third-party sources, such as news articles. ECF

No. 68-2 at 193 n. 19. In sum, this report simply cannot serve as the basis for a decision as

consequential as finding that NOC is the alter ego of Libya. Nor can such an issue be properly

adjudicated in this procedural context, *i.e.* by a request for a binding determination on NOC's

status within an Opposition to a Motion for a Protective Order concerning a discovery dispute.

Nor would it be consistent with the Supreme Court decision in *First National City Bank*

*v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") to disregard

NOC's presumptive independent status on so flimsy an evidentiary record. In *Bancec*, the Court

held "that government instrumentalities established as juridical entities distinct and independent

from their sovereign should normally be treated as such" and that "the instrumentality's assets

and liabilities must be treated as distinct from those of its sovereign . . . ." *Id.* at 625, 627. The

Court observed that "governments throughout the world have established separately constituted

legal entities to perform a variety of tasks" and that "[t]he organization and control of these

entities vary considerably[.]" *Id.* at 624. These types of entities have "become an essential

instrument of economic development in the economically backward countries which have

insufficient private venture capital to develop the utilities and industries which are given priority

in the national development plan." *Id.* at 625.

In light of the central importance of government instrumentalities to the economic

development of many nations, the Court cautioned against freely ignoring their separate status:

> Freely ignoring the separate status of government instrumentalities
> would result in substantial uncertainty over whether an
> instrumentality's assets would be diverted to satisfy a claim against
> the sovereign, and might thereby cause third parties to hesitate
> before extending credit to a government instrumentality without the
> government's guarantee. As a result, the efforts of sovereign nations
> to structure their governmental activities in a manner deemed
> necessary to promote economic development and efficient

administration would surely be frustrated. Due respect for the actions taken by foreign sovereigns and for principles of comity between nations, see *Hilton v. Guyot*, 159 U.S. 113, 163-164 (1895), leads us to conclude -- as the courts of Great Britain have concluded in other circumstances -- that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such.

*Id.* at 626-27.

In describing the features of a "typical government instrumentality," the Court recognized that governmental instrumentalities are, by definition, subject to close supervision and control by the state. It explained that there are certain "distinctive features" of a "typical government instrumentality," stating:

A typical government instrumentality, if one can be said to exist, is created by an enabling statute that prescribes the powers and duties of the instrumentality, and specifies that it is to be managed by a board selected by the government in a manner consistent with the enabling law. The instrumentality is typically established as a separate juridical entity, with the powers to hold and sell property and to sue and be sued. Except for appropriations to provide capital or to cover losses, the instrumentality is primarily responsible for its own finances. The instrumentality is run as a distinct economic enterprise; often it is not subject to the same budgetary and personnel requirements with which government agencies must comply.

*Id.* at 624.

While these "distinctive features" reflect the considerable control that a foreign state has over a "typical government instrumentality," the Supreme Court found that these features also demonstrate that "[s]eparate legal personality . . . [is] an almost indispensable aspect of the public corporation." *Id.* at 625 (citation omitted). In light of *Bancec's* emphasis on the "distinctive features" of a "typical government instrumentality," courts will refuse to find an instrumentality to be an alter ego of the state where, as here, the instrumentality possesses such features. *See, e.g.*, *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 479 n.15 (2d Cir. 2007);

13

*Flatow v. Islamic Republic of Iran*, 308 F.3d 1065, 1073 (9th Cir. 2002). Possession of the features identified in *Bancec* effectively provides a safe harbor from attempts to overcome the presumption of separateness.

Under *Bancec*, the presumption of separateness can be overcome if the instrumentality is established as the sovereign's alter ego under either of two situations: (1) the "corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created or (2) recognition of the instrumentality as an entity apart from the state 'would work fraud or injustice.'" *TIG v. Republic of Argentina*, 110 F.4th 221, 238 (D.C. Cir. 2024) (quoting *TransAmerica Leasing Inc. v. Republic of Venezuela*, 200 F.3d 843, 847 (D.C. Cir. 2000)).

Considered in light of the Supreme Court's guidance, the facts that Etrak alleges serve only to illustrate that NOC is a "typical government instrumentality" that maintains separate legal status. For example, the facts that Libya is the "sole and direct shareholder" of NOC, selects NOC's board members, and profits from NOC's activities are all inherent in the relationship of shareholders to a company. And Libya's ability to issue regulations that affect NOC's activities are inherent to Libya's powers as a sovereign. If these factors could overcome NOC's legal separateness, *Bancec*'s "presumption" would be meaningless. In this vein, the court in *Transamerica Leasing* also observed that "[i]f majority stock ownership and appointment of the directors were sufficient [to establish the principal-agent relationship], then the presumption of separateness announced in *Bancec* would be an illusion." 200 F.3d at 847.

Regardless, nothing in *Bancec* suggests that control in and of itself is sufficient to overcome the presumption of separateness. Rather, *Bancec* states that the presumption of separateness may be overcome "where a corporate entity is so extensively controlled by its owner that a relationship of *principal and agent* is created." 460 U.S. at 629 (emphasis added).

