# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

```
------------------------------------------------------------------ x
ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM :
ŞİRKETİ,                                            :
                                                    :
                        Plaintiff,                  :
                                                    :
            -against-                               :  Case No. 1:22-cv-00864-JMC
                                                    :
THE STATE OF LIBYA,                                 :
                                                    :
                        Defendant.                  :
                                                    :
                                                    :
                                                    :
                                                    :
------------------------------------------------------------------ x
```

## REPLY IN SUPPORT OF ETRAK'S MOTION TO STRIKE

**FISHMAN HAYGOOD, L.L.P.**
Benjamin D. Reichard (*pro hac vice*)
Molly L. Wells (*pro hac vice*)
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
breichard@fishmanhaygood.com

*and*

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

## TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................................... 1

I.   FACTUAL BACKGROUND ................................................................................. 2

II.  ARGUMENT ......................................................................................................... 7

   A.   The Court Should Disregard Libya's Untimely Response ........................... 7

   B.   The Record Forecloses Excusable Neglect ................................................. 9

   D.   Rule 37(b) Authorizes Striking the Response .............................................. 12

   E.   Libya's FSIA, *Peacock*, and Alter-Ego Arguments Are Procedurally Improper ...... 15

   F.   Libya's FSIA, *Peacock*, and Alter-Ego Arguments Also Fail on the Merits .............. 18

      i.   Libya's Argument Under FSIA § 1610(c) Fails ......................................... 18

      ii.  Libya's Arguments Under *Peacock* and *Bancec* Fail ................................. 19

CONCLUSION .............................................................................................................. 25

# TABLE OF AUTHORITIES

Page(s)

**<u>Cases</u>**

*Agbara v. AT&T Mobility LLC*,
 No. 19-CV-2945 (TSC), 2024 WL 1299332 (D.D.C. Mar. 26, 2024)........................................ 8

*Ajaxo Inc. v. Bank of America Tech. & Operations, Inc.*,
 No. CIV–S–07–0945, 2008 WL 5101451 (E.D. Cal. December 2, 2008) .............................. 14

*Alexander v. FBI*,
 192 F.R.D. 50 (D.D.C. 2000)................................................................................................. 20

*Amduso v. Republic of Sudan*,
 288 F. Supp. 3d 90 (D.D.C. 2017)......................................................................................... 20

*Amissah v. Gallaudet Univ.*,
 No. 19-cv-679, 2019 WL 13277397 (D.D.C. Dec. 23, 2019) .................................................. 8

*Bonds v. District of Columbia*,
 93 F.3d 801 (D.C. Cir. 1996) ................................................................................................. 13

*Brown v. Samper*,
 247 F.R.D. 188 (D.D.C. 2008)............................................................................................... 10

*Campaign Legal Ctr. v. Iowa Values*,
 710 F. Supp. 3d 35 (D.D.C. 2024)......................................................................................... 16

*Caudle v. District of Columbia*,
 263 F.R.D. 29 (D.D.C. 2009).................................................................................................. 12

*\*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
 333 F. Supp. 3d 380 (D. Del. 2018).............................................................................. 23, 24, 25

*EM Ltd. v. Banco Cent. de la Republica Argentina*,
 800 F.3d 78 (2d Cir. 2015)..................................................................................................... 23

*Epperson v. Entm't Express, Inc.*,
 242 F.3d 100 (2d Cir. 2001)................................................................................................... 23

*Escamilla v. Nuyen*,
 No. CV 14-00852 (RMM), 2017 WL 4296718 (D.D.C. Sept. 26, 2017)................................... 8

*First Nat. City Bank v. Banco Para El Comerico Exterior de Cuba*,
  462 U.S. 611 (1983) ................................................................................................ 15, 25

*Fonville v. District of Columbia*,
  230 F.R.D. 38 (D.D.C. 2005) .................................................................................... 12

*Gallina v. Wyandotte Police Dep't*,
  No. 4:07–CV–12640, 2008 WL 5090551 (E.D. Mich. Nov. 26, 2008) ..................... 14

*Ham v. Smith*,
  653 F.2d 628 (D.C. Cir. 1981) .................................................................................. 10

*Hamilton v. Ford Motor Co.*,
  636 F.2d 745 (D.C. Cir. 1980) .................................................................................. 13

*Hildebrandt v. Vilsack*,
  287 F.R.D. 88 (D.D.C. 2012) ...................................................................................... 8

*Huthnance v. District of Columbia*,
  255 F.R.D. 285 (D.D.C. 2008) .................................................................................. 20

*Lujan v. Nat'l Wildlife Fed'n*,
  497 U.S. 871 (1990) .................................................................................................... 8

*Mann v. Castiel*,
  729 F. Supp. 2d 191 (D.D.C. 2010) ............................................................................ 7

*\*Moore v. Chertoff*,
  255 F.R.D. 10 (D.D.C. 2008) ............................................................................... 13, 14

*Owens v. Republic of Sudan*,
  No. CV 01-2244 (JDB), 2020 WL 4039302 (D.D.C. July 17, 2020) ........................ 20

*Parsi v. Daioleslam*,
  778 F.3d 116 (D.C. Cir. 2015) .................................................................................. 13

*Patin v. Thoroughbred Power Boats, Inc.*,
  294 F.3d 640 (5th Cir. 2002) .................................................................................... 23

*Peacock v. Thomas*,
  516 U.S. 349 (1996) ....................................................................................... 15, 21, 22

*Pioneer Inv. Servs. Co. v. Brunswick Assocs.*,
  507 U.S. 380 (1993) ............................................................................................... 9, 10

*Republic of Argentina v. NML Cap., Ltd.*,
  573 U.S. 134 (2014) ............................................................................ 18, 20

*Riley v. BMO Harris Bank, N.A.*,
  115 F.Supp.3d 87 (D.D.C. 2015) ...................................................... 10

*Shepherd v. American Broadcasting Companies, Inc.*,
  62 F.3d 1469 (D.C. Cir. 1995) .......................................................... 13

*Smith v. District of Columbia*,
  430 F.3d 450 (D.C. Cir. 2005) ......................................................... 7, 8

*Tatneft v. Ukraine*,
  No. CV 17-582 (CKK), 2021 WL 5353024 (D.D.C. Oct. 18, 2021)...................... 20

*Thomas, Head & Greisen Emps. Tr. v. Buster*,
  95 F.3d 1449 (9th Cir. 1996) ............................................................ 24

*Trane Co. v. Klutznick*,
  87 F.R.D. 473 (W.D. Wis. 1980) ...................................................... 20

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
  200 F.3d 843 (D.D.C. 2000) .............................................................. 25

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
  571 F.3d 221 (2d Cir. 2009) ............................................................. 23

*U.S.I. Props. Corp. v. M.D. Constr. Co.*,
  230 F.3d 489 (1st Cir. 2000) ............................................................ 23

*Whitney v. U.S.*,
  251 F.R.D. 1 (D.D.C. 2008)............................................................... 10

*Yesudian ex rel. U.S. v. Howard University*,
  270 F.3d 969 (D.C. Cir. 2001) ......................................................... 8, 9

**Statutes**
28 U.S.C. § 1330........................................................................... 25
28 U.S.C. § 1610........................................................................... 25

**Rules**
Fed. R. Civ. P. 5(b)(1) .................................................................. 17
Fed. R. Civ. P. 6(b)................................................................... *passim*
Fed. R. Civ. P. 69....................................................................... 18
Fed. R. Civ. P. 37(b)................................................................. 13, 15

Petitioner Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak" or "Petitioner") respectfully submits this Reply in further support of its Motion to Strike the State of Libya's ("Libya") Response to the Court's Order to Show Cause ("Motion to Strike"), ECF No. 67, and in response to Libya's Opposition thereto ("Opposition"). ECF No. 70.

