UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

------------------------------------------------------------------- x
ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM : 
ŞİRKETİ, :
 :
            Plaintiff, :
 :
     -against- :   Case No. 1:22-cv-00864-JMC
 :
THE STATE OF LIBYA, :
 :
           Defendant. :
 :
 :
 :
 :
------------------------------------------------------------------- x

### ETRAK'S MOTION FOR CIVIL CONTEMPT AND SANCTIONS
### AND INCORPORATED MEMORANDUM OF LAW IN SUPPORT

**FISHMAN HAYGOOD, L.L.P.**
Benjamin D. Reichard (*pro hac vice*)
Molly L. Wells (*pro hac vice*)
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
breichard@fishmanhaygood.com

*and*

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com
*Counsel for Etrak*

**Table of Contents**

*Page*

INTRODUCTION ............................................................................................................... 1

    I.    FACTUAL AND PROCEDURAL BACKGROUND ..................................................... 2

    II.    ARGUMENT ................................................................................................... 5

        A.    Libya Is in Civil Contempt of the Court's Show Cause Order ................................ 6

        B.    The Court Should Enter a Contempt Order Implementing the Escalating Fine Structure ..................................................................................................................... 8

        C.    Rule 37(b) Sanctions and Mandatory Fee-Shifting Are Required .......................... 10

        D.    Narrow Evidentiary Preclusion Is Necessary to Prevent Libya from Profiting from Its Obstruction ..................................................................................................... 12

CONCLUSION ................................................................................................................. 15

## Table of Authorities

Page(s)

**Cases**

*3E Mobile, LLC v. Glob. Cellular, Inc.*,
  222 F. Supp. 3d 50 (D.D.C. 2016) ................................................................ 12, 13

*Agudas Chasidei Chabad of United States v. Russian Federation*,
  128 F. Supp. 3d 242 (D.D.C. 2015) .................................................................... 9

*Armstrong v. Exec. Office of the President*,
  1 F.3d 1274 (D.C. Cir. 1993) ............................................................................. 6

*Bonds v. District of Columbia*,
  93 F.3d 801 (D.C. Cir. 1996) ........................................................................... 13

*Caudle v. District of Columbia*,
  263 F.R.D. 29 (D.D.C. 2009) ............................................................................ 7

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ..................................................................................... 12, 14

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
  603 F. Supp. 2d 1 (D.D.C. 2009) ....................................................................... 9

*Food Lion, Inc. v. United Food & Com. Workers Int'l Union*,
  103 F.3d 1007 (D.C. Cir. 1997) ......................................................................... 6

*In re Byrd Coal Co.*,
  83 F.2d 256 (2nd Cir. 1936) .............................................................................. 6

*Ormeno v. 3624 Georgia Ave., Inc.*,
  309 F.R.D. 29 (D.D.C. 2015) ............................................................................ 7

*Shepherd v. Am. Broad. Cos.*,
  62 F.3d 1469 (D.C. Cir. 1995) ......................................................................... 11

*United States v. Rylander*,
  460 U.S. 752 (1983) ...................................................................................... 6, 7

*United States v. United Mine Workers*,
  330 U.S. 258 (1947) ...................................................................................... 6, 8

*Webb v. District of Columbia*,
  146 F.3d 964 (D.C. Cir. 1998) ......................................................................... 13

**Rules**

Fed. R. Civ. P. 37(a)(4) ........................................................................................................... 6, 11

Fed. R. Civ. P. 37(b)(2) ........................................................................................................... Passim

Petitioner Etrak İnşaat Taahhüt ve Ticaret Anonim Şirketi ("Etrak") respectfully moves this Court for an order adjudging Respondent the State of Libya in civil contempt of the Court's September 19, 2025 Order (ECF No. 49); imposing coercive monetary sanctions including escalating fines accruing beginning as of November 3, 2025 and continuing prospectively; compelling immediate, objection-free compliance with post-judgment discovery; awarding attorneys' fees and costs pursuant to Federal Rule of Civil Procedure 37(b)(2)(C); and imposing narrowly tailored evidentiary preclusion. The grounds for this Motion are set forth in the incorporated Memorandum of Law.

