# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ, | : |
| *Plaintiff*, | : Case No. 1:22-cv-00864 (JMC) |
| v. | : |
| STATE OF LIBYA, | : |
| *Defendant*. | : |

## NON-PARTY NATIONAL OIL CORPORATION OF LIBYA'S
## <u>RESPONSE TO PLAINTIFF'S MOTION FOR LEAVE TO FILE SURREPLY</u>

CURTIS, MALLET-PREVOST,
 COLT & MOSLE, LLP

Joseph D. Pizzurro (D.C. Bar No. 468922)
Juan O. Perla (D.C. Bar No. 1660389)
Robert J. Groot (D.C. Bar No. NY0700)
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
jperla@curtis.com
rgroot@curtis.com

*Attorneys for Non-party*
*National Oil Corporation of Libya*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................1

PRELIMINARY STATEMENT ...............................................................................................1

PROCEDURAL BACKGROUND............................................................................................2

ARGUMENT ..............................................................................................................................4

  I. This Court Has an Independent Duty to Determine its Subject Matter
    Jurisdiction, and Should Consider All Arguments Relevant to that
    Determination ..........................................................................................................4

  II. Etrak's Proposed Surreply Would Not Aid This Court's Analysis ........................6

CONCLUSION...........................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Ali v. D.C. Court Servs. & Offender Supervision Agency*,
538 F. Supp. 2d 157 (D.D.C. 2008) ........................................................................ 6

*Arbaugh v. Y & H Corp.*,
546 U.S. 500 (2006) ............................................................................................ 4

*Banner Health v. Sebelius*,
905 F.Supp.2d 174 (D.D.C. 2012) ........................................................................ 5

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan*,
447 F.3d 411 (5th Cir. 2006) ................................................................................ 9

*Bronner v. Duggan*,
962 F.3d 596 (D.C. Cir. 2020) ............................................................................. 4

\* *Butler v. Sukhoi Co.*,
579 F.3d 1307 (11th Cir. 2009) ...................................................................... 6, 8, 9

*Crummey v. Social Sec. Admin.*,
794 F. Supp. 2d 46 (D.D.C. 2011) ........................................................................ 5

*Crummey v. Social Sec. Admin.*,
No. 11-5231, 2012 U.S. App. LEXIS 2309 (D.C. Cir. Feb. 6, 2012) ......................... 5

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
333 F. Supp. 3d 380 (D. Del. 2018) ................................................................ 11, 13

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
932 F.3d 126 (3d Cir. 2019) ......................................................................... 10, 12

*EM Ltd. v. Banco Cent. de la República Argentina*,
800 F.3d 78 (2d Cir. 2015) ............................................................................... 6, 8

*Epperson v. Entm't Express, Inc.*,
242 F.3d 100 (2d Cir. 2001) ........................................................................... 6, 12

*Estate of Ungar v. Orascom Telecom Holding S.A.E.*,
578 F. Supp. 2d 536 (S.D.N.Y. 2008) ................................................................. 10

*Evans v. B.F. Perkins Co.*,
166 F.3d 642 (4th Cir. 1999) .............................................................................. 6

\*  *First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
    462 U.S. 611 (1983) ................................................................................................ 3, 7

*Gambone v. Lite Rock Drywall*,
    288 F. App'x 9 (3d Cir. 2008) ..................................................................................... 12

*Gonzalez v. Thaler*,
    565 U.S. 134 (2012) ..................................................................................................... 4

*Hornbeck Offshore Transp., LLC v. United States*,
    569 F.3d 506 (D.C. Cir. 2009) ...................................................................................... 4

*IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*,
    438 F.3d 298 (3d Cir. 2006) ................................................................................... 10, 12

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994) ..................................................................................................... 5

*Matos Rodriguez v. Pan Am. Health Org.*,
    29 F.4th 706 (D.C. Cir. 2022) ...................................................................................... 8

*Nat'l Mining Ass'n v. Kempthorne*,
    512 F.3d 702 (D.C. Cir. 2008) ...................................................................................... 4

*OBB Personenverkehr AG v. Sachs*,
    577 U.S. 27 (2015) ....................................................................................................... 7

*Patin v. Thoroughbred Power Boats, Inc.*,
    294 F.3d 640 (5th Cir. 2002) ...................................................................................... 13

\*  *Peacock v. Thomas*,
    516 U.S. 349 (1996) ............................................................................................ passim

\*  *Peterson v. Bank Markazi*,
    121 F.4th 983 (2d Cir. 2024) .................................................................... 6, 10, 11, 12

