**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ, | : : : : : : : | |
| *Plaintiff,* | : : | Case No. 1:22-cv-00864 (JMC) |
| v. | : : : | |
| STATE OF LIBYA, | : : : | |
| *Defendant.* | : : : : : : | |

**THE STATE OF LIBYA'S REPLY MEMORANDUM IN SUPPORT OF ITS
MOTION FOR LEAVE TO FILE SUPPLEMENTAL BRIEFING**

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP

Joseph D. Pizzurro (D.C. Bar No. 468922)
Juan O. Perla (D.C. Bar No. 1660389)
Robert J. Groot (D.C. Bar No. NY0700)
Olivia J. Wang (D.C. Bar No. NY0709)
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
jperla@curtis.com
rgroot@curtis.com
owang@curtis.com

*Attorneys for Defendant State of Libya*

March 30, 2026

Defendant State of Libya ("Libya") submits this reply memorandum in further support of its motion for leave to file supplemental briefing to address the considerations raised by the U.S. Government's Statement of Interest in *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, 15-cv-02739 (LAP) (S.D.N.Y.) (the "U.S. Statement of Interest").

## PRELIMINARY STATEMENT

Etrak fails to engage seriously with Libya and the U.S. Government's arguments concerning the foreign policy principles implicated by discovery disputes involving foreign state debtors. Most significantly, Etrak makes no attempt to demonstrate that its broad discovery requests, which overwhelmingly seek irrelevant information regarding non-executable assets, can be reconciled with the principles of comity and reciprocity that must inform the ordinary rules governing post-judgment discovery against foreign sovereigns. Instead, Etrak offers only a litany of meritless procedural arguments as to why this Court should disregard entirely the considered views of the executive, despite those views being highly relevant and of assistance to the Court in resolving the pending discovery disputes.

Contrary to Etrak's arguments, the U.S. Statement of Interest constitutes a persuasive authority that is entitled to substantial deference given the primacy of the executive in foreign affairs.[1] Libya properly notified the U.S. Statement of Interest to the Court as a Supplemental Authority because the U.S. Statement of Interest was not available until after briefing had closed on the pending discovery disputes. Importantly, the U.S. Statement of Interest demonstrates that

---

[1] The U.S. recently reaffirmed its position in supporting Argentina's Motion for Stay of Discovery Pending Appeal before the Second Circuit in the *Petersen* case. Argentina filed its motion on March 6 and the U.S. filed its Memorandum in Support on March 13. U.S. Amicus Br., *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 25-2362 (2d. Cir. Mar. 18, 2026), Dkt. No. 86. On March 18, the Second Circuit granted the unusual relief of staying all post-judgment proceedings in the district court, including discovery, pending appeal. Motion Order, *Petersen Energia Inversora, S.A.U. v. Argentine Republic*, No. 25-2362 (2d. Cir. Mar. 18, 2026), Dkt. No. 88.

the positions taken by Libya in those disputes are the same as those taken by the U.S. in a factually similar case involving basically the same legal issues.

Because Etrak has provided no valid reason to disregard the U.S. Statement of Interest or Libya's proposed supplemental memorandum addressing its significance, Libya respectfully asks that the Court consider these filings in resolving the pending discovery disputes.

### ARGUMENT

**I.    The U.S. Statement of Interest is an Appropriate Supplemental Authority that is Entitled to Substantial Weight**

As an initial matter, Etrak wrongly asserts that any statement of interest filed by the U.S. Government setting out its policies and positions *per se* cannot be a valid supplemental authority because it supposedly amounts to mere "advocacy." ECF No. 92 at 4. Etrak offers no authority for this assertion, and it is contrary to the practice of many courts that have recognized such statements of interest as authorities in their own right that are relevant to resolving legal questions. *See Mullen v. Concord Hosp. Enters. Co., LLC*, No. 2:20-cv-01530, 2022 U.S. Dist. LEXIS 18312 at *6-7 (W.D. Pa. Feb. 1, 2022) (accepting as supplemental authority a U.S. statement of interest from a separate case that "involves similar claims and arguments to those that have been raised in the present action" and considering "the arguments set forth and case law cited therein in resolving" the pleading standard under the ADA); *United States ex rel. McIver v. Act for Health, Inc.*, 536 F. Supp. 3d 839, 847 (D. Colo. 2021) (accepting as supplemental authority a U.S. statement of interest from a separate case relevant to standard for establishing qui tam action); *Saunders v. Big Blue Healthcare, Inc.*, 522 F. Supp. 3d 946, 963 (D. Kan. 2021) (accepting as supplemental authority a U.S. statement of interest from a separate case addressing preemption issues). Courts have even taken the initiative to invite statements of interest from the government to address legal questions, thus demonstrating that these statements

are authorities worthy of consideration. *See Donnelly Commodities Inc. v. BNSF Ry. Co.*, 34 F.4th 1, 7 (D.C. Cir. 2022) (noting district court's invitation of statements of interest from various federal agencies concerning interpretation and application of antitrust statute).