14

Courts have thus held that this "agency exception" to the presumption of separateness applies only where the plaintiff establishes that the government instrumentality has acted as the agent or alter ego of the foreign state with respect to the underlying events giving rise to the plaintiff's injury. *See BRIDAS S.A.P.I.C v. Government of Turkmenistan*, 447 F.3d 411, 416 (5th Cir. 2006) (explaining that a court may pierce the veil between presumptively separate entities only if "(1) the owner exercised complete control over the corporation with respect to the transaction at issue and (2) such control was used to commit a fraud or wrong that injured the party seeking to pierce the veil"); *Hercaire Int'l, Inc. v. Argentina*, 821 F.2d 559, 563, 565 (11th Cir. 1987) (rejecting execution of assets against foreign state airline "where the airline was neither a party to the litigation nor was in any way connected with the underlying transaction giving rise to the suit.").

Etrak does not even attempt to demonstrate that Libya's alleged control of NOC actually gave rise to its injury. Nor could it – as Etrak concedes, NOC had no involvement in the events giving rise to Etrak's claims against Libya, much less acted as Libya's agent. Therefore, Etrak's allegation of "extensive control" that supposedly creates a relationship of "principal and agent" fails as a matter of law.

Concerning Etrak's allegation that recognizing NOC's separate status would somehow "work a fraud or injustice," Etrak cites only the fact that NOC has an office in Houston, Texas and thereby avails itself of U.S. laws. ECF No. 68 at 33-34. No court has ever held that merely opening an office in the U.S. by itself constitutes a fraud or injustice. *See GSS Grp. Ltd. v. Nat'l Port Auth. of Liberia & Republic of Liberia*, 822 F.3d 598, 608 (D.C. Cir. 2016) (finding that "the requisite 'wrong' must constitute either 'fraud' or 'misuse of the corporate form to promote injustice[.]'") (citing *BRIDAS S.A.P.I.C*, 447 F.3d at 416-17)). Nor could such a rule plausibly be consistent with the presumption of separateness for foreign state instrumentalities.

15

## II.     Etrak is Not Entitled to Discovery About NOC's Assets Because NOC is a Non-Party to the Action

Etrak does not offer any argument or reason why its discovery requests are not precluded under Rule 69 of the Federal Rules of Civil Procedure. The Federal Rules "do not give to a judgment creditor any right to subject to the judgment the property of persons other than the judgment debtor, nor to require the disclosure of assets of persons other than the judgment debtor." *Burak v. Scott*, 29 F. Supp. 775, 776 (D.D.C. 1939); *see also, e.g., Alpern v. Frishman*, 465 A.2d 828, 829 (D.C. 1983); *Robertson v. Cartinhour*, No. 09-1642, 2011 U.S. Dist. LEXIS 156059, at *4-5 (D.D.C. Sept. 16, 2011); *GMA Accessories, Inc. v. Elec. Wonderland, Inc.*, No. 07 Civ. 3219, 2012 U.S. Dist. LEXIS 72897, at *14 (S.D.N.Y. May 22, 2012).

Nor does Etrak contest NOC's standing as a non-party to contest the Individual Subpoenas, the BDO Subpoena, the Bank Subpoenas, and the Company Subpoenas, all of which improperly seek information regarding NOC's assets and financial affairs as distinct from those of Libya. *See Doraleh Container Terminal SA v. Republic of Djibouti*, No. 23-83, 2023 U.S. Dist. LEXIS 168667, at *5 (D.D.C. Sept. 21, 2023) (standing to contest a third-party subpoena exists where the entity "claims some personal right or privilege in the information sought by the subpoena"); *see also Olympic Chartering*, 134 F. Supp. 2d at 535 ("A party whose records have been subpoenaed has 'a sufficient privacy interest in the confidentiality of [the] records' so as to assert standing to challenge the subpoena."); *Griffith v. United States*, No. M8-85, 2007 U.S. Dist. LEXIS 36672, at *1 (S.D.N.Y. April 25, 2007) ("[I]ndividuals whose banking records are subpoenaed have a privacy interest in their personal financial affairs that gives them standing to move to quash a subpoena served on a non-party financial institution.").

NOC is therefore entitled under Federal Rule of Civil Procedure 69 to a protective order precluding Etrak from seeking any discovery from NOC or any other party into NOC's business affairs, assets or corporate structure.

## CONCLUSION

For the foregoing reasons, NOC respectfully requests that the Court enter a protective order, quashing the NOC Subpoena, the Individual Subpoenas, the BDO Subpoena, the Bank Subpoenas, and the Company Subpoenas, and precluding Etrak from seeking discovery from NOC or any other party into NOC's business affairs, assets or corporate structure.

Dated: January 12, 2026

<div style="margin-left:40%">

Respectfully submitted,

CURTIS, MALLET-PREVOST,
  COLT & MOSLE, LLP

*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com

Robert B. Garcia (*pro hac vice*)
101 Park Avenue
New York, NY 10178
(212) 696-6000
robert.garcia@curtis.com

*Attorneys for Non-Party National Oil Corporation of Libya*

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on __January 12___, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Plaintiff.

<div align="right">

*/s /Joseph D. Pizzurro*
Joseph D. Pizzurro

</div>

Dated: January 12, 2026