## INTRODUCTION

Etrak's Motion to Strike does not require this Court to resolve tough questions of foreign sovereign immunity or to break new doctrinal ground in post-judgment discovery, which is what Libya requests of the Court. At issue here is a more fundamental and consequential issue: whether this Court's orders and deadlines are enforceable or whether instead Libya can continue to play the delay game without consequence.

Libya's Opposition asks the Court to consider its untimely Response to the Court's Order to Show Cause ("Response"), ECF No. 62, withdraw the Court's September 19, 2025 Order to Show Cause ("Show Cause Order"), ECF No. 49, and impose no sanctions, all while Libya openly flouts the Court's discovery and enforcement orders and refuses to pay Etrak the money it is owed. *See* Opp. at 1–2, 15. Libya contends that its delay should be excused under Rule 6(b), that Etrak suffered no prejudice, that Libya acted in good faith, that the discovery "responses" – merely a litany of boilerplate objections – it provided to Etrak on January 7, 2026 constitute compliance, and that Etrak's post-judgment discovery was both premature under and precluded by the Foreign Sovereign Immunities Act ("FSIA"). *Id.* at 3–14.

Those arguments fail as a matter of law and record. The Federal Rules do not permit a litigant to ignore a court-ordered show-cause deadline, decline to seek relief under Rule 6(b), and later demand merits consideration because it believes its arguments are important. Nor do they permit a party to substitute objections-only papers for compliance with a discovery order,

especially when that order held all objections to have been waived. Moreover, Libya's apparent delay and gamesmanship in open defiance of this Court merits an order pursuant to Rule 37(b) precluding Libya from re-urging the arguments raised in its Response and Opposition. Finally, Libya's FSIA-based arguments are improperly raised in its Opposition, and they fail on the merits.

Libya's arguments also fail on the equities. Libya approaches the Court with a dewy-eyed plea for protection against harsh consequences. Yet it fails to acknowledge that this is a situation of its own making and as a result of its conscious litigation tactics. Libya failed to pay the arbitration award issued against it in 2019, it failed to pay this Court's March 3, 2025 Judgment against it, and it failed to take advantage of repeated opportunities to substantively and constructively engage in this case, both with the Court and directly with Etrak. Libya has an amazingly easy out here: pay Etrak the Judgment it owes. Yet, it refuses. Equity cannot favor a party that thumbs its nose at the Court.

For all these reasons, the Court should grant Etrak's Motion to Strike and preclude Libya from any further attempt to re-urge the arguments it asserts in its Response and Opposition.

## I.    FACTUAL BACKGROUND

The operative facts here are largely undisputed. Libya, nonetheless, plays fast-and-loose with those facts in its Opposition, repeatedly urging that it was "unrepresented" in order to play the innocent victim to suit its arguments (after months of playing dead, when that strategy suited its needs). Thus, in order to set things straight Etrak below provides a timeline of events from the date this Court issued a Judgment in Etrak's favor.

March 3, 2025: this Court confirmed Etrak's arbitration award against Libya, entered judgment for Etrak in the amount of USD 30,128,994.40, and ordered that post-judgment interest would accrue from that date until satisfaction of the judgment. ECF No. 39 ("Judgment"); *see*

Order Granting Etrak's Motion for Relief Under 28 U.S.C. § 1610(c), Dec. 8, 2025 (ECF No. 56), at 1-3 ("1610(c) Order"). Since that time Libya has made no effort to satisfy the judgment.

May 21, 2025: Etrak served post-judgment discovery pursuant to Rule 69 on Libya's counsel of record. Libya did not respond.

June 25, 2025: Etrak's counsel e-mailed Libya's counsel about its failure to respond to Etrak's discovery requests, and the next day Libya's counsel replied that it was not "authorized to accept service of discovery requests on Libya's behalf," despite the fact that it was still enrolled as counsel for Libya. *See* ECF No. 42-4, Ex. B.

July 3, 2025: *after* this Court entered its Judgment, *after* Etrak served its discovery requests on Libya's counsel of record, *after* Etrak followed up on those requests and sought a meet-and-confer with Libya's counsel, and *after* Libya's counsel disclaimed "authority" to accept service for Libya, Libya's counsel, with Libya's consent, filed a Motion to Withdraw, in which it sought to have this Court instruct Etrak to achieve all service going forward through "diplomatic channels," a notoriously lengthy and bureaucratically fraught process. ECF No. 40.

July 17, 2025: Etrak filed a Motion to Compel Libya to respond to its discovery requests, ECF No. 42, and it also filed an Opposition to Libya's Motion to Withdraw. ECF No. 43.

July 28, 2025: Libya re-filed its Motion to Withdraw, again with Libya's consent, due to its failure to comply with LCvR 83.6(c), ECF No. 44, which Etrak again opposed. ECF No. 46; *see* Minute Order dated July 21, 2025.

July 31, 2025: this Court entered a Minute Order, providing: "The Court is in receipt of Defense Counsel's motion to withdraw. As such, the Court ORDERS that **this case is stayed until August 29, 2025 to allow Defendant State of Libya to engage substitute counsel**. If no substitute counsel enters an appearance during this period, the Court will then determine whether

to grant Defendant Counsel's motion." (emphasis added). August 29, 2025 came and went, but Libya did not engage substitute counsel.

September 5, 2025: this Court entered a Notice of Hearing for September 19, 2025.

September 19, 2025: the Court conducted a hearing, attended by Etrak's counsel and Libya's counsel, and discussed Libya's Motion to Withdraw, Etrak's Motion to Compel, and Libya's Motion to Stay Etrak's Motion to Compel. The Court granted Etrak's Motion to Compel, and placed strict conditions upon the withdrawal of Libya's counsel, determining that:

> **Plaintiff properly served Libya with its post-judgment discovery requests** when the documents … were emailed to Defendant Counsel on May 21, 2025.