## INTRODUCTION

Etrak's motion does not involve a routine discovery dispute. It is a dispute over the Court's enforcement authority and Libya's lack of obedience to that authority. Post-judgment proceedings work only if court-ordered discovery is treated as mandatory. When a sovereign judgment debtor ignores a clear enforcement order and treats a compliance deadline as optional, the injury is not merely to the judgment creditor—it is to the Court's authority to make its judgments mean something.

On September 19, 2025, after Libya ignored post-judgment discovery and forced motion practice, the Court entered a clear and comprehensive order. ECF No. 49 ("Show Cause Order"). That Show Cause Order compelled compliance by a date certain and warned of escalating sanctions for continued noncompliance. *Id*. at 1–2. The Court left no ambiguity as to what Libya was required to do, when it was required to do it, and what would follow if Libya refused.

Libya did nothing to seek relief from the Court's deadline and did not comply by November 3, 2025. Instead, Libya missed the deadline entirely, produced no documents, provided no substantive interrogatory responses, and filed nothing with this Court to demonstrate cause for

these failures. Months later, Libya served objection-laden submissions asserting positions the Court had already foreclosed. *See* State of Libya's Responses and Objections to Etrak's Post-Judgment Interrogatories and Requests for Documents, dated January 7, 2026 ("Jan. 7 Discovery Responses"), ECF No. 74-1, at Exh. A. Etrak requested that Libya cure its deficient discovery responses, but Libya ignored that request. ECF No. 74-1, at Exh. B.

Civil contempt exists to coerce compliance and remedy ongoing violations. The undisputed record here therefore requires the following relief: (1) an adjudication of civil contempt; (2) confirmation and implementation of the fine structure previously announced by the Court, accruing beginning as of November 3, 2025 and continuing prospectively; (3) a clear, objective definition of purge conditions so Libya cannot claim "compliance" through partial or objection-laden submissions; (4) mandatory fee-shifting under Rule 37(b)(2)(C) for the costs Libya's disobedience has imposed; and (5) narrowly tailored evidentiary preclusion to prevent Libya from exploiting the information vacuum it created by withholding discovery. A contemnor cannot be permitted to benefit from months of noncompliance while the judgment creditor is forced to litigate to obtain the broad post-judgment discovery to identify assets and enforce a judgment that the Federal Rules of Civil Procedure already provide.

**I.     FACTUAL AND PROCEDURAL BACKGROUND**

Post-judgment discovery under Federal Rule of Civil Procedure 69 is the primary mechanism by which federal courts ensure that their judgments are enforceable rather than symbolic. Rule 69 authorizes a judgment creditor to obtain discovery "from any person—including the judgment debtor"—concerning assets, property, financial relationships, and control structures relevant to execution. Fed. R. Civ. P. 69(a)(2). The scope of such discovery is intentionally broad

because judgment debtors possess superior information regarding the location, ownership, and control of assets relevant to enforcement.

On May 21, 2025, Etrak served upon Libya post-judgment discovery directed at identifying assets and evaluating enforcement avenues.[1] *See* ECF No. 42. Libya did not respond, object, produce documents, or engage in any meaningful meet-and-confer, which forced Etrak to file a motion to compel. *See id.*; Order Granting Relief Under 28 U.S.C. §1610(c), dated December 8, 2025 ("1610(c) Order"), ECF No. 56 at 1-3.

On September 19, 2025, the Court entered a Show Cause Order that reflected restraint and incremental escalation. *See* ECF No. 49. The Court did not immediately impose sanctions. Instead, after first staying this case to permit Libya to enroll substitute counsel (though it refused), this Court also provided Libya with a six-week window to comply and announced, in advance, the consequences that would follow if Libya refused. First, the Court granted Etrak's motion to compel and ordered Libya to respond to post-judgment discovery by November 3, 2025. *Id*. at 1–2. Second, the Court expressly held that Libya's objections were waived. *Id*. at 1. That waiver ruling eliminated any uncertainty about Libya's ability to resist discovery through belated objections. Third, in an attempt to prevent continued avoidance, the Court established an escalating coercive fine framework – $5,000 per week, doubling every four weeks up to $80,000 per week – and directed Libya to show cause why those fines should not be imposed if Libya failed to comply. *Id*. at 2.