\*  *Philippines v. Pimentel*,
    553 U.S. 851 (2008) .............................................................................................. 14, 15

*Process & Indus. Devs. v. Federal Republic of Nigeria*,
    962 F.3d 576 (D.C. Cir. 2020) ...................................................................................... 6

*Thomas, Head & Greisen Emps. Tr. v. Buster*,
    95 F.3d 1449 (9th Cir. 1996) ...................................................................................... 13

*TransAmerica Leasing, Inc. v. La Republic de Venezuela*,
    200 F.2d 843 (D.C Cir. 2000) ...................................................................................... 9

*Transfield ER Cape Ltd. v. Indus. Carriers, Inc.*,
   571 F.3d 221 (2d Cir. 2009) ............................................................................... 13

*U.S.I Props. Corp. v. M.D. Constr. Co.*,
   230 F.3d 489 (1st Cir. 2000).................................................................................. 12

*Wye Oak Tech., Inc. v. Republic of Iraq*,
   24 F.4th 686 (D.C. Cir. 2022)................................................................................. 4

**Statutes**

28 U.S.C. § 1605(a)(6)........................................................................................... 9

**Rules**

Fed. R. Civ. P. 12(h)(3)......................................................................................... 4

**Other Authorities**

Charles R. P. Keating & Gail O'Gradney,
   *Fletcher Cyclopedia of the Law of Private Corporations* (perm. ed. 1990)............................. 6

H.R. Rep. No. 94-1487 (1976)................................................................................. 7

William Meade Fletcher,
   *Fletcher Cyclopedia of the Law of Private Corporations* (Cynthia Van Swearingen ed.,
   rev. perm. ed. 1983)....................................................................................... 7

Non-party National Oil Corporation of Libya ("NOC") respectfully submits this response to the Motion of Plaintiff Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak") for Leave to File Surreply (ECF No. 75).

## PRELIMINARY STATEMENT

It is clear that Etrak is desperately trying to avoid the application of *Peacock v. Thomas*, 516 U.S. 349 (1996), to its alter ego claim against NOC, because Etrak cannot establish an independent basis for this Court's subject matter jurisdiction over that claim under the Foreign Sovereign Immunities Act (FSIA). NOC properly invoked *Peacock* in its reply in support of its Motion for a Protective Order because Etrak's opposition to that motion revealed for the first time that Etrak's true intent in seeking discovery from non-party NOC is to use NOC's assets to satisfy the judgment against Libya on the theory that NOC is "Libya's agent or alter ego." More critically, it is now apparent that Etrak is seeking to litigate that alter ego claim in these post-judgment proceedings. ECF No. 68 at 14. In other words, Etrak is seeking to shift liability for its judgment against Libya to NOC – a presumptively separate non-party agency or instrumentality of Libya under the FSIA that is entitled to its own sovereign immunity – without even attempting to join NOC as a party. But shifting liability to a non-party can succeed only if the non-party is properly before the Court and there is an independent basis for subject matter jurisdiction over that claim against the non-party. This Court's ancillary jurisdiction, which is all it has in these post-judgment proceedings, is insufficient.

Nevertheless, this Court is obligated to satisfy itself of its own subject matter jurisdiction and may consider whatever briefing it deems helpful to make that determination. Etrak's proposed surreply, however, is anything but helpful. It is undisputed that *Peacock* holds that a court's ancillary post-judgment jurisdiction does not extend to attempts to shift liability to a presumptively separate entity that was not a party to the underlying merits action, such as by

invoking alter ego or other veil-piercing theories. Indeed, the Supreme Court has held that a foreign state's interest in property cannot be adjudicated in an action in the absence of that foreign state. Etrak's belated arguments about *Peacock* are simply wrong and should be rejected.

## **PROCEDURAL BACKGROUND**

On December 22, 2025, non-party NOC filed its Motion for a Protective Order to quash the subpoena against NOC and preclude Etrak from seeking discovery from any party into NOC's business affairs, assets, or corporate structure. ECF No. 66. In support of this motion, NOC's accompanying brief set out two independent arguments: (1) as a separate agency or instrumentality of a foreign state, NOC is immune from this Court's jurisdiction unless an exception to immunity under the FSIA applies to NOC; and (2) as a non-party to this action, discovery about NOC and its assets from either NOC or third parties is not allowed under Federal Rule of Civil Procedure 69. ECF No. 66-1.