Here, consideration of the U.S. Statement of Interest is particularly important because it authoritatively explains the foreign policy concerns relevant to the post-judgment discovery disputes pending in this case. Although Etrak attempts to downplay this relevance by asserting that the U.S. is not entitled to "special deference" concerning a "pure question of statutory construction" (ECF No. 92 at 4; *Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004)), Etrak ignores that the U.S. Statement of Interest is not focused on "statutory construction," but rather on the interaction between post-judgment discovery rules, FSIA immunity, and foreign policy principles of comity and reciprocity and how those considerations should inform a district court's oversight of post-judgment discovery involving foreign sovereigns. These principles underly the practice of honoring foreign sovereign immunity. *See National City Bank v. Republic of China*, 348 U.S. 356, 362 (1955) (one basis for foreign sovereign immunity is "reciprocal self-interest"). They also animate important legal rules governing execution against a foreign sovereign, such as the presumption established in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611, 626-27 (1983), that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." The executive branch, charged with administering foreign policy, is best positioned to assess the correct application of these principles. *See Altmann*, 541 U.S. at 702 (2004); *Sosa v. Alvarez-Machain*, 542 U.S. 692, 733 n.21 (2004).

In applying these principles of comity and reciprocity to the context of post-judgment discovery against a foreign sovereign, the U.S. Statement of Interest does not merely "offer [an]

3

opinion as to the meaning of the law" (ECF No. 92 at 4) as Etrak mischaracterizes, but rather sets out a comprehensive assessment of how these types of proceedings will impact U.S. concerns abroad, including by the inevitable reciprocal treatment of the U.S. where it is a litigant in foreign courts. ECF No. 90-1 at 1, 20 n.12. The U.S. therefore "has a substantial interest in ensuring that U.S. courts supervising post-judgment discovery into presumptively immune foreign-state property carefully adhere to basic principles of relevance and are sensitive to the significant comity, reciprocity, and foreign-relations concerns raised by potentially burdensome discovery." ECF No. 90-1 at 1. As the U.S. explains, this interest is harmed when courts order intrusive discovery into assets that are immune from attachment or that belong to presumptively separate state entities not liable for the judgment, as well as when courts impose sanctions on foreign sovereigns for alleged non-compliance with discovery orders. These practices inevitably degrade the treatment of the U.S. in foreign courts.  ECF No. 90-1 at 7-8 (citing *Persinger v. Islamic Republic of Iran*, 729 F.2d 835, 841 (D.C. Cir. 1984)).

This assessment by the U.S. on matters of foreign policy is entitled to deference from the courts. *See Zivotofsky v. Sec'y of State*, 725 F.3d 197, 217 (D.C. Cir. 2013) (noting "customary policy of deference to the President in matters of foreign affairs" that "may implicate our relations with foreign powers . . . requir[ing] consideration of changing political and economic circumstances" (quoting *Jama v. Immigration & Customs Enf't*, 543 U.S. 335, 348 (2005))); *Ameziane v. Obama*, 699 F.3d 488, 494 (D.C. Cir. 2010) (same); *Hernandez v. Mesa*, 589 U.S. 93, 104 (2020) ("The political branches, not the Judiciary, have the responsibility and institutional capacity to weigh foreign-policy concerns." (quoting *Jesner v. Arab Bank, PLC*, 584 U.S. 241, 265 (2018))); *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414, (2003) (recognizing that Constitution allocates "vast share of responsibility for the conduct of our foreign relations"

to the executive (quoting *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 610 (1952)));

*Mathews v. Diaz*, 426 U.S. 67, 81 (1976) (decisions that "may implicate our relations with

foreign powers" are "more appropriate to either the Legislature or Executive than to the

Judiciary").

Etrak nevertheless asserts that this Court should give only "case-specific deference" to

the foreign policy views of the U.S. should the U.S. choose to submit a statement of interest

specifically in this case. ECF No. 92 at 4. But that would be contrary to the broad deference

required by the cases cited above. Moreover, none of the general principles expressed by the

U.S. in *Petersen* are unique to that case or apply solely to post-judgment discovery requests

directed at Argentina as opposed to Libya or any other sovereign.[2] It would be nonsensical to

suppose that these principles cease to exist unless the U.S. files a case-specific statement of

interest reiterating them in any and every post-judgment proceeding against a foreign sovereign.

Rather, the logic of the U.S. position in *Petersen* applies with equal force here. Just as in

*Petersen*, Etrak has made facially overbroad discovery requests seeking irrelevant information

about non-executable assets, including the assets of presumptively separate state entities, and has

requested improper evidentiary preclusion and monetary sanctions. There is thus no basis to

disregard the U.S.'s clearly expressed views on these issues.