ECF No. 49, at 1 (emphasis added) ("Show Cause Order");

> **Plaintiff's service of documents to Defendant Counsel up to the date of this Order are deemed to be effective upon Libya**. Defendant Counsel has represented to the Court that it has forwarded any documents it received from Plaintiff to Libya, including, but not limited, to Plaintiff's requests for third-party subpoenas. The Court finds that such notice is sufficient to deem those documents served upon Libya.

id. at 1-2 (emphasis added);

> **Defendant Counsel shall file a notice with the Court confirming that it has provided a copy of this Order to Libya and that it has provided Plaintiff with the names and contact information** for any individuals responsible for responding to Plaintiff's post-judgment discovery requests. Plaintiff may serve any requests or correspondence concerning post-judgment discovery and collection to those individuals going forward. **Upon receipt of notice from Defendant Counsel, the Court will issue an order relieving Attorneys John Lomas and William O'Brien as counsel for Libya**.

id. at 2 (emphasis added); and

> Defendant **Libya is ORDERED to respond to Plaintiff's post-judgment discovery requests, including by producing the requested documents, within forty-five days, by Monday, November 3, 2025**. It is further ORDERED that having received no response from Libya in the time frame provided to respond to discovery requests, **Libya's objections to Plaintiff's post-judgment discovery requests are deemed waived**; and it is further ORDERED that if Libya fails to answer the post-judgment discovery requests and produce requested documents

within 45 days of the entry of this Order, **Libya shall show cause on or before the expiration of the 45-day period why a fine payable to Plaintiff should not be imposed** in the amount of $5,000 per week, doubling every four weeks until reaching a maximum of $80,000 per week, unless and until Libya satisfies its discovery obligations under this Order.

*Id*. at 2 (emphasis added).

October 3, 2025: Libya's counsel filed its Notice of Compliance with the Court's September 19, 2025 Order. ECF No. 50.

October 6, 2025: the Court withdrew the appearances of Libya's counsel in a Minute Entry.

October 24, 2025: Etrak filed a Motion for Relief under 28 U.S.C. § 1610(c). ECF No. 52.

November 5, 2025: Etrak filed a Notice of Noncompliance with the Court's Show Cause Order. ECF No. 53.

December 8, 2025: the Court granted Etrak's Motion for Relief Under 28 U.S.C. § 1610(c). ECF No. 57.

December 18, 2025: Libya filed a Notice of Retention of New Counsel. ECF No. 58.

December 22, 2025: Libya filed its 49-day late Response to Order to Show Cause, without having sought an extension of time or moved for leave. ECF No. 62.

December 24, 2025: Etrak requested that Libya withdraw its improper pleading, which it refused to do, prompting the instant Motion to Strike. *See* ECF No. 67-1, Ex. A.

January 7, 2026: Libya served "Responses and Objections" to Etrak's May 21, 2025 discovery requests.

These facts are dispositive. Despite Libya's protestations that it was "unrepresented" during the dispute over Etrak's post-judgment discovery, Opp. at 2, it is clear that Libya was represented through October 6, 2025. Moreover, this Court offered Libya a generous 30-day stay of these proceedings, specifically instructing Libya to retain new counsel during that period, but

Libya refused to comply. Even after the 30-day stay, this Court allotted Libya an additional 45 days to respond to its Show Cause Order. Libya could easily have retained substitute counsel prior to or during that period but refused.

Libya further refused to comply with the Court's instruction to supply discovery responses to Etrak by November 3, 2025. Libya itself acknowledges that it did not serve Etrak with responses to its May 21, 2025 post-judgment discovery until January 7, 2026, 65 days past the Court's deadline of November 3, 2025. Opp. at 2–3. Libya, however, conceals from the Court that in addition to supplying the responses over two months past the deadline, it also disregarded the Court's instruction that its objections were deemed waived. Libya's responses contain seventeen "General Objections" and four "Objections to Definitions," as well as specific individual objections to each one of Etrak's Requests for Production and Interrogatories. *See* Libya's January 7, 2026 Responses and Objections to Etrak's Discovery, attached as Exhibit A to the Declaration of Benjamin D. Reichard dated January 21, 2026 ("Reichard Decl."), filed herewith. Libya's objections are improper because the Court has deemed them waived. Shielding itself with improperly asserted objections, Libya did not provide a single document in response to Etrak's Requests for Production or offer a single piece of information in response to Etrak's Interrogatories, which further violates the Show Cause Order. *See id*. Counsel for Etrak promptly e-mailed counsel for Libya and requested that Libya remedy its deficient discovery responses. E-mail dated January 8, 2026 from Etrak Counsel to Libya Counsel, attached as Exh. B to Reichard Decl. Libya did not respond.

In sum, Libya refused to respond to Etrak's post-judgment discovery served under Rule 69, prompting this Court to grant Etrak's motion to compel and ordering Libya to respond to discovery, and further ordering Libya to show cause by November 3, 2025 why sanctions should not be

imposed for its noncompliance. Libya did not comply with or respond to the Show Cause Order by the deadline. Libya did not move for an extension of time under Rule 6(b), either before or after the deadline. Libya simply dumped its Response on the Court's docket without explanation or apology. After sanctions began accruing, Libya served "responses and objections" on January 7, 2026, but Libya produced no documents and provided no substantive answers, serving only objections that the Court had already deemed waived.

Against this backdrop, *all of which Libya could have avoided if it had simply paid the Judgment this Court has entered against it*, Libya now asks the Court to treat its untimely filing and objections-only service as compliance and dismantle the Court's enforcement posture. The record does not support that request.

## II.     ARGUMENT

### A.  The Court Should Disregard Libya's Untimely Response

The first and dispositive question is whether the Court should consider Libya's Response to the Order to Show Cause when Libya filed it forty-nine days late and without a motion for leave under Rule 6(b). It should not.

Federal Rule of Civil Procedure 6(b)(1)(B) permits a court to allow a post-deadline filing only "on motion" and only upon a showing of excusable neglect. The D.C. Circuit has made clear that this requirement is not optional. Where a party misses a court-ordered deadline and fails to move for an extension, the district court lacks discretion to excuse the late filing. *Smith v. District of Columbia*, 430 F.3d 450, 456–57 (D.C. Cir. 2005). Under such circumstances, the *Smith* court held that "we are compelled to conclude that the district court abused its discretion in entertaining" the tardy filing. *Id*. at 457. Courts in this District routinely apply *Smith* to strike or disregard untimely submissions notwithstanding asserted equities or "harsh" outcomes. *See Mann v. Castiel*,

729 F. Supp. 2d 191, 195 (D.D.C. 2010) (declining to consider late filing absent Rule 6(b) motion and explaining that "[b]oth the Supreme Court and the D.C. Circuit Court have made it abundantly clear that Rule 6(b) is to be read and applied strictly.") (citing *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 896 (1990)); *Hildebrandt v. Vilsack*, 287 F.R.D. 88, 93 (D.D.C. 2012) (same); *Agbara v. AT&T Mobility LLC*, No. 19-CV-2945 (TSC), 2024 WL 1299332, at *2 (D.D.C. Mar. 26, 2024), (noting that under *Smith*, "courts in this district have refused to consider briefs filed even a few days late" even for pro se litigants for whom "[t]his result may seem harsh"); *Amissah v. Gallaudet Univ.*, No. 19-cv-679, 2019 WL 13277397, at *3 (D.D.C. Dec. 23, 2019) ("Still, the only way to obtain a post-deadline extension for a court-imposed deadline is through Federal Rule of Civil Procedure 6(b)."); *Escamilla v. Nuyen,* No. CV 14-00852 (RMM), 2017 WL 4296718, at *5 (D.D.C. Sept. 26, 2017) (declining to consider late filing absent Rule 6(b) motion).