Libya did not comply by November 3, 2025. *See id*. at 1–2; Etrak's Notice of Libya's Noncompliance with Discovery Order, dated November 5, 2025 ("Notice of Noncompliance"),

---

[1] For the sake of brevity, Etrak will not repeat the entire history of this matter. For avoidance of doubt, however, Etrak incorporates by reference the detailed factual chronology set forth in its Motion to Strike dated December 31, 2025, ECF Nos. 67, 67-1, and its Reply in support thereof, as well as the documents appended to those pleadings. ECF Nos. 74, 74-1.

3

ECF No. 53. Libya did not request an extension under Rule 6(b). Libya did not seek clarification. Libya did not propose a production schedule. Libya did not produce partial discovery. Libya did not show cause for any of these failures. Such silence is not a neutral act; it is obstruction. At every juncture where compliance, clarification, or good-faith engagement was possible, Libya chose inaction.

On November 5, 2025, after Libya failed to comply with the Court's November 3 deadline and failed to show cause why sanctions should not be imposed, Etrak filed a formal Notice of Respondent's Noncompliance with Discovery Order. *See* ECF No. 53. That Notice of Noncompliance advised the Court that Libya had neither produced discovery nor offered any explanation for its noncompliance and expressly requested that the Court commence fine structure announced in the Show Cause Order. *Id.* ¶¶ 3–4. Libya did not respond to the Notice of Noncompliance, did not cure its noncompliance, and did not seek relief from the Court. The Notice of Noncompliance therefore placed squarely before the Court the precise contingency contemplated by its Order: continued noncompliance after the compliance deadline, warranting imposition of escalating fines commencing November 3, 2025.

Libya filed its response to the Show Cause Order on December 22, 2025 – forty-nine days late. *See* ECF No. 62. Rather than demonstrating substantial compliance or present inability to comply, Libya attempted to reframe the issue as a legal dispute over whether discovery was premature or conditioned on other steps. *Id*. at 4-6. But a show-cause directive is not an invitation to relitigate a binding discovery order; it exists to determine whether and how the Court must enforce its prior command.

In its 1610(c) Order, the Court found that Libya had made no effort to pay the judgment and specifically identified Libya's failure to respond to post-judgment discovery and evidence of

4

evasion. ECF No. 56 at 2–3. Those findings matter here because they confirm that Libya's discovery posture is not an isolated lapse. It is part of a broader pattern of resisting enforcement. Those findings independently foreclose any claim that Libya's discovery noncompliance reflects good-faith confusion or a reasonable effort to comply with the Court's orders, and they further underscore the ultimate evidence of Libya's bad faith: its refusal to honor this Court's judgment.

Libya has represented to this Court that it served discovery responses on January 7, 2026. *See* ECF No. 62 at 4–6. Yet its "responses" provided no information in response to Etrak's interrogatories, nor did they enclose even one single document requested. Instead, Libya relied entirely on numerous objections, despite the Court's express waiver ruling. Libya's objection-laden submissions therefore did not constitute compliance. And where the Court has already deemed objections waived, belated objections do not constitute "response"; they constitute continued noncompliance.

## II.    ARGUMENT

The record and governing law establish not only that Libya violated a clear Court order, but that escalating relief is now required to compel compliance and protect the integrity of the Court's enforcement authority.

Post-judgment discovery plays a uniquely critical role where, as here, the judgment debtor is a sovereign. A sovereign can route assets through ministries, instrumentalities, state-controlled entities, and foreign accounts, leaving the judgment creditor without any practical means of identifying executable property absent compelled discovery. Without enforcement discovery backed by meaningful sanctions, a sovereign judgment debtor can render a federal judgment effectively unenforceable through silence alone. Rule 69 and this Court's contempt power exist precisely to prevent that outcome.

**A. Libya Is in Civil Contempt of the Court's Show Cause Order**

Against this backdrop, civil contempt is warranted because the Court's Show Cause Order was clear and unambiguous, Libya violated it, and Libya cannot carry its burden to show substantial compliance, impossibility, or a good-faith reasonable interpretation.

Civil contempt is appropriate where: (1) the court order at issue is clear and unambiguous; (2) the alleged contemnor violated the order; and (3) the violation was not the product of a good-faith, reasonable interpretation of the order. *Armstrong v. Exec. Office of the President*, 1 F.3d 1274, 1289 (D.C. Cir. 1993); *Food Lion, Inc. v. United Food & Com. Workers Int'l Union*, 103 F.3d 1007, 1017 (D.C. Cir. 1997). Once the movant makes a prima facie showing, the burden shifts to the contemnor to demonstrate substantial compliance or present inability to comply. *United States v. Rylander*, 460 U.S. 752, 757 (1983). That burden is a heavy one, and it cannot be met by argument, delay, or unilateral reinterpretation of the Court's order. *See In re Byrd Coal Co.*, 83 F.2d 256 (2nd Cir. 1936).