At the time NOC made that motion, Etrak had not yet presented any claim against NOC or any theory as to why this Court would have jurisdiction over such a claim (or even why Etrak would be entitled to discovery about NOC or its assets). Nevertheless, as a prophylactic measure, NOC noted that Etrak could not properly rely for subject matter jurisdiction on any future assertion that NOC was an "alter ego of Libya." ECF No. 66-1 at 12. NOC then observed that Etrak "ha[d] not sought such a determination, much less alleged facts supporting the existence of an alter ego relationship between NOC and Libya." *Id.* at 12-13.

On January 5, 2026, Etrak filed its opposition, which for the first time asserted that it was seeking a determination in this proceeding that NOC is liable for the judgment against Libya because NOC is supposedly "Libya's agent or alter ego" under *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") or, alternatively,

that the Court should "permit jurisdictional discovery into LNOC" if the Court "determines that Etrak has not made the requisite showing with this opposition of LNOC's agent or alter ego status." ECF No. 68 at 14. Etrak did not identify any exception to NOC's sovereign immunity that would apply. Nor did Etrak attempt to explain how this Court's ancillary jurisdiction to enforce the judgment against Libya could somehow extend to Etrak's attempt to shift liability for that judgment onto NOC as a supposed alter ego.

On January 12, 2026, NOC filed its reply, which was NOC's first opportunity to respond to Etrak's alter ego assertion and address its jurisdictional defects. ECF No. 69. NOC argued in its reply that this Court lacks subject matter jurisdiction to adjudicate any claim against NOC, including the assertion it is an alter ego of Libya, because (1) Etrak could not identify any exception to NOC's sovereign immunity; (2) this Court's ancillary jurisdiction does not extend to Etrak's alter ego claim; and (3) Etrak had not established that NOC is an alter ego of Libya under *Bancec*. In addressing the limits of ancillary jurisdiction, NOC relied on *Peacock* to establish that an attempt to enforce a judgment against a non-party on an alter ego theory does not fall within a district court's ancillary jurisdiction, but rather requires an independent basis for subject matter jurisdiction. ECF No. 69 at 12-13.

On January 22, 2026, Etrak filed its Motion for Leave to File Surreply. ECF No. 75. Etrak's sole asserted ground for seeking this leave was that NOC "raised its *Peacock* arguments in the first instance in its Reply." ECF No. 75 at ¶ 4. On that ground, Etrak requested that this Court "ignore" NOC's *Peacock* arguments or, alternatively, grant Etrak a surreply to address them, and attached a proposed surreply in which it attempted, in part, to address NOC's *Peacock* arguments. ECF No. 75; ECF No. 75-1. Etrak additionally raised arguments concerning

application of the *Bancec* factors, which are unrelated to *Peacock*, but Etrak provided no ground

for why it would be entitled to submit a surreply on that issue. ECF No. 75-1 at 12-15.

## ARGUMENT

**I.**    **This Court Has an Independent Duty to Determine its Subject Matter Jurisdiction, and Should Consider All Arguments Relevant to that Determination**

Challenges to subject matter jurisdiction may be raised at any time and cannot be waived

or forfeited. *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012); *Hornbeck Offshore Transp., LLC v.*

*United States*, 569 F.3d 506, 512 (D.C. Cir. 2009). Even when neither party raises the issue,

federal courts have an independent duty to establish their own subject matter jurisdiction. *See*

*Wye Oak Tech., Inc. v. Republic of Iraq*, 24 F.4th 686, 699 (D.C. Cir. 2022); *Nat'l Mining Ass'n*

*v. Kempthorne*, 512 F.3d 702, 706 (D.C. Cir. 2008) (citing *Arbaugh v. Y & H Corp.*, 546 U.S.

500, 514 (2006)). If a federal court determines at any time that it lacks subject-matter

jurisdiction, it must dismiss the action. Fed. R. Civ. P. 12(h)(3).

Here, to resolve NOC's Motion for a Protective Order, this Court must determine

whether it has subject matter jurisdiction to adjudicate Etrak's alter ego claim against NOC.

Because NOC's *Peacock* arguments bear directly on this Court's subject matter jurisdiction, the

Court may not "ignore" them as Etrak suggests. *See Wye Oak*, 24 F.4th at 699 (permitting a court

to engage in a post-trial assessment of its jurisdiction); *Bronner v. Duggan*, 962 F.3d 596, 606-07

(D.C. Cir. 2020) (holding that the district court properly reversed its initial determination that it

had subject matter jurisdiction).