## II.    Etrak's Assertions of Waiver and Other Procedural Arguments Seeking to Preclude Consideration of the U.S. Statement of Interest Should be Rejected

In its Opposition, Etrak continues to steadfastly ignore the framework applicable to

enforcement of a judgment against a foreign sovereign and to pretend that it may treat these

---

[2] Nor is it relevant that, as Etrak emphasizes, the U.S. Statement of Interest was filed in "another circuit." ECF No. 92 at 2, 4. The U.S. would have no reason to adopt different views on foreign policy concerns depending on the particular circuit in which a case is filed.

proceedings as an ordinary dispute between private parties. In particular, Etrak repeats *ad nauseum* its refrain that Libya's objections to discovery have all been deemed waived by sanctions applied *ex parte*. But as explained in the U.S. Statement of Interest, a foreign state should not be subject to a waiver sanction that would compel it to produce irrelevant information concerning assets that would not ultimately be subject to execution, or about the assets of its presumptively separate agencies or instrumentalities. ECF No. 91-1 at 6-7. In this regard, Etrak tellingly offers no explanation as to how its overbroad discovery requests target information concerning executable, non-immune assets, nor makes any showing that Etrak should be entitled to discovery of the assets of Libya's presumptively separate agencies and instrumentalities. Etrak's discovery requests are therefore irrelevant, and the waiver sanction should be rescinded.

Etrak contrives other procedural arguments in its attempt to preclude this Court from considering the U.S. Statement of Interest. For example, Etrak argues that because "the authorities supporting the Statement of Interest all predate Libya's briefs," this somehow made it improper for Libya, after the close of briefing, to notify the Court of the U.S. Statement of Interest. ECF No. 92 at 5. However, the only new authority of which Libya notified the Court was the U.S. Statement of Interest itself, which post-dates Libya's briefs, not the earlier authorities referenced in the U.S. Statement of Interest. It should be obvious that any new authority, including for example a judicial decision, will necessarily reference earlier authorities. These references do not somehow transform the new authority into an old one that cannot be properly noticed as a supplemental authority. For this reason, the various cases on which Etrak relies for rejecting proposed supplemental authorities are inapposite – those cases all involved authorities that predated the briefing and which the parties could therefore have referenced earlier. ECF No. 92 at 3-4 (collecting cases).

6

Etrak further incorrectly argues that Libya "effectively waived" its arguments in opposition to the requested evidentiary preclusion sanction by supposedly not effectively challenging this sanction until filing its proposed supplemental memorandum. ECF No. 92 at 6. To the contrary, Libya had by then already opposed the underlying waiver sanction imposed by the Show Cause Order, first in its Opposition to Etrak's Motion to Strike and again in its Opposition to Etrak's Motion for Civil Contempt and Sanctions. ECF No. 70 at 8-9; ECF No. 85 at 7-14. Specifically, Libya demonstrated that it should not be compelled by deemed waiver to produce information concerning assets that are immune from attachment or that belong to presumptively separate non-parties. And on this same basis, Libya then demonstrated that the even harsher sanction of evidentiary preclusion should be rejected. ECF No. 85 at 14 n.9. Libya has now properly raised the U.S. Statement of Interest as a Supplemental Authority to reinforce the positions Libya has already taken and to demonstrate that these positions align with those of the U.S. concerning foreign affairs.

Etrak thus provides no valid reason for the Court to decline to consider the U.S. Statement of Interest or Libya's Proposed Supplemental Memorandum.

## **CONCLUSION**

For the foregoing reasons, this Court should consider the U.S. Statement of Interest (ECF No. 90-1) and Libya's Proposed Supplemental Memorandum addressing the U.S. Statement of Interest (ECF No. 91-1) in resolving the pending discovery disputes.

Dated: March 30, 2026

Respectfully submitted,

CURTIS, MALLET-PREVOST,
 COLT & MOSLE LLP

*/s/ Joseph D. Pizzurro*

Joseph D. Pizzurro (D.C. Bar No. 468922)
Juan O. Perla (D.C. Bar No. 1660389)
Robert J. Groot (D.C. Bar No. NY0700)
Olivia J. Wang (D.C. Bar No. NY0709)
1717 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 452-7373
jpizzurro@curtis.com
jperla@curtis.com
rgroot@curtis.com
owang@curtis.com

*Attorneys for Defendant the State of Libya*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on March 30, 2026, I caused a true and correct copy of the foregoing to be filed with the Clerk of the Court using the ECF system and thereby served upon all counsel of record, including counsel for Plaintiff.

*/s/ Joseph D. Pizzurro*
Joseph D. Pizzurro

Dated: March 30, 2026