Libya concedes that its Response was due November 3, 2025 and was filed December 22, 2025. Opp. at 4–5. Libya also concedes it did not file a Rule 6(b) motion. *Id.* at 6–7. This concludes the Court's inquiry. Under *Smith*, the Court must strike Libya's pleading as untimely.

Libya, however, argues that the Rule 6(b) "motion" requirement can be satisfied by its opposition itself, citing *Yesudian ex rel. U.S. v. Howard University*, 270 F.3d 969 (D.C. Cir. 2001). Opp. at 3, n.2. That argument fails.

First, *Smith* addressed and distinguished *Yesudian*, opining that whereas in *Yesudian*, "the Rule 6(b)(2) motion requirement may have been satisfied by a memorandum filed by the requesting party. Here, the [defendant] concedes that it never moved for an extension of the deadline." 430 F.3d 450, 456–57. Likewise, here, Libya never moved for an extension. Moreover, *Yesudian* did not abolish Rule 6(b)'s motion requirement. In *Yesudian*, the issue was whether the court could entertain an opposition memorandum that the defendants filed one week late, where

the plaintiff conceded it was not prejudiced by the delay, there was no "material effect on the proceedings," and "there [was] no suggestion of bad faith." 207 F.3d at 971. Ultimately, the court concluded that the defendant met the excusable neglect showing and deemed that the district court was within its discretion under its Local Civil Rules to treat the opposition memorandum as satisfying the motion requirement. *Id*. *Yesudian* does not establish the rule that Libya advances, which would permit a party to ignore deadlines and later "bootstrap" an extension request out of an opposition brief. At minimum, this Court remains entitled to enforce Rule 6(b)'s gatekeeping function, particularly in an enforcement context where the deadline at issue was a show-cause order designed to compel immediate compliance. Moreover, Libya made no attempt here at showing excusable neglect in its Response, which Etrak has in any event hotly contested in its Motion to Strike and herein.

Because Libya never invoked Rule 6(b), the Court may not consider the Response at all. The Court must strike the Response on this basis alone.

## B.  The Record Forecloses Excusable Neglect

Although the lack of a motion under Rule 6(b) is dispositive, Libya's opposition devotes substantial effort to arguing excusable neglect. For completeness, and to underscore that no equitable escape hatch exists, Etrak shows that the Court must reject that argument. Libya's forty-nine-day delay in responding to the Court's Order to Show Cause does not constitute excusable neglect under Rule 6(b)(1)(B).

Courts assess excusable neglect under the *Pioneer* factors: (1) prejudice; (2) length of delay and impact on proceedings; (3) reason for delay and whether it was within the party's control; and (4) good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 380, 395 (1993). These factors apply with particular rigor where the missed deadline concerns a show-cause order, which

9

is designed to compel immediate explanation and compliance. *Ham v. Smith*, 653 F.2d 628, 631 (D.C. Cir. 1981) (distinguishing brief inadvertent delays from unjustified failures to respond to court directives). None of Libya's proffered excuses hold up to scrutiny.

**Prejudice.** Libya argues there was "no prejudice" because Etrak allegedly lacked an enforceable judgment before December 8, 2025. Opp. at 4. This is a non sequitur. Prejudice is not limited to the moment of levy and attachment; it includes the concrete costs and delays imposed by noncompliance with discovery and court-ordered enforcement. *See Pioneer*, 507 U.S. at 395 (prejudice is not limited to ultimate merits). A judgment debtor cannot simply nullify prejudice by claiming the creditor would have faced additional steps later anyway. Continued delay prejudices both Etrak's ability to enforce its judgment and the Court's ability to enforce its orders.

**Length and Impact.** Libya characterizes forty-nine days as "minimal." Opp. at 4-5. That characterization is incompatible with the nature of the deadline: this was not a routine scheduling matter, but a show-cause order issued in response to noncompliance with a discovery order. In enforcement proceedings, delay is the tactic, especially where discovery concerns assets that can be moved, dissipated, or shielded. Each day of delay that Libya ekes out allows it to further insulate its assets from discovery and attachment. Rewarding such delay sends the wrong message to other judgment debtors who may likewise be tempted to strategically ignore court orders and then launch baseless collateral attacks in order to perpetually delay the day of reckoning.

**Reason and Control.** Libya blames lack of counsel. Opp. at 5. But delay caused by a party's own litigation choices is not excusable. *See Riley v. BMO Harris Bank, N.A.*, 115 F.Supp.3d 87, 97 (D.D.C. 2015) (conscious tactical choices within party control preclude relief); *Brown v. Samper*, 247 F.R.D. 188, 192 (D.D.C. 2008) (that deliberate strategic choices cannot be recharacterized as excusable neglect); *Whitney v. U.S.*, 251 F.R.D. 1, 2 (D.D.C. 2008) (tactical

decisions to delay expert witness identification for cost reasons do not qualify as excusable neglect under Rule 6(b) and distinguishing inadvertent neglect from conscious strategic choices).

Here, Libya was on notice of Etrak's continued pursuit of its Judgment and the need for counsel no later than when Etrak issued its discovery requests on May 21, 2025. When Libya's counsel sought to withdraw, the Court granted a stay of proceedings for 30 days to allow Libya to appoint substitute counsel, and then the Court afforded Libya an additional 45 days to answer its Show Cause Order. Libya had multiple chances to appoint counsel but decided against doing so, electing instead for the tactic of avoidance and delay. Libya further asserts that its former counsel, though it appeared on record, did not "represent Libya with respect to post-judgment discovery." Opp. at 5. Unsurprisingly, Libya offers no authority for the proposition that party counsel may limit its representation in a manner that insulates the represented party from honoring its discovery obligations under the Federal Rules. Finally, Libya argues that it was unable to receive any legal advice on the implications of the Show Cause Order because the Court "granted counsel's motion to withdraw on the same day it issued the Show Cause Order." Opp. at 5. The proposition is dubious on its face; it is flat-out wrong on the facts. The Show Cause Order was issued on September 19, 2025. ECF No. 49. The Court granted the motion to withdraw in a Minute Order dated October 6, 2025. Thus, Libya's former counsel represented it for over two weeks after the Show Cause Order issued. Even taking Libya's narrative at face value, it does not justify ignoring a court-ordered show-cause deadline. The relevant question is not whether Libya preferred to have counsel; it is whether Libya sought relief from the Court or complied with the Court's directives. It did neither.