Civil contempt sanctions are coercive and remedial. *United States v. United Mine Workers*, 330 U.S. 258, 303–04 (1947). The sanction must be sufficient to secure compliance, and a contemnor cannot avoid contempt by disagreeing with the order or attempting to relitigate it after the compliance deadline has passed. *See Id.* at 303.

The contempt inquiry here is straightforward and dispositive. The Court ordered objection-free compliance by November 3, 2025, and Libya did not comply. But Libya's conduct also reflects an ongoing refusal to obey. Libya filed its show-cause response forty-nine days late and then served papers asserting objections the Court had already deemed waived, while producing no documents and providing no information. Jan. 7 Discovery Responses"), ECF No. 74-1, at Exh. A. Under the Rules, an evasive or incomplete response is treated as a failure. Fed. R. Civ. P.

6

37(a)(4). And under the Court's waiver ruling, Libya had no right to resurrect objections. Courts in this District routinely hold that untimely objections are waived and cannot be revived by late service. *See, e.g., Ormeno v. 3624 Georgia Ave., Inc.*, 309 F.R.D. 29, 32 (D.D.C. 2015); *Caudle v. District of Columbia*, 263 F.R.D. 29, 33 (D.D.C. 2009). Libya's objection-laden "responses" therefore do not mitigate contempt; they underscore continued noncompliance.

Once a prima facie violation is shown, the burden shifts to Libya to demonstrate substantial compliance or present inability to comply. *Rylander*, 460 U.S. at 757. Libya cannot meet that burden. First, there is no substantial compliance. Substantial compliance requires meaningful answers and production, not boilerplate objections and continued withholding. Second, Libya has made no evidentiary showing of impossibility. Impossibility is not established by argument; it requires proof. *Id.* Third, Libya's failure to seek relief from the deadline under Rule 6(b), or to request protective relief before the deadline passed, is inconsistent with any assertion of good faith.

That conclusion is reinforced by the Court's prior findings under § 1610(c), which identified Libya's discovery noncompliance as part of a broader pattern of enforcement evasion and the fact that post-judgment discovery is only in issue here due to Libya's refusal to honor this Court's judgment.

Moreover, Etrak placed Libya on notice of the non-compliant status of its Jan. 7 Discovery Responses and offered it the opportunity to cure before Etrak sought sanctions. E-mail correspondence dated January 8, 2026 from Benjamin D. Reichard, counsel for Etrak, to counsel for Libya, ECF No. 74-1, at Exh. B. Libya outright ignored that invitation to cure.

Where, as here, a party with notice violates a clear court order and persists in noncompliance, the Court's contempt power is not merely appropriate. It is necessary to restore the authority of its orders and to secure the discovery required for meaningful enforcement.

**B. The Court Should Enter a Contempt Order Implementing the Escalating Fine Structure**

Although the Court's Show Cause Order articulated a detailed escalating fine framework, it deliberately withheld immediate sanctions and instead afforded Libya a final opportunity to comply voluntarily before coercive measures were activated. ECF No. 49 at 2.

Libya did not take that opportunity. Instead, Libya allowed the November 3, 2025 compliance deadline to pass without producing discovery, without seeking relief under Rule 6(b), and without engaging the Court in any meaningful way. Libya then compounded that noncompliance by filing a show-cause response forty-nine days late and by serving objection-laden "responses" that the Court had already foreclosed. ECF 74-1 at Exh. A.; ECF No. 62 at 4–6; ECF No. 49 at 1.

Importantly, the Court's fine framework was not left dormant or uninvoked. After Libya ignored the November 3 compliance deadline and failed to show cause, Etrak filed a Notice of Noncompliance expressly requesting that the Court begin imposing the fines specified in the Show Cause Order. *See* ECF No. 53. That filing satisfied the procedural predicate the Court contemplated and placed Libya on notice that sanctions were being sought. Libya nonetheless remained silent, neither curing its violation nor contesting the commencement of fines, rendering November 3, 2025 the operative start date for sanctions. Again, as described above, Etrak provided Libya with a chance to cure its deficient discovery responses but was met with silence.