Regardless, NOC had no occasion to raise *Peacock* before its reply. When NOC initially

filed its Motion for a Protective Order, Etrak had not yet asserted its alter ego claim, so *Peacock*

was not yet relevant to any issue raised by the parties. It was not until Etrak's opposition that it

first revealed it was attempting to reach NOC's separate assets as if they were assets of Libya on

- 4 -

an alter ego theory, and asked this Court to adjudicate that alter ego relationship in these ancillary proceedings. Only then was it clear that Etrak is attempting to shift liability to NOC for Libya's judgment in the context of this ancillary post-judgment proceeding. Thus, NOC's reply was its first opportunity to address the jurisdictional defect of that claim by invoking *Peacock*.

In its reply, NOC properly raised *Peacock* to demonstrate that this Court's ancillary jurisdiction does not extend to Etrak's new alter ego claim. These *Peacock* arguments were therefore squarely within "the scope of issues" presented in Etrak's opposition. *See Banner Health v. Sebelius*, 905 F.Supp.2d 174, 188 (D.D.C. 2012) ("As Courts consistently observe, when arguments raised for the first time in reply fall 'within the scope of the matters [the opposing party] raised in opposition," and the reply "does not expand the scope of the issues presented, leave to file a surreply will rarely be appropriate.") (quoting *Crummey v. Social Sec. Admin.*, 794 F. Supp. 2d 46, 63 (D.D.C. 2011), *aff'd*, No. 11-5231, 2012 U.S. App. LEXIS 2309 (D.C. Cir. Feb. 6, 2012)).

Etrak nevertheless asserts that NOC should have preemptively raised *Peacock* in *anticipation* of Etrak asserting its liability-shifting claim. But NOC had no obligation to articulate and respond to all of Etrak's potential reasons for seeking discovery from NOC, or from others about NOC and its assets, or to predict every possible jurisdictional defect. Rather, Etrak had the opportunity – and in fact the obligation – upon asserting its alter ego claim against NOC to address the implications of that new claim on this Court's subject matter jurisdiction. That is, Etrak had the obligation to present its theory for why this Court's ancillary jurisdiction would extend to the attempt to transfer liability on its judgment to a non-party. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) ("It is to be presumed that a cause lies outside [a federal courts'] limited jurisdiction . . . and the burden of establishing the contrary

rests upon the party asserting jurisdiction."); *Ali v. D.C. Court Servs. & Offender Supervision Agency*, 538 F. Supp. 2d 157, 160 (D.D.C. 2008) ("[T]he plaintiff bears the burden of establishing that the court has subject matter jurisdiction.") (citing *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647 (4th Cir. 1999)). Etrak failed to meet that obligation and instead seeks leave to do so through a surreply.

Although Etrak is not entitled to submit its proposed surreply, NOC does not object to the Court considering it. Given the Court's independent obligation to determine its own subject matter jurisdiction, the Court may consider whatever arguments it deems helpful, including NOC's arguments in its reply and those set forth below.[1]

## II.    Etrak's Proposed Surreply Would Not Aid This Court's Analysis

As explained in NOC's reply, *Peacock* held that veil-piercing claims such as alter ego are based on theories of personal liability. 516 U.S. at 354 (explaining that veil piercing is "a means of imposing liability on an underlying cause of action" (quoting Charles R. P. Keating & Gail O'Gradney, *Fletcher Cyclopedia of the Law of Private Corporations* § 41 p. 603 (perm. ed. 1990)); *accord Peterson v. Bank Markazi*, 121 F.4th 983, 999 (2d Cir. 2024) (explaining that alter ego or veil-piercing principles "raise an independent controversy with a new party in an effort to shift liability" for a judgment to the presumptively separate new party (quoting *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 103-07 (2d Cir. 2001)).

---

[1] This Court's determination of its subject matter jurisdiction over NOC has particular significance because a ruling against NOC would amount to a denial of its sovereign immunity under the FSIA and entitle it to an immediate appeal. *See Process & Indus. Devs. v. Federal Republic of Nigeria*, 962 F.3d 576, 582 (D.C. Cir. 2020) (subjecting foreign sovereign to litigation burdens before a conclusive determination of its sovereign immunity triggered right to immediate appeal under the collateral order doctrine (citing *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1311 (11th Cir. 2009)); *EML*, 800 F.3d at 88 (holding that a "threshold sovereign-immunity determination" in connection with an alter ego claim "is immediately reviewable under the collateral-order doctrine").