**Good Faith.** Libya asserts good faith based on its late Response and January 7 discovery objections. Opp. at 6. The chutzpah is astounding. There is a binding order of this Court in place that instructs Libya that any objections to Etrak's May 21, 2025 discovery requests are deemed

waived and that the deadline for supplying its discovery responses was November 3, 2025. Show Cause Order at 2. For Libya to belatedly serve objections only, after objections were deemed waived, after sanctions began accruing, and without having sought to pay any of the levied fines, is not good-faith compliance. It is an act of flagrant contempt.

Libya cannot satisfy the requisite showing under Rule 6(b) of excusable neglect.

### C.  Libya's Post-Deadline "Responses" Do Not Constitute Compliance

Libya argues that, regardless of timing, it has now "responded" to discovery. That contention fails as a matter of law and reinforces the need for continued enforcement. Serving objections alone, after objections have been deemed waived, does not satisfy a court-ordered obligation to respond to discovery.

Once objections are waived, a party must produce responsive information. Serving objections alone, without production, is legally ineffective and noncompliant. *Caudle v. District of Columbia*, 263 F.R.D. 29, 32-33 (D.D.C. 2009) (holding untimely objections waived and ordering production); *Fonville v. District of Columbia*, 230 F.R.D. 38, 42 (D.D.C. 2005) (same).

Libya argues that its January 7 service of "responses and objections" demonstrates compliance. Opp. at 6. That is incorrect. First, the Court ordered responses, not a new round of objections. Second, objections are not a substitute for production or substantive answers. Third, Libya's insistence that objections equal compliance is particularly untenable because Libya uses those objections to raise arguments the Court never authorized it to litigate in lieu of obeying the discovery order. Libya has not complied with the Show Cause Order. Sanctions remain warranted.

### D.  Rule 37(b) Authorizes Striking the Response

The Court's authority to strike Libya's Response does not rest solely on Rule 6(b). Rule 37(b) independently supports that remedy and, alongside the Court's inherent authority, supports

precluding Libya from re-urging the arguments at issue here. Striking Libya's pleadings with prejudice is an apt sanction under Rule 37(b) for failure to obey discovery and enforcement orders.

Rule 37(b)(2)(A) authorizes sanctions, including striking pleadings with prejudice, where a party fails to obey a discovery order. The D.C. Circuit has explicitly recognized that Rule 37(b) sanctions serve a punitive purpose designed to vindicate judicial authority rather than merely compensate injured parties. In *Hamilton v. Ford Motor Co.*, the court stated that "the principal purpose of Rule 37(b) is punitive, not compensatory" and that the rule "'provides generally for sanctions against parties or persons unjustifiably resisting discovery.'" 636 F.2d 745, 747 (D.C. Cir. 1980) (quoting Advisory Committee Note to 1970 Amendments of the Federal Rules of Civil Procedure). Rule 37(b) sanctions work in conjunction with courts' inherent authority to protect institutional integrity. *See Shepherd v. American Broadcasting Companies, Inc.*, 62 F.3d 1469, 1472 (D.C. Cir. 1995) (establishing courts' inherent power to "protect their institutional integrity and to guard against abuses of the judicial process with contempt citations, fines, awards of attorneys' fees, and such other orders and sanctions as they find necessary, even including dismissals and default judgments."); *Parsi v. Daioleslam*, 778 F.3d 116, 130 (D.C. Cir. 2015) (same).

In *Moore v. Chertoff*, the court analyzed how Rule 37 sanctions serve to vindicate judicial authority for a preclusive sanction through a framework considering: (1) the resulting prejudice to the other party, (2) any prejudice to the judicial system, (3) the need to deter similar misconduct in the future, and (4) whether lesser sanctions would achieve deterrence. 255 F.R.D. 10, 32 (D.D.C. 2008) (citing *Bonds v. District of Columbia,* 93 F.3d 801, 808 (D.C. Cir. 1996))

As to the first and second factors, the *Moore* court found prejudice satisfied by the defendants' "failure to timely search for and serve the documents responsive to [the plaintiffs']

requests for production of documents[,] … [which] prejudiced [the plaintiffs'] ability to conduct meaningful discovery" and led the plaintiffs to "waste time, money, and effort in pursuit of cooperation that [Defendant] is obligated to provide under both the Federal Rules and the Court's orders." *Id*. at 33 (citing *Gallina v. Wyandotte Police Dep't,* No. 4:07–CV–12640, 2008 WL 5090551, at *2 (E.D. Mich. Nov. 26, 2008)). Likewise, here, Libya has prejudiced Etrak's ability to conduct meaningful discovery into assets to satisfy its Judgment and wasted Etrak's time and money in the process.

The *Moore* court also emphasized that "counsel may not pick and choose when to comply with a court order depending on counsel's unilaterally determined excuses or justifications not to comply with the order. The order is either obeyed or appealed." *Id*. at 34 (quoting *Ajaxo Inc. v. Bank of America Tech. & Operations, Inc.,* No. CIV–S–07–0945, 2008 WL 5101451, at * 2 (E.D. Cal. December 2, 2008)). The *Moore* court found that the defendant had "made a mockery of Rule 34, the case management orders of the court, the order granting Plaintiffs' motion to compel, and the evidentiary hearing." *Id*. at 35.

Likewise, here, Libya has made a mockery of the Court's orders. The record is not one missed deadline. It is continued defiance punctuated by post hoc filings attempting to substitute merits briefing for compliance and objections for responses. Libya asks the Court to deny the motion to strike, "withdraw the Show Cause Order," and impose "no sanctions." Opp. at 2. That is not a request for leniency; it is a request that the Court surrender its enforcement posture entirely, despite Libya's ongoing noncompliance.

In assessing sanctions under Rule 37(b), the *Moore* court also reasoned that "multiple lesser sanctions the court has previously imposed … did not deter the discovery misconduct." *Id*. at 35-36. Where a party continues to defy a court order, the question is not whether striking is "harsh"

14

in the abstract; it is whether lesser measures have worked. Here, lesser measures have failed. Libya ignored discovery requests. It ignored the Motion to Compel. It ignored the Show Cause Order. Monetary sanctions began to pile up but Libya did not comply. Allowing Libya to litigate the merits while still withholding discovery and ignoring the accumulating fines would reward noncompliance and undermine Rule 37's purpose.

Striking the Response with prejudice to refiling is proportionate, necessary, and authorized under Rule 37(b), along with the Court's inherent authority.

### E.  Libya's FSIA, *Peacock*, and Alter-Ego Arguments Are Procedurally Improper

Libya devotes substantial space to FSIA § 1610(c), *Peacock v. Thomas*, 516 U.S. 349 (1996) (hereinafter, "*Peacock*"), and *First Nat. City Bank v. Banco Para El Comerico Exterior de Cuba*, 462 U.S. 611, 622 n.11 & 623 (1983) (hereinafter, "*Bancec*"). Opp. at 7, 9-14. None of those issues is properly before the Court. Courts in this District repeatedly hold that arguments raised for the first time in response to sanctions are waived. But even if this Court finds that Libya has not waived these arguments, they are without merit.