At this stage, what is required is not another warning or chance to cure, but a formal contempt finding coupled with an operative sanctions directive. Courts routinely proceed in exactly this manner: first issuing a conditional show-cause order, and then, upon continued noncompliance, entering a contempt order that activates the contemplated fines. *See United States*

8

*v. United Mine Workers*, 330 U.S. 258, 303–04 (1947); *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo,* 603 F. Supp. 2d 1, 3 (D.D.C. 2009).

This approach is fully consistent with how courts in this District have enforced contempt sanctions against foreign sovereigns who disregard court orders. In *Agudas Chasidei Chabad of United States v. Russian Federation*, the court imposed coercive monetary sanctions against a foreign sovereign after it ignored a court-ordered obligation and then entered judgment for the sanctions that accrued during the period of noncompliance. 128 F. Supp. 3d 242, 247–49 (D.D.C. 2015). The court rejected arguments that sanctions against a sovereign were improper or inconsistent with the Foreign Sovereign Immunities Act, emphasizing that jurisdictional immunity and enforcement immunity operate independently and that contempt sanctions are a remedial tool to compel obedience to court orders. *Id.* at 249–52.

Critically, the *Chabad* court treated the fines as accruing from the date the defendants failed to comply with the court's order, and not from the date of a later enforcement judgment, because the purpose of civil contempt is to coerce compliance and to account for the duration of noncompliance. *Id.* at 246–47. The court further made clear that concerns about foreign relations or diplomatic sensitivities do not divest a federal court of authority to enforce its orders through coercive sanctions where a sovereign has willfully chosen defiance. *Id*. at 252–55. As in *Chabad*, Libya has been given notice, time to comply, and repeated opportunities to engage the Court, and has instead elected silence and obstruction.

Here, fines accruing beginning as of November 3, 2025 are not punitive. They are remedial and coercive, because Libya has enjoyed the benefit of noncompliance since November 3, 2025, the date on which the Court ordered compliance, and has forced Etrak to incur additional costs while discovery remained withheld. Because Libya's contempt began on November 3, 2025 – the

9

Court-ordered compliance date – sanctions accruing from that date merely reflect the duration of noncompliance and do not retroactively punish past conduct. Requiring an additional warning or renewed show-cause directive would defeat the purpose of the Court's conditional order and reward continued defiance after the Notice of Noncompliance squarely presented the issue to the Court.

Accordingly, the Court should now: (1) formally hold Libya in civil contempt of the Show Cause Order; (2) enter an operative sanctions order confirming and implementing the escalating fine schedule previously specified in the Show Cause Order; (3) specify that fines accrue beginning as of November 3, 2025, the Court-ordered compliance deadline; (4) provide that fines continue to accrue prospectively until Libya fully purges its contempt by complete, objection-free compliance; and (5) make clear that the fines are coercive, not punitive, and subject to suspension or modification upon demonstrated compliance.

Purge shall require complete, sworn, objection-free responses and production responsive to the Court's Show Cause Order, not partial submissions or unilateral limitations.

This approach preserves the Court's original enforcement design, gives full effect to the Show Cause Order, and ensures that Libya does not benefit from months of noncompliance during the pendency of the show-cause process.

### C. Rule 37(b) Sanctions and Mandatory Fee-Shifting Are Required

Libya's conduct independently warrants sanctions under Federal Rule of Civil Procedure 37(b). Rule 37(b)(2)(A) authorizes sanctions where a party "fails to obey an order to provide or permit discovery," including orders prohibiting a party from supporting or opposing designated claims or defenses and orders barring the introduction of evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii)–(iii). Rule 37(b)(2)(C) further provides that the Court must order the disobedient party to pay the

10

reasonable expenses, including attorneys' fees, caused by the failure, unless the failure was substantially justified or an award would be unjust. Discovery sanctions must be "just" and proportionate, but district courts retain wide discretion to fashion remedies tied to the misconduct and the prejudice caused. *Shepherd v. Am. Broad. Cos.*, 62 F.3d 1469, 1478–79 (D.C. Cir. 1995).