*Bancec* itself treated veil piercing as part of the "substantive law of liability" and framed the question at issue in terms of "the attribution of responsibility between or among entities of a foreign state." 462 U.S. at 620 (citing H.R. Rep. No. 94-1487, at 12 (1976)). In crafting the veil-piercing test for foreign states and their corporate instrumentalities, the Court in *Bancec*, as in *Peacock*, drew from the same basic state corporate law principles that apply to private corporations. *See id.* at 628-29 & n.19 (citing William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 41 (Cynthia Van Swearingen ed., rev. perm. ed. 1983)); *see also id.* at 626 ("Limited liability is the rule.") (citation omitted). Indeed, veil-piercing or alter ego tests such as *Bancec* go to "the relation between parent and subsidiary corporations" and "the nature of government instrumentalities" overall. *Id.* at 623.

Once Etrak's claim is properly framed as an attempt to shift liability to NOC, a non-party, for the judgment entered against Libya, there is no dispute that this Court may not simply rely on its ancillary post-judgment jurisdiction to adjudicate the alter ego claim against NOC. *Peacock*, 516 U.S. at 357. As *Peacock* explained, the "basis of the doctrine of ancillary jurisdiction is the practical need to protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Id.* at 355 (citation omitted). But once judgment is entered, "the ability to resolve simultaneously factually intertwined issues vanishe[s]." *Id.* (citation omitted). Thus, ancillary jurisdiction cannot extend to new claims invoking new theories against new parties separate from the original lawsuit, such as Etrak's alter ego claim against NOC. Rather, Etrak must identify an independent basis for subject matter jurisdiction over this claim.

Nor is there any dispute that the exclusive basis for subject matter jurisdiction in a civil action against a foreign state's agency or instrumentality such as NOC is the FSIA. *OBB Personenverkehr AG v. Sachs*, 577 U.S. 27, 31 (2015) ("*Sachs*"). Jurisdiction over the alter ego

claim against NOC must therefore independently fit within an enumerated exception to sovereign immunity under the FSIA. *See Matos Rodriguez v. Pan Am. Health Org.*, 29 F.4th 706, 714 (D.C. Cir. 2022) ("Since *Sachs*, we have considered FSIA immunity determinations on a claim-by-claim basis.") (quotations omitted); *EM Ltd. v. Banco Cent. de la República Argentina*, 800 F.3d 78, 99 (2d Cir. 2015) ("*EML*") ("BCRA is entitled to invoke its own sovereign immunity as a defense to this [alter ego] lawsuit, unless one of the exceptions [in the FSIA] applies.").

Because the FSIA does not contain an independent exception to sovereign immunity for piercing the corporate veil or being an alter ego, Etrak's generalized alter ego allegations alone are "insufficient to divest" NOC of its own sovereign immunity. *Butler v. Sukhoi Co.*, 579 F.3d 1307, 1313-14 (11th Cir. 2009); *cf. Peacock*, 516 U.S. at 354 ("Piercing the corporate veil is not itself an independent ERISA cause of action."). Put differently, Etrak cannot bootstrap subject matter jurisdiction over its liability shifting claim with a standalone alter ego finding. *See Butler*, 579 F.3d at 1312 (concluding that, "even accepting as true [plaintiff's] allegations that appellants are alter-egos of one another and of [the judgment debtor], they are insufficient as a matter of law to demonstrate the existence of subject matter jurisdiction"); *cf. Peacock*, 516 U.S. at 353-54 (plaintiff's "veil-piercing claim . . . cannot independently support federal jurisdiction."). Rather, Etrak must establish a connection between the putative alter ego's "conduct" and an exception to sovereign immunity "to bring the claim" against the presumptively separate, putative alter ego (here, NOC) "within one of one the statutorily-enumerated exceptions" under the FSIA. *Butler*, 579 F.3d at 1313. Only then may this Court proceed to adjudicate whether an alter ego relationship actually exists. *See EML*, 800 F.3d at 96 n.86 (explaining that even if the alter ego "allegations did rebut the *Bancec* presumption," the court would still be required to determine

whether the sovereign's contractual waiver of immunity "may be imputed to" the instrumentality to allow the alter ego claim to be tried).[2]