By failing to raise its § 1610(c), *Peacock*, and *Bancec* arguments timely, Libya waived them. Libya first raised its § 1610(c) objection in its late filed Response. Response, at 3-5. It first raised its *Peacock*- and *Bancec*-related arguments even later, in its Opposition. *See* Opp. at 7, 9-10. In all three cases, the arguments were neither posed as objections to Etrak's discovery in any timely discovery response, included in any opposition to Etrak's motion to compel, raised by Libya's counsel at the status conference during discussion of the motion to compel, nor presented in any timely filing showing cause for its noncompliance with the Show Cause Order. Libya has soundly waived these arguments many times over. *See, e.g.*, *Campaign Legal Ctr. v. Iowa Values*, 710 F. Supp. 3d 35, 52 (D.D.C. 2024).

Libya now asks this Court to overlook its contempt and ignore its waiver, because it was purportedly "unrepresented" when Etrak issued its post-judgment discovery to *Libya's enrolled counsel*, Etrak filed its motion to compel and served it on *Libya's enrolled counsel*, this Court granted Libya a stay upon *Libya's enrolled counsel*'s request so that Libya could enroll substitute counsel, this Court held a status conference attended by undersigned counsel and *Libya's enrolled counsel*, and this Court served on *Libya's enrolled counsel* the Show Cause Order compelling Libya to respond to discovery or else show cause why it should not face fines. *See, e.g.*, Opp. at 2. Even once the Show Cause Order issued, Libya had more than six weeks to enroll substitute counsel and respond. Once again, it elected not to do so. This Court should not be persuaded by Libya's feeble appeals to equity involving any purported lack of representation.[1]

Incredibly, Libya suggests that it was Etrak's desire to capitalize on Libya's purported lack of representation that caused Etrak to file its motion to compel when it did. Opp. at 5 ("Etrak, knowing that Libya was not being advised by counsel regarding post-judgment proceedings, nevertheless filed its motion to compel two weeks later."). To the contrary, it was Libya's gamesmanship that triggered Etrak's motion to compel. Etrak had to file its motion to compel when it did because Libya had failed to respond to Etrak's lawfully served discovery requests, was seeking to withdraw its counsel in this matter, was refusing to enroll substitute counsel, and was asking this Court to require service on Libya post-withdrawal via "diplomatic channels." If Etrak

---

[1] It bears mentioning, too, that Libya's previously enrolled counsel included Eversheds Sutherland's Global Co-Head of International Arbitration, William T. O'Brien. Eversheds continues to represent Libya in connection with Etrak's other enforcement efforts around the world. *See, e.g.*, ECF No. 46, at 2; *see also* ECF No. 1-4, at 2 (Eversheds represented Libya in Etrak arbitration); ECF No. 29-2, at 36 (Eversheds represented Libya in German proceeding); ECF No. 31-4, at 1 (Eversheds represented Libya in French proceeding). The notion that Eversheds simply abandoned its client in these proceedings against that client's wishes strains credulity, and it is belied by the motions to withdraw themselves, each of which state Libya's consent thereto.

truly desired to capitalize on Libya's lack of representation, then it would not have opposed Libya's motion to withdraw counsel (twice!). And if Libya truly desired the advice of counsel during post-judgment proceedings, it had ample opportunity to enroll substitute counsel thanks to this Court's stay of the case for expressly that purpose as well as the six-week lag time this Court afforded Libya between the date of the Show Cause Order and the show-cause deadline. But Libya made a strategic decision and chose not to, believing it would benefit from a lack of counsel to frustrate communication or service. It cannot now complain of any alleged lack of representation.

Moreover, Libya's complaints regarding the timing of Etrak's motion to compel raise the question of what Libya believes would have been the proper time. Certainly, if a lack of representation were the problem, waiting until Libya's enrolled counsel had withdrawn would have been no help whatsoever. The point of service is to provide notice, and there is no better way to provide notice than via service on a party's counsel. *See* Fed. R. Civ. P. 5(b)(1) (prioritizing service on the attorney). Alternatively, if Libya's argument is that it made a strategic decision to proceed without counsel because Etrak had not obtained a § 1610(c) order and would enroll substitute counsel only when such order was obtained, then its argument is doubly problematic. First, Libya's § 1610(c) argument is not founded in black letter law, such that the bare fact of its conception suggests that Libya was in fact being advised by crafty counsel looking to invent still more hurdles to judgment creditors' post-judgment efforts. Second, if indeed Libya was aware of its § 1610(c) objection to Etrak's discovery, then Libya plainly lacks any good cause for waiting until December 22, 2025, to assert it. In sum, the equities here do not favor permitting Libya to advance arguments that it has waived.

17

### F.  Libya's FSIA, *Peacock*, and Alter-Ego Arguments Also Fail on the Merits

#### i.  Libya's Argument Under FSIA § 1610(c) Fails

Though Libya has plainly waived its § 1610(c) objection, it is in any case entirely without merit. Libya argues that a judgment creditor cannot conduct post-judgment discovery under Rule 69 until after it has obtained a § 1610(c) order. Opp. at 10. For this proposition, Libya finds no support in the plain language of either provision. Indeed, on its face, § 1610(c) prevents only "attachment or execution" against the assets of "a foreign state" or "an agency or instrumentality of a foreign state" – not post-judgment discovery – prior to issuance of a § 1610(c) order. As the U.S. Supreme Court held in a case examining whether the FSIA limits post-judgment discovery, the FSIA "speaks of discovery only once" and in a manner that is plainly inapplicable here: "a subsection requiring courts to stay discovery requests directed to the United States that would interfere with criminal or national-security matters." *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142-43 (2014). Rule 69 permits discovery "[i]n aid of the judgment or execution" from any person, including the judgment debtor, without limitation by any provision of the FSIA. Fed. R. Civ. P. 69; *NML Cap., Ltd.*, 573 U.S. at 143 n.3 (explaining that, though Rule 69 "states that 'a federal statute governs to the extent it applies,'" it does not incorporate the FSIA because, "[s]ince the [FSIA] does not contain implicit discovery-immunity protections, it does not 'apply' (in the relevant sense) at all"). In case after case, of which Etrak cited just a representative sample in its Motion to Strike, judgment creditors have conducted post-judgment discovery without first obtaining any order under § 1610(c). *See* Mot. to Strike, at 22-23 (collecting cases). Libya argues that these cases prove nothing because they do not squarely address whether post-judgment discovery is permissible prior to a § 1610(c) order. Opp. at 11. But sometimes, as here, silence is telling. Neither the litigants nor the judges in these cases saw any problem with conducting or

compelling post-judgment discovery in the absence of a § 1610(c) order. That is because the law plainly does not require it.