The predicate for Rule 37(b) sanctions is straightforward: the existence of a discovery order and a failure to comply. Both are present here. The Court ordered Libya to respond to post-judgment discovery by November 3, 2025 and expressly deemed Libya's objections waived. ECF No. 49 at 1–2. Libya did not comply by the deadline, later serving responses asserting objections the Court had already foreclosed and producing no documents. ECF No. 74-1 at Exh. A.

As a matter of black-letter law, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Where a party produces no documents and insists on objections deemed already waived, Rule 37(b) applies with full force.

Rule 37(b)(2)(C) provides that the Court must order the disobedient party to pay the reasonable expenses, including attorneys' fees, caused by the failure to comply, unless the failure was substantially justified or an award would be unjust. This provision is mandatory, not discretionary. Libya cannot meet its burden to show substantial justification. Libya missed a court-ordered deadline, failed to seek relief, produced no documents, and asserted waived objections. Nothing about that conduct is substantially justified. Fee-shifting here serves precisely the purpose Rule 37(b)(2)(C) contemplates: compensating the moving party for costs incurred as a direct result of the opponent's disobedience and reinforcing that court orders are not cost-free suggestions.

Rule 37 sanctions must be "just" and proportionate to the misconduct. *Shepherd.*, 62 F.3d at 1478–79. That requirement is satisfied here. Libya's noncompliance was total, prolonged, and

11

unexcused. Lesser measures have failed and the noncompliance persists. The requested sanctions of fees, evidentiary preclusion, and coercive fines are calibrated to address the harm caused and to compel future compliance, not to punish.

Even apart from Rule 37(b), the Court possesses inherent authority to sanction conduct undertaken in bad faith or for oppressive reasons. *Chambers v. NASCO, Inc*., 501 U.S. 32, 45–46 (1991). Libya's conduct – ignoring discovery, missing deadlines, filing untimely responses, and asserting objections the Court expressly waived – undermines the judicial process. The Court's inherent authority exists to address precisely this kind of obstruction and to ensure that its orders are respected.

### D. Narrow Evidentiary Preclusion Is Necessary to Prevent Libya from Profiting from Its Obstruction

Evidentiary preclusion is an expressly authorized and well-established remedy for discovery misconduct, particularly where a party's noncompliance deprives its adversary of access to information uniquely within the noncompliant party's possession. Fed. R. Civ. P. 37(b)(2)(A)(ii); *3E Mobile, LLC v. Glob. Cellular, Inc.*, 222 F. Supp. 3d 50, 53–54 (D.D.C. 2016). In the post-judgment enforcement context, in which discovery is directed at identifying assets, ownership structures, and control relationships, evidentiary preclusion is often the only effective means of preventing a judgment debtor from converting obstruction into strategic advantage.

That is precisely what has occurred here. Libya's discovery misconduct is not technical, inadvertent, or limited. It is categorical and targeted at factual subjects that lie at the core of post-judgment enforcement and are uniquely within Libya's possession. By refusing to provide discovery concerning asset location, ownership, control, and financial relationships, Libya has created an information vacuum that operates entirely to its benefit. Absent evidentiary preclusion,

Libya would be permitted to withhold discovery while simultaneously advancing factual positions that depend on the very information it has refused to disclose.

Rule 37(b) exists to prevent that outcome. The Rule authorizes courts to prohibit a disobedient party "from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Fed. R. Civ. P. 37(b)(2)(A)(ii). Courts in this District routinely impose evidentiary preclusion where discovery violations impair the opposing party's ability to litigate fairly and where lesser sanctions would be ineffective. *3E Mobile*, 222 F. Supp. 3d at 53–54.

The D.C. Circuit requires a "nexus" between the sanctioned conduct and the sanction imposed. *Bonds v. District of Columbia*, 93 F.3d 801, 808 (D.C. Cir. 1996); *Webb v. District of Columbia*, 146 F.3d 964, 971 (D.C. Cir. 1998). That requirement is fully satisfied here. Libya's refusal to provide discovery directly concerns the same factual matters on which Libya would otherwise seek to rely in opposing enforcement. Specifically, Libya:

- **Refused to identify or produce documents concerning assets and accounts**, uniformly asserting—without producing a single document—that it has "no assets used for commercial activity in the United States," while withholding discovery concerning asset location, beneficial ownership, and use. *See* Interrogatories Nos. 1–4 and Document Requests Nos. 1–7, ECF No. 74-1 at Exh A.