The only FSIA exception that could plausibly apply here, and the only one Etrak has invoked, is the arbitration exception that applied to Libya in the underlying merits action. 28 U.S.C. § 1605(a)(6). ECF No. 1, ¶ 8; ECF No. 75-1 at 5. Thus, pursuant to the FSIA and consistent with *Peacock*, Etrak must show that Libya used NOC as its agent or alter ego in a manner that would bind NOC to the arbitration agreement or render it liable on the resulting arbitral award. *See Peacock*, 516 U.S. at 353-54 (explaining that the plaintiff "could invoke the jurisdiction of the federal courts only by independently alleging a violation of an ERISA provision"); *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 447 F.3d 411, 417 (5th Cir. 2006) (holding an instrumentality liable on an arbitral award rendered against the foreign-state parent

---

[2] Contrary to Etrak's suggestion, the D.C. Circuit has not ruled that *Bancec* provides a non-statutory "exception" that would satisfy *Peacock*'s requirement for "an independent basis for jurisdiction" over alter ego claims. ECF No. 75-1 at 5 (quoting *TransAmerica Leasing, Inc. v. La Republic de Venezuela*, 200 F.2d 843, 848 (D.C Cir. 2000)). Rather, *TransAmerica* involved a suit initially filed against a foreign state for the acts of instrumentalities allegedly acting as its agents. *TransAmerica*, 200 F.3d at 846-48. The decision was on a motion to dismiss for lack of jurisdiction and is completely irrelevant to whether a court's post-judgment ancillary jurisdiction extends to alter ego assertions seeking to shift liability to an instrumentality on a judgment to which it was not a party. *See id.* at 846-47. Nor does it matter that *Bancec* is the product of federal common law and international law. Without a federal statute conferring federal question jurisdiction, *Bancec* alone cannot confer subject matter jurisdiction over a new claim against a new party that is otherwise entitled to its own sovereign immunity under the FSIA. *See Bank Markazi*, 121 F.4th at 1000 ("[W]e are aware of no case–and plaintiffs cite none–in which this Court has held that *Bancec* may be used to extend ancillary jurisdiction from a merits proceeding against a foreign sovereign to a new proceeding seeking to establish liability for the judgment on the part of the foreign sovereign's agency or instrumentality."); *Butler*, 579 F.3d at 1313 (alleged alter ego status "insufficient to divest appellants of their sovereign immunity because, even if substantiated through discovery, it does not bring the claim within one of [] the statutorily-enumerated exceptions either to pre-judgment or post-judgment immunity under the FSIA."); *cf. Peacock*, 516 U.S. at 357 ("We have never authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment.").

after finding that the instrumentality's corporate form had been abused in connection with the underlying transaction that injured the plaintiff). Etrak has never made that showing, and it is clear from its proposed surreply that it cannot. NOC was not a party to the underlying dispute between Libya and Etrak. It was not a party to the underlying contracts or a participant in the dispute in any way. It was not named by Etrak as a party in the arbitration, did not participate in the arbitration, and has not been named as a party in these proceedings. ECF No. 1, ¶¶ 3-4, 16-19, 23-30. Quite simply, the arbitration exception to immunity cannot independently apply to NOC in this case.

Relying primarily on the Third Circuit's decision in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019), Etrak argues that its alter ego claim is not an attempt at liability shifting but merely a means of reaching assets of the debtor (Libya) "nominally held" by its putative alter ego (NOC) for which an independent basis for subject matter jurisdiction is not needed. ECF No. 75-1 at 3. But that is purely semantics. Using an alter ego theory to reach the assets of a presumptively separate non-party to satisfy the debts of another party and using alter ego to shift liability on the judgment to the non-party are functionally the same thing, because both alter ego theories depend on being able to collapse or disregard the separate legal personalities of the two entities. *See Bank Markazi*, 121 F.4th at 999-1000 (treating an asset turnover proceeding against Bank Markazi as an attempt at liability-shifting even though the plaintiff claimed that it was deploying its veil-piercing theory only to use Bank Markazi's assets as if they were Iran's assets); *IFC Interconsult, AG v. Safeguard Int'l Partners, LLC*, 438 F.3d 298, 312 (3d Cir. 2006) (noting that veil piercing "collapses corporate distinctions to make for joint primary liability."); *Estate of Ungar v. Orascom Telecom Holding S.A.E.*, 578 F. Supp. 2d 536, 547-51 (S.D.N.Y. 2008) (rejecting creditor's argument that it did

not seek to hold third party liable on a judgment where creditor argued that property sought to be attached only "nominally" belonged to third party). It is Etrak's request that this Court pierce NOC's veil to make its assets available to satisfy the judgment against Libya that removes Etrak's claim from this Court's ancillary jurisdiction. *Bank Markazi*, 121 F.4th at 999-1000.