In its desperate bid to undo the past year of Etrak's efforts and this Court's rulings, Libya can manage only one *Micula* hearing transcript from a district court in New York that also does not say what Libya says it does and a handful of cases that stand only for the entirely unhelpful proposition that discovery into a defendant's assets or wealth may be disallowed during the merits phase and reserved instead for post-judgment discovery. *See* Opp. at 11-12. Yet, as for the former, as Etrak has already explained, not even the judge in *Micula* ordered that a § 1610(c) order was a prerequisite to post-judgment discovery. *See* Mot. to Strike, at 24-26. As for the latter, cases that merely distinguish between merits-phase discovery and post-judgment discovery are of no use to this Court, *because this matter is obviously in a post-judgment posture*. Libya would have this Court excuse its willful and ongoing noncompliance with court orders based on nonsense theories counsel invented from whole cloth simply because "no court has ever considered and rejected" them. Opp. at 13. The Court should decline this legally tendentious invitation.

### ii. Libya's Arguments Under *Peacock* and *Bancec* Fail

Finally, Etrak addresses Libya's other waived arguments under *Peacock* and *Bancec*. In sum, Libya argues that there is "good cause" to consider Libya's untimely objections, because, it claims, Etrak's discovery impermissibly sought information regarding assets held by Libyan agencies or instrumentalities, against which Libya argues Etrak cannot enforce the Judgment as a matter of law. *See* Opp. at 4, 9-10. For multiple reasons, Libya is wrong.

First, Etrak is entitled to the discovery it seeks from Libya, including Etrak's requests related to assets nominally held by Libyan agencies or instrumentalities or the relationships between Libya and those agencies or instrumentalities. "As a general rule, legal victors may engage

in broad post-judgment discovery," including "sweeping discovery against foreign sovereigns." *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 94 (D.D.C. 2017); *see also Tatneft v. Ukraine*, No. CV 17-582 (CKK), 2021 WL 5353024, at *3-5 (D.D.C. Oct. 18, 2021) (citing *NML Cap., Ltd.*, 573 U.S. at 145). Indeed, the U.S. Supreme Court is clear that "[t]here is no … provision [in the FSIA] forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets." *NML Cap., Ltd.*, 573 U.S. 134, 142-143; *see id.* at 144-45. Under Rules 33 and 34 of the Federal Rules of Civil Procedure relative to interrogatories and requests for production, respectively, "a party against whom discovery is sought is under an obligation to actively search for relevant information it may not be aware of *but is entitled to access*." *Owens v. Republic of Sudan*, No. CV 01-2244 (JDB), 2020 WL 4039302, at *2 (D.D.C. July 17, 2020) (emphasis added). Consequently, one responding to discovery must produce information or documents as long as the "information [is] available to [it]" or it has "the right, authority or practical ability to obtain the documents from a non-party to the action," respectively. *See id.*; *Amduso*, 288 F. Supp. 3d at 96 ("If [the foreign sovereign] owns or controls a particular entity, any documents in that entity's possession are likely also within [the sovereign]'s control and therefore subject to discovery."); *Huthnance v. District of Columbia*, 255 F.R.D. 285, 292–93 (D.D.C. 2008) (quoting *Alexander v. FBI*, 192 F.R.D. 50, 53 (D.D.C. 2000) and *Trane Co. v. Klutznick*, 87 F.R.D. 473, 476 (W.D. Wis. 1980)). A party claiming it lacks sufficient control over an entity to obtain documents or information therefrom must object on that basis and make "a specific factual showing that [it] has no control over the records." *Owens*, 2020 WL 4039302, at *4.

As Etrak demonstrated in its Opposition to the Libyan National Oil Company's ("LNOC") Motion for Protective Order, Libya's control over LNOC is so extensive that, under *Bancec*, Etrak may enforce its judgment against Libyan assets nominally held by LNOC. ECF No. 68, at 15-22,

31-34. A recent opinion of the Paris Court of Appeal confirms that LNOC lacks any functional or financial independence from the State of Libya. *See* ECF No. 68-2, at 287-97. Certainly, then, Libya exercises sufficient control over LNOC to allow Libya to obtain documents or information from LNOC as required by the Federal Rules.[2] Moreover, Libya failed to make any factual showing of its purported lack of control over LNOC. It cannot now object on this basis. Etrak's requests to Libya are not "[im]properly framed" for seeking documents or information relative to LNOC.

Second, *Peacock* does not undermine Etrak's right to obtain the discovery sought. Libya asserts that, under *Peacock*, Etrak cannot seek discovery into Libyan assets nominally held by Libyan agencies or instrumentalities because "this Court's ancillary jurisdiction over these post-judgment proceedings, as a matter of law, cannot support an attempt to reach the assets of nonparties even if that attempt is premised on the existence of an alter ego relationship." Opp. at 9. *Peacock* stands for no such thing, and it says nothing at all about Etrak's ability to conduct discovery into Libya's executable assets.

In *Peacock*, the plaintiff filed suit in federal court under ERISA against his former employer corporation and an officer thereof for benefits due under the corporation's benefits plan. *Peacock*, 516 U.S. at 351. The court found that the employer had breached its fiduciary duties but not the officer and issued judgment against the employer only. *Id.* Unable to collect against the employer, the plaintiff filed another lawsuit in federal court against the same. *Id.* at 352. The district court ultimately entered a judgment against the officer in the same amount as the first suit's

---

[2] Notably, the documents or information regarding the relationship between Libya and the LNOC should exist in the hands of either or both of these parties. Once Libya made it clear that it would rather be sanctioned for contempt than provide information about its assets, Etrak sought the documents from others, including LNOC. Now, although both Libya and LNOC are before this Court and possess documents or information to which Etrak is entitled under binding caselaw, Etrak somehow remains without the discovery.

judgment, $187,628.93, plus interest and fees, "notwithstanding the fact that [the officer]'s alleged fraudulent transfers totaled no more than $80,000." *Id.* Though the district court did not expressly rule on subject matter jurisdiction, the plaintiff had argued that the court had jurisdiction under ERISA, and the court found that the plaintiff "had properly stated a claim under ERISA for piercing the corporate veil." *Id.* at 353. Ultimately, the Supreme Court reversed, reasoning that "no provision of ERISA . . . provides for imposing liability for an extant ERISA judgment against a third party," *id.*, and that the ancillary jurisdiction enjoyed by courts over supplementary proceedings "to execute, or to guarantee eventual executability of, a federal judgment" did not extend so far as to cover a subsequent lawsuit to impose liability under a state-law theory on a new party for the underlying judgment in which he was not named. *Id.* at 357-58. And, because the Supreme Court clearly explained that the second judgment exceeded the amount of the $80,000 fraudulent transfer claim and instead matched the amount of the initial judgment, it was clear that the facts of *Peacock* pushed it beyond the court's ancillary jurisdiction over execution or attachment. The plaintiff was not merely seeking the employer's assets nominally held by the officer; the plaintiff was attempting to impose new liability on the officer for the initial judgment.