- **Objected wholesale to discovery concerning loans, letters of credit, securities, and financial instruments**, again producing no documents, despite the direct relevance of such instruments to receivables, payment streams, and traceable assets. *See* Interrogatories Nos. 2–5 and Document Requests Nos. 4–10, ECF No. 74-1 at Exh A.

13

- **Categorically refused to provide discovery concerning relationships with ministries, instrumentalities, and state-controlled entities**, asserting that they are "separate legal Persons" while withholding all information relevant to control, agency, alter ego, and asset use, which are facts Libya would predictably invoke to resist execution. *See* Interrogatories Nos. 6–11 and Document Requests Nos. 11–20, ECF No. 74-1 at Exh A.

- **Asserted the absence of commercial activity in the United States**, while refusing to produce documents concerning contracts, negotiations, communications, or business decisions bearing on that assertion. *See* Document Requests Nos. 23–25, ECF No. 74-1 at Exh A.

These are not collateral topics. They are the factual predicates of enforcement. Allowing Libya to offer evidence or argument on asset ownership, control, or commercial use after refusing discovery on those same topics would permit Libya to benefit directly from its disobedience. The nexus here is direct and unavoidable: Libya withheld discovery on the very facts it would invoke to resist execution.

The requested sanction is narrowly tailored. Libya would be precluded only from offering evidence or argument concerning factual matters, such as asset ownership, control, or commercial use, which were the subject of court-ordered discovery Libya refused to provide. Libya remains free to advance legal arguments and defenses not dependent on withheld factual information. This calibrated approach satisfies Rule 37(b), the D.C. Circuit's nexus requirement, and basic principles of proportionality.

Finally, even apart from Rule 37(b), the Court possesses inherent authority to impose evidentiary sanctions where a party's conduct threatens the integrity of the judicial process. *Chambers*, 501 U.S. at 45–46. Ignoring discovery, missing deadlines, asserting waived objections,

14

and withholding information critical to enforcement, all of which Libya did here, is conduct that fits squarely within the category of behavior that warrants such relief.

Monetary sanctions alone cannot cure the prejudice to Etrak. The Court should therefore preclude Libya from offering evidence or factual argument concerning matters that were the subject of the Court-ordered post-judgment discovery. Respondent failed to provide, including factual assertions regarding:

- the existence, location, ownership, control, or use of assets or accounts;
- relationships with ministries, instrumentalities, or state-controlled entities relevant to enforcement; and
- assertions concerning the absence of commercial activity or executable property.

This preclusive remedy is especially appropriate where, as here, the Court has already deemed objections waived, ordered compliance by a date certain, and warned Libya of escalating consequences. Show Cause Order, ECF No. 49 at 1–2. The remedy of preclusion is proportional, doctrinally sound, and necessary to ensure that court-ordered discovery is not rendered optional by a recalcitrant judgment debtor. Evidentiary preclusion is therefore not punitive; it is remedial. It restores balance by ensuring that Libya cannot exploit the very uncertainty it created through obstruction.

## CONCLUSION

The Court should therefore enter a contempt order implementing the previously announced coercive fine structure, awarding fees and costs, imposing narrowly tailored evidentiary preclusion, and requiring immediate, complete compliance with post-judgment discovery. Anything less would reward defiance and erode the Court's authority to enforce its judgments.

DATED: January 28, 2026                    Respectfully submitted,

/s/ *Benjamin D. Reichard*
Benjamin D. Reichard (*pro hac vice*)
Molly L. Wells (*pro hac vice*)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
Email: breichard@fishmanhaygood.com

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

### CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of January 2026, I caused the foregoing Motion for Civil Contempt and Sanctions and Memorandum of Law to be filed electronically with the Clerk of the Court using the CM/ECF system, which will send notice of such filing to all counsel of record.

/s/ *Benjamin D. Reichard*
Benjamin D. Reichard

### CERTIFICATE OF CONFERENCE

I hereby certify that on the 8th day of January 2026, I advised counsel for Libya of Etrak's intention to file the foregoing Motion in the event Libya failed to cure the discovery deficiencies Etrak asserts herein. Counsel for Libya did not respond to either the request for cure or Etrak's stated intention to file this Motion.

/s/ *Benjamin D. Reichard*
Benjamin D. Reichard

16