Indeed, the Second Circuit in *Bark Markazi* expressly disagreed with the decision in *Crystallex* "to the extent that the *Crystallex* court based its jurisdictional holding on a determination that ancillary jurisdiction extends to post-judgment proceedings against a foreign sovereign's instrumentality that was not party to the underlying merits proceeding . . . ." *Bank Markazi*, 121 F.4th at 1000 n.6. While the Second Circuit suggested that *Crystallex* may be distinguishable, the Second Circuit's description of what it disagreed with is exactly what happened in *Crystallex*. Crystallex moved under Federal Rule 69 to attach specific property belonging to Venezuela's presumptively separate national oil company (PDVSA), claiming that PDVSA was Venezuela's alter ego under *Bancec*. *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 387, 401 (D. Del. 2018). PDVSA intervened under Federal Rule 24 to protect its property, becoming a party to the action. *Id*. PDVSA invoked its own sovereign immunity under the FSIA and argued that *Peacock* required an independent basis for jurisdiction over the alter ego claim against it. *Id.* at 390-91.

The district court rejected PDVSA's arguments and held that its ancillary jurisdiction extended to resolving the alter ego claim against PDVSA on the view that it was limiting its alter ego determination to the ownership of the specific asset being attached and not shifting liability to PDVSA for the entire judgment. *Id.* 394. The Third Circuit affirmed without reaching the

issue of whether *Bancec* was anything other than liability shifting, holding instead that *Peacock* did not apply at all under the FSIA. *Crystallex*, 932 F.3d at 138-39.[3]

The Third Circuit and the district court's decisions in *Crystallex* cannot be squared with the Second Circuit's decision in *Bank Markazi*. The Second Circuit unequivocally ruled that *Peacock* applies to actions under the FSIA, and held that veil-piercing principles such as alter ego under *Bancec* are ultimately seeking to shift liability from one entity to another. *Bank Markazi*, 121 F.4th at 999-1000. Had the Second Circuit seen any distinction between "reaching assets" and "imposing liability," it could have simply extended the reasoning of the district court in *Crystallex* to asset turnover proceedings, without needing to signal any disagreement with the Third Circuit.

Nor do any of the remaining cases cited by Etrak support the proposition that using an alter ego theory to collect a judgment using a nonparty's assets does not establish "new liability" and thus does not require an independent basis for jurisdiction. (ECF No. 75-1 at 5). In fact, those cases support NOC's arguments because they either properly dismiss attempts to shift liability for a judgment based on an alter ego theory in the absence of an independent basis for jurisdiction, involve fraudulent conveyance claims where the assets are not presumptively owned by the third party in possession, or do not involve federal question jurisdiction whatsoever but rather diversity or admiralty jurisdiction (which are not at issue here). *See U.S.I Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 496 (1st Cir. 2000) (dismissing alter ego claim for lack of independent jurisdictional basis); *Epperson*, 242 F.3d at 106 (ancillary jurisdiction over

---

[3] Had the Third Circuit panel in *Crystallex* adopted the district court's view of its alter ego determination as being limited to property ownership, it would have put that panel decision at odds with the earlier precedential decision of the Third Circuit in *IFC*, which held that veil piercing "collapses corporate distinctions to make for joint primary liability." 438 F.3d at 312; *see also Gambone v. Lite Rock Drywall*, 288 F. App'x 9, 12 (3d Cir. 2008).

fraudulent conveyance, distinguishing alter ego); *Transfield ER Cape Ltd. v. Indus. Carriers,*
*Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (Supplemental Rule B maritime jurisdiction over
pre-judgment attempt to attach assets of alleged alter ego, who was a named defendant); *Patin v.*
*Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 646 (5th Cir. 2002) (diversity jurisdiction);
*Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1454 & n.7 (9th Cir. 1996)
(ancillary jurisdiction over fraudulent conveyance, distinguishing alter ego).

The Third Circuit decision in *Crystallex* remains the lone circuit court decision to hold
that an independent basis for subject matter jurisdiction is not needed to adjudicate an alter ego
claim against a non-party in post-judgment proceedings.