By contrast, here, Etrak has not filed a separate lawsuit through which it seeks to impose new liability on a new party for the initial judgment and does not ask this Court to exercise ancillary jurisdiction over such an action. Etrak, having established jurisdiction over Libya and won confirmation of its arbitration award, is conducting post-judgment discovery within the original action. That discovery at times seeks information or documents regarding assets nominally held by Libya's agencies or instrumentalities as well as the relationship between Libya and those agencies or instrumentalities, but it involves no new "claim" against or "liability" of such agencies or instrumentalities, nor is it intended to lead to such a situation. Instead, it may ultimately lead to

execution of Etrak's judgment against Libyan assets nominally held by a Libyan agency or instrumentality, such as LNOC. But this is nothing new, and it would not run afoul of *Peacock*. Indeed, an extensive line of cases establishes that where a judgment creditor advances agency or alter ego arguments "only to collect a judgment but not to establish [new] liability, [no] independent basis for jurisdiction [is required]." *See, e.g.*, *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 392-93 (D. Del. 2018), *aff'd and remanded*, 932 F.3d 126 (3d Cir. 2019) (citing *EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78, 91 n.56 (2d Cir. 2015) ("Our precedent supports the view ... that once an instrumentality of a sovereign state has been deemed to be the alter ego of that state ... the instrumentality and the state are to be treated as one and the same for all purposes."); *Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (stating alter egos "are treated as one entity for jurisdictional purposes") (internal quotation marks omitted); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002) (alter egos "are considered to be one and the same under the law"); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) ("Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party."); *U.S.I. Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 496 (1st Cir. 2000) (Where the post judgment claim is simply a mode of execution designed to reach property of the judgment debtor in the hands of a third party, federal courts have often exercised enforcement jurisdiction.... Where the state procedural enforcement mechanisms incorporated by Rule 69(a) allow the court to reach assets of the judgment debtor in the hands of third parties in a continuation of the same action, such as garnishment or attachment, federal enforcement jurisdiction is clear."); *Thomas, Head & Greisen*

*Emps. Tr. v. Buster*, 95 F.3d 1449, 1454 & n.7 (9th Cir. 1996) (where judgment creditor "is not

attempting to establish [third party] liability for the original judgment... *Peacock* [is] inapposite").

The Third Circuit's opinion in *Crystallex* is particularly instructive. There, the district court

and the Third Circuit both rejected the very proposition that Libya advances here. Namely, the

court exercised ancillary jurisdiction in the plaintiff's post-judgment attachment action against the

judgment debtor to attach assets belonging nominally to the debtor's agency or instrumentality,

Petroleos de Venezuela, S.A. ("PDVSA"), under an agent or alter ego theory. *Crystallex*, 932 F.3d

at 135–36. In so doing, it rejected PDVSA's argument, under *Peacock*, "that a district court cannot

exercise post-judgment enforcement jurisdiction over a party other than the judgment debtor based

on a theory of 'alter ego' or 'veil piercing' unless it has an 'independent basis' for jurisdiction over

the third party." *Id.* at 138. The Third Circuit distinguished *Peacock*:

> [*Peacock*] was not a case involving foreign sovereigns or the Sovereign Immunities
> Act. The Act is a specialized jurisdictional statute designed to address a specific
> problem—the extent to which foreign sovereigns and their instrumentalities are
> immune from suit and attachment in our courts. And the *Bancec* doctrine—the
> applicability of which is the core question here—is a federal common-law
> outgrowth of that specialized statute. It (the doctrine) exists specifically to enable
> federal courts, in certain circumstances, to disregard the corporate separateness of
> foreign sovereigns to avoid the unfair results from a rote application of the
> immunity provisions provided by the Sovereign Immunities Act. Nothing in
> *Peacock* leads us to believe the Supreme Court expected or intended its decision in
> that case to restrain the application of *Bancec* in post-judgment proceedings.

*Id.* at 139. In sum, the Third Circuit squarely held, "so long as PDVSA is Venezuela's alter ego

under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-

immune assets."[3] *Id.* Here, Etrak seeks post-judgment *discovery* rather than *attachment*,

positioning this case even further from the ancillary jurisdiction held impermissible in *Peacock*.

---

[3] The "non-immune" qualifier refers here to the need to establish an exception to execution
immunity under 28 U.S.C. § 1610 in addition to the jurisdictional immunity exception.

Even if Etrak eventually sought to execute against a Libyan agency or instrumentality's assets and the court were to frame the circumstances to encompass an alter ego "claim," that "claim," arising as it does under *Bancec* and the FSIA, is a product of "both international law and federal common law" over which this Court would have jurisdiction in any case. *See Bancec*, 462 U.S. at 622 n.11 & 623. It is therefore distinguishable from the state-law "veil piercing" claim at issue in *Peacock*. Finally, if this Court desires an independent basis for jurisdiction, one exists under 28 U.S.C. § 1330 and FSIA § 1605(a)(6). *See, e.g. Crystallex*, 333 F. Supp. 3d at 394 n.10; *see also Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.D.C. 2000) (recognizing that *Bancec* analysis offers not just "exceptions to the rule that a foreign sovereign is not *liable* for the acts of an instrumentality of the state" but also "exceptions to the rule that a foreign sovereign is not *amenable to suit* based upon the acts of such an instrumentality" (emphasis added)). Simply put, *Peacock* is inapplicable and, in any case, distinguishable in every material respect and *Bancec*, far from assisting Libya, favors Etrak's position here.

## CONCLUSION

This case presents a straightforward enforcement problem. Libya missed a show-cause deadline by seven weeks without seeking leave and continues to withhold discovery. The Court should strike the Response with prejudice and continue enforcement. Even if it considers Libya's arguments, the Court can and should reject them. Libya cannot show excusable neglect, its conduct merits Rule 37(b) sanctions, and the purportedly important FSIA-based and jurisdictional arguments it failed previously to raise, and therefore waived, fail on the merits. This Court should confirm that the fines it levied continue to accrue, equaling $120,000 as of January 19, 2026.[4]

---

[4] Commencing November 3, 2025, weeks 1–4: $5,000/week = $20,000; weeks 5–8: $10,000/week = $40,000; weeks 9-11: $20,000/week = $60,000. Total as of January 19, 2026 = $120,000.

**DATED:** January 21, 2026   Respectfully submitted,

         /s/ *Benjamin D. Reichard*
         Benjamin D. Reichard (*pro hac vice*)
         Molly L. Wells (*pro hac vice*)
         **Fishman Haygood LLP**
         201 St. Charles Ave., Suite 4600
         New Orleans, LA 70170
         Tel.: (504) 556-5505
         Fax: (504) 586-5250
         Email: breichard@fishmanhaygood.com

         Charles Owen Verrill, Jr., Esq.
         Bar No. 13245
         Suite M-100
         1055 Thomas Jefferson St. NW
         Washington, D.C. 20007
         (202) 390-8245
         charlesverrill@gmail.com

         *Counsel for Etrak*

## CERTIFICATE OF SERVICE

   I certify that on January 21, 2026, a copy of the foregoing was served via electronic CM/ECF on all counsel of record.

         /s/ *Benjamin D. Reichard*
         Benjamin D. Reichard