Regardless, *Crystallex* is inapposite because its facts do not resemble this case. Because
Crystallex moved to attach *specific assets* owned by PDVSA, PDVSA was forced to intervene *as*
*a party* to defend its interests in the case. Under those circumstances, the district court
considered that its ancillary jurisdiction was sufficient to adjudicate the alter ego claim as a
"limited finding" concerning ownership as between two parties to the action (Venezuela and
PDVSA) of the "specific property at issue" for which attachment was sought. *Crystallex*, 333 F.
Supp. 2d at 394. Here, by contrast, Etrak has not put any specific assets at issue. Rather, Etrak
seeks a boundless determination that NOC is identical with Libya for all purposes, and that Etrak
may therefore satisfy its judgment from any of NOC's assets anywhere in the world. There is
little doubt that Etrak will not stop with NOC, but will extend this reasoning to Libya's other
instrumentalities as well – all of whom are non-parties to this action. There is no authority for
adjudicating such an expansive claim in a post-judgment proceeding, particularly in the context
of a discovery dispute, without an independent basis for subject matter jurisdiction and without
bringing the third parties properly before the Court.

Crucially, NOC's status as a non-party distinguishes this case from *Crystallex* and provides a further independent basis for rejecting Etrak's alter ego claim. The Supreme Court has adopted the principle that courts may not adjudicate any rights in property to which a foreign sovereign entity has an interest unless that sovereign entity is a properly joined party to the proceeding. *Philippines v. Pimentel*, 553 U.S. 851, 867 (2008). In *Pimentel*, victims of former Philippines President Ferdinand Marcos brought a class action suit against Marcos in the District of Hawaii that led to a nearly $2 billion judgment. *Id.* at 857-58. The plaintiffs sought to enforce their judgment by attaching assets held by Merrill Lynch that were allegedly stolen by Marcos, but those assets were also claimed under Philippine law by the Republic of the Philippines and a Philippine Presidential Commission established to recover property stolen by Marcos. *Id.* at 858. To determine ownership of the assets, Merrill Lynch filed an interpleader action and named as defendants the plaintiffs, the Republic, the Commission, and others. *Id.* at 859. The Republic and the Commission invoked sovereign immunity to obtain their dismissal from the interpleader action, and then moved to dismiss the interpleader action itself on the ground that their property rights could not be adjudicated in their absence. *Id.* The district court nevertheless allowed the action to proceed without the Republic or the Commission and awarded the assets to the plaintiffs. *Id.* at 860. The Republic and the Commission appealed. *Id.*

The Supreme Court reversed and held that the interpleader action could not proceed without joinder of the Republic and Commission. *Id.* at 864. Because the immune sovereigns' claims were not frivolous, the district court could not address those claims in their absence. *Id.* The Court stated succinctly, "[a] case may not proceed when a required-entity sovereign is not amenable to suit." *Id.* at 867. In any case, as the Court noted, the interpleader action would not

have fully resolved the dispute because "the Republic and the Commission would not be bound by the judgment in an action where they were not parties." *Id.* at 870-71.

As in *Pimentel*, NOC is a foreign sovereign nonparty to this action. Therefore, NOC's rights to its own property cannot be adjudicated in its absence, particularly when (as in *Pimentel*) NOC's absence is due to its own sovereign immunity. Moreover, even if the Court were to attempt to adjudicate NOC's property in NOC's absence, NOC would not be bound by any resulting judgment to which it was not a party. *Pimentel*, 553 U.S. at 870-871. *Pimentel* thus presents an independent bar to adjudicating Etrak's alter ego claim, and all discovery requests based on that claim must be quashed.

In brief, Etrak's proposed surreply does not help this Court to establish its subject matter jurisdiction over any claim against NOC, and instead further highlights the jurisdictional defect of Etrak's tactics.

## **CONCLUSION**

For the foregoing reasons, and given the Court's independent obligation to determine its own subject matter jurisdiction, the Court may consider whatever briefing it deems necessary to make that determination but should ultimately reject the arguments in Etrak's proposed surreply.

Dated: February 5, 2026

Respectfully submitted,

CURTIS, MALLET-PREVOST,
 COLT & MOSLE, LLP

*/s/ Joseph D. Pizzurro*

Joseph D. Pizzurro (D.C. Bar No. 468922)
Juan O. Perla (D.C. Bar No. 1660389)
Robert J. Groot (D.C. Bar No. NY0700)
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
jperla@curtis.com
rgroot@curtis.com

*Attorneys for Non-party*
*National Oil Corporation of Libya*

## CERTIFICATE OF SERVICE

I hereby certify that on <u>February 5, 2026</u>, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Plaintiff.

*/s /Joseph D. Pizzurro*
Joseph D. Pizzurro

Dated: February 5, 2026