<span style="color:red">**EXHIBIT A**</span>

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------------- x

ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM : 
ŞİRKETİ, 

               Plaintiff,

              -against-

THE STATE OF LIBYA,

              Defendant.

:
:
:
:
:
:  Case No. 1:22-cv-00864-JMC
:
:
:
:
:
:
:
:

---------------------------------------------------------------------- X

**PETITIONER'S SURREPLY TO THE STATE OF LIBYA'S
NATIONAL OIL CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF
<u>MOTION FOR PROTECTIVE ORDER</u>**

Petitioner Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak" or "Petitioner") respectfully files this surreply to address non-party The State of Libya's National Oil Corporation ("LNOC")'s Reply Memorandum in Support of Motion for Protective Order (ECF No. 69) ("Reply"). This brief is necessary to address arguments LNOC first raised in its Reply, and to address other misstatements contained therein.

**INTRODUCTION**

Having obtained a valid judgment against Libya that remains unpaid nearly a year later, Etrak is exercising its well-founded right to conduct post-judgment discovery into Libya's assets. Libya's ongoing failure to honor the judgment and provide the requested documents or information in post-judgment discovery has done more than earn it sanctions. It has also forced Etrak to seek information about Libya from third parties, such as banks or oil and gas companies.

272891v.1

Such discovery seeks documents related to assets nominally held by Libyan agencies or instrumentalities, including LNOC, and Libya's relationship with those agencies or instrumentalities. Additionally, because Libya—while playing opossum before this Court— operates an office in Houston, TX, under the auspices of its LNOC, Etrak sought discovery from LNOC. Though Libya continues in its contempt of this Court's judgment and orders, LNOC— now represented herein by the same counsel as Libya—argues this Court cannot force it to give up the information to which Etrak is entitled. At bottom, LNOC's position is less a legal challenge to this Court's enforcement authority than a refusal to submit to it.

LNOC argues for the first time in its reply brief that, under the U.S. Supreme Court's opinion in *Peacock v. Thomas*, 516 U.S. 349 (1996), this Court lacks jurisdiction to issue any subpoena seeking LNOC-related information or enforce any judgment against assets nominally held by LNOC. As shown herein, LNOC is wrong. Etrak is walking a well-trodden path. For many years, judgment creditors of judgments against foreign states who do not honor them have been enforcing those judgments against assets nominally held by the state's agencies or instrumentalities. LNOC nevertheless asks this Court to interpret the law in a fashion that would upend that process entirely, midstream, and in a manner that would leave Etrak and so many other judgment creditors like it with little chance of relief. For the reasons stated in Etrak's opposition brief and herein, it should not do so.

### A. *Peacock* does not defeat this Court's jurisdiction.

LNOC argues that this Court lacks jurisdiction over it even if it is Libya's alter ego.[1] LNOC roots its ancillary jurisdiction argument in *Peacock*. But *Peacock* does not control here,

---

[1] LNOC also seems to argue that this Court lacks personal jurisdiction over it. *See* ECF No. 69, at 3 ("Without jurisdiction over a person…"). This is easily disproven. Etrak lawfully served LNOC with its document subpoena under the Federal Rules of Civil Procedure, *see* ECF No. 68-

because Etrak is not now pursuing an independent action against LNOC but rather pursuing post-judgment discovery regarding Libyan assets—whether or not they are nominally held by its state agencies or instrumentalities constituting its alter egos—within this action against Libya where jurisdiction has been established.

In *Peacock*, the plaintiff filed suit in federal court under ERISA against his former employer corporation and an officer thereof for benefits due under the corporation's benefits plan. *Peacock*, 516 U.S. at 351. He primarily argued that the employer and officer had breached their fiduciary duties in administering the plan. *Id.* The court found that the employer had breached its fiduciary duties but not the officer and issued judgment in the amount of $187,628.93 against the employer only. *Id.* After the plaintiff was unable to collect on the judgment against the employer, he filed another lawsuit in federal court under ERISA against the same officer and alleged the officer "entered into a civil conspiracy to siphon assets from [the employer] to prevent satisfaction of the ERISA judgment," "fraudulently conveyed [$80,000 of the employer]'s assets in violation of [state] law," and "a claim for 'Piercing the Corporate Veil Under ERISA and Applicable Federal Law." *Id.* at 352. The district court ultimately entered a judgment against the officer in the same amount as the first suit's judgment, $187,628.93, plus

---

2, at 17, and LNOC chose to subject itself to this Court's jurisdiction when it filed its Motion for Protective Order before it. Moreover, though the FSIA does not address the service of a subpoena—indeed, it speaks only of service of "the summons and complaint" (because, again, the FSIA does not address discovery, *see Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 142-43 (2014))—Etrak effected service of the subpoena on an "agent authorized by appointment" for service of process when it served LNOC's authorized agent for service of process. *See* ECF No. 68-2, at 17. It therefore complied with the FSIA's service provision relative to an "agency or instrumentality of a foreign state" in any case. *See* 28 U.S.C. § 1608(b)(2); *see also Helmerich & Payne Int'l Drilling Co. v. Venezuela*, 153 F.4th 1316, 1330 (D.C. Cir. 2025) (explaining that, even if a state's "agency or instrumentality" is treated as the state itself for constitutional purposes, it may be treated as "an agency or instrumentality for FSIA purposes" as long as the entity's core functions are commercial rather than governmental).

interest and fees, "notwithstanding the fact that [the officer]'s alleged fraudulent transfers totaled no more than $80,000." *Id.* Though the district court did not expressly rule on subject matter jurisdiction, the plaintiff had argued that the court had jurisdiction under ERISA, and the court found that the plaintiff "had properly stated a claim under ERISA for piercing the corporate veil." *Id.* at 353. Ultimately, the Supreme Court reversed, reasoning that "no provision of ERISA . . . provides for imposing liability for an extant ERISA judgment against a third party," *id.*, and that the ancillary jurisdiction enjoyed by courts over supplementary proceedings "to execute, or to guarantee eventual executability of, a federal judgment" did not extend so far as to cover a subsequent lawsuit to impose liability under a state-law theory on a new party for the underlying judgment in which he was not named. *Id.* at 357-58. And, because the Supreme Court clearly explained that the second judgment exceeded the amount of the $80,000 fraudulent transfer claim and instead matched the amount of the initial judgment, it was clear that the facts of *Peacock* pushed it beyond the court's ancillary jurisdiction over execution or attachment. The plaintiff was not merely seeking assets belonging to the employer but nominally held by the officer; the plaintiff was attempting to impose new liability on the officer for the initial judgment.

By contrast, here, Etrak has not filed a separate lawsuit through which it seeks to impose new liability upon LNOC for the initial judgment and does not ask this Court to exercise ancillary jurisdiction over such an action. Instead, Etrak, after establishing jurisdiction over Libya and winning confirmation of its arbitration award against Libya, is conducting post-judgment discovery against Libya within the original action. To be sure, that discovery at times seeks information or documents regarding assets nominally held by Libya's agent or alter ego, LNOC, as well as the relationship between Libya and LNOC. But it involves no new "claim"

against or "liability" of LNOC.[2] Moreover, even if one frames the circumstances to encompass an alter ego "claim," that "claim," arising as it does under *Bancec* and the Foreign Sovereign Immunities Act ("FSIA"), is a product of "both international law and federal common law" over which this Court would have jurisdiction in any case. *See First Nat. City Bank v. Banco Para El Comerico Exterior de Cuba*, 462 U.S. 611, 622 n.11 & 623 (1983) (hereinafter, "*Bancec*"). It is therefore distinguishable from the state-law "veil piercing" claim at issue in *Peacock*. Finally, if this Court still believes it requires an independent basis for jurisdiction, one exists under 28 U.S.C. § 1330 and the FSIA § 1605(a)(6). *See, e.g. Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380, 394 n.10 (D. Del. 2018) ("Even if an independent basis for jurisdiction were required, it is present, based on § 1330 and FSIA § 1605(a)(6)."); *see also Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000) (recognizing that *Bancec* analysis offers not just "exceptions to the rule that a foreign sovereign is not *liable* for the acts of an instrumentality of the state" but also "exceptions to the rule that a foreign sovereign is not *amenable to suit* based upon the acts of such an instrumentality" (emphasis added)). These are distinctions with a difference, and *Peacock* and its progeny therefore pose no bar here.

This Court need not take Etrak's word for it on this point. Indeed, a long line of cases establishes that where a judgment creditor advances agency or alter ego arguments "only to collect a judgment but not to establish [new] liability, [no] independent basis for jurisdiction [is required]." *See, e.g.*, *Crystallex*, 333 F. Supp. 3d at 392-93 (citing *EM Ltd. v. Banco Cent. de la Republica Argentina*, 800 F.3d 78, 91 n.56 (2d Cir. 2015) ("Our precedent supports the view ...

---

[2] Further to the point, almost all of the discovery from which LNOC seeks this Court's protection is directed to Libya, banks, and oil and gas companies *and is regarding Libya more generally* and not just LNOC. *See generally* ECF No. 66-3.

that once an instrumentality of a sovereign state has been deemed to be the alter ego of that state ... the instrumentality and the state are to be treated as one and the same for all purposes."); *Transfield ER Cape Ltd. v. Lndus. Carriers, Inc.*, 571 F.3d 221, 224 (2d Cir. 2009) (stating alter egos "are treated as one entity for jurisdictional purposes") (internal quotation marks omitted); *Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 654 (5th Cir. 2002) (alter egos "are considered to be one and the same under the law"); *Epperson v. Entm't Express, Inc.*, 242 F.3d 100, 106 (2d Cir. 2001) ("Where the post-judgment proceeding is an effort to collect a federal court judgment, the courts have permitted judgment creditors to pursue, under the ancillary enforcement jurisdiction of the court, the assets of the judgment debtor even though the assets are found in the hands of a third party."); *U.S.I Props. Corp. v. M.D. Constr. Co.*, 230 F.3d 489, 496 (1st Cir. 2000) ("Where the postjudgment claim is simply a mode of execution designed to reach property of the judgment debtor in the hands of a third party, federal courts have often exercised enforcement jurisdiction.... Where the state procedural enforcement mechanisms incorporated by Rule 69(a) allow the court to reach assets of the judgment debtor in the hands of third parties in a continuation of the same action, such as garnishment or attachment, federal enforcement jurisdiction is clear."); *Thomas, Head & Greisen Emps. Tr. v. Buster*, 95 F.3d 1449, 1454 & n.7 (9th Cir. 1996) (stating that where judgment creditor "is not attempting to establish the [third party's] liability for the original judgment,... *Peacock* [is] inapposite.... *Peacock* suggested that whether a judgment creditor's post-judgment action is within a federal district court's ancillary enforcement jurisdiction hinges on whether it seeks not merely 'to *collect* a judgment' but also '*to establish liability*' on the part of the third party.")).

More importantly, the U.S. Court of Appeals for the Third Circuit analyzed this issue at length in *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126 (3d Cir. 2019)

and rejected the argument that LNOC makes here (though in the context of a separate attachment action rather than post-judgment discovery within the confines of the original merits action). In *Crystallex*, the U.S. Court of Appeals for the Third Circuit exercised ancillary jurisdiction in the plaintiff's post-judgment attachment action against the judgment debtor to attach assets belonging nominally to the debtor's agency or instrumentality under an agent or alter ego theory. *Crystallex*, 932 F.3d at 135–36. The plaintiff, Crystallex, contracted in 2002 with the Corporacion Venezolana de Guayanaan—an organ of the Venezuelan government—for the right to extract gold deposits in Venezuela. *Id.* at 133. After Crystallex spent hundreds of millions of dollars on the endeavor, Venezuela nationalized its gold mines in 2011 and expropriated the investment. *Id.* Soon thereafter, Crystallex availed itself of a bilateral investment treaty between Canada and Venezuela and filed for arbitration thereunder against Venezuela. *Id.* Crystallex won an arbitration award against Venezuela of $1.2 billion plus interest. *Id.* Crystallex then filed an action to confirm the award with the U.S. District Court for the District of Columbia. *Id.* The court confirmed the award and issued judgment in favor of Crystallex. *Id.* When Venezuela failed to pay the judgment, the court ruled that Crystallex could commence execution efforts. *Id.* Crystallex registered the judgment under 28 U.S.C. § 1963 and sought an attachment under Rule 69(a) of the Federal Rules of Civil Procedure in Delaware while Venezuela's appeal of the confirmation remained pending. *Id.* at 134.

On August 14, 2017, Crystallex commenced the attachment action against Venezuela but sought to attach assets owned by Venezuela's agency or instrumentality, Petroleos de Venezuela, S.A. ("PDVSA"). *Id.* PDVSA—though, again, not named as a party—intervened in the Delaware action. PDVSA sought dismissal on sovereign immunity grounds under the FSIA. *Id.* Crystallex argued, however, that PDVSA was Venezuela's alter ego under *Bancec* and therefore enjoyed no

immunity from the proceeding. *See id.* After much briefing and argument on the matter, the court agreed and held that "it had jurisdiction to order attachment against PDVSA's U.S.-based commercial assets." *Id.* Specifically, the court found two grounds for jurisdiction: "both ancillary jurisdiction to enforce the judgment and an independent basis for jurisdiction per 28 U.S.C. § 1330 and 28 U.S.C. § 1605(a)(6) because PDVSA was Venezuela's alter ego." *Id.* at 135. With respect to the first, the district court noted that Third Circuit precedent was clear no independent basis for jurisdiction was required for garnishment actions, such as Crystallex's writ of attachment, because they are viewed as continuations of the original action. *Crystallex*, 333 F. Supp. 3d at 391-92 ("*Peacock* itself made clear that it does not apply to Rule 69 actions. . . . Unlike the situation presented in *Peacock*, 516 U.S. at 350, 116 S.Ct. 862, this case is not 'a subsequent lawsuit' to 'impose an obligation to pay' an 'existing federal judgment on a person not already liable for that judgment.' To the contrary, it is part of the 'same lawsuit' – that is, the action giving rise to the judgment against Venezuela, which has been registered in this District – and does not seek to impose any obligation on PDVSA to pay Venezuela's existing judgment, but, instead, seeks to attach property nominally belonging to PDVSA as truly belonging to Venezuela."). With respect to the second,

> Section 1330 grants federal-court jurisdiction over "any nonjury civil action" against a foreign sovereign, so long as the sovereign is properly served under 28 U.S.C. § 1608 and is not entitled to sovereign immunity. *See* 28 U.S.C. § 1330(a)–(b). Under 28 U.S.C. § 1604, foreign sovereigns and their instrumentalities are entitled to sovereign immunity in U.S. courts except as provided in 28 U.S.C. §§ 1605–1607. Section 1605(a)(6), the immunity exception applied by the District Court in this case, provides an exception to immunity for actions seeking to compel arbitration pursuant to an agreement or to enforce arbitration awards that meet certain criteria.

*Crystallex*, 932 F.3d at 135-36. The court went on to hold that "Crystallex could attach PDVSA's [assets] to satisfy the judgment against Venezuela" *Id.* at 134. PDVSA appealed.

8

On appeal, in a carefully reasoned opinion, the Third Circuit affirmed in every respect. It first confirmed that the district court properly exercised ancillary jurisdiction over Venezuela in the attachment action under § 1963 and Rule 69(a). *Id.* at 136-38. The Third Circuit then confirmed that the district court properly exercised jurisdiction to attach assets of PDVSA as Venezuela's alter ego. *Id.* at 138-49. In doing so, it rejected PDVSA's argument, under *Peacock v. Thomas*, 516 U.S. 349 (1996), "that a district court cannot exercise post-judgment enforcement jurisdiction over a party other than the judgment debtor based on a theory of 'alter ego' or 'veil piercing' unless it has an 'independent basis' for jurisdiction over the third party." *Id.* at 138. The Third Circuit distinguished *Peacock*:

> [*Peacock*] was not a case involving foreign sovereigns or the Sovereign Immunities Act. The Act is a specialized jurisdictional statute designed to address a specific problem—the extent to which foreign sovereigns and their instrumentalities are immune from suit and attachment in our courts. And the *Bancec* doctrine—the applicability of which is the core question here—is a federal common-law outgrowth of that specialized statute. It (the doctrine) exists specifically to enable federal courts, in certain circumstances, to disregard the corporate separateness of foreign sovereigns to avoid the unfair results from a rote application of the immunity provisions provided by the Sovereign Immunities Act. Nothing in *Peacock* leads us to believe the Supreme Court expected or intended its decision in that case to restrain the application of *Bancec* in post-judgment proceedings.

*Id.* at 139. The Third Circuit bolstered this conclusion with the Supreme Court's holding in *Rubin v. Islamic Republic of Iran*, 583 U.S. 202 (2018) to the effect that the new provision 28 U.S.C. § 1610(g)—which permits a judgment creditor with an award against a foreign state under the FSIA provision related to state-sponsored terrorism to reach the assets of that state's agencies or instrumentalities *without* showing the *Bancec* factors—abrogated *Bancec* in terms of reaching an agency or instrumentality's assets to satisfy a judgment against a state-sponsor of terrorism. *See id.* The Third Circuit reasoned that such logic demonstrated that, "in *ordinary* FSIA attachment proceedings [not involving state-sponsored terrorism,] the judgment holder may reach assets of

the foreign judgment debtor by satisfying the *Bancec* factors." *Id.* For example, a plaintiff with a judgment against a sovereign "would need to satisfy the *Bancec* factors [in order] to collect against assets located in the United States of a *state-owned telecommunications company*." *Id.* (quoting *Rubin*, 583 U.S. at 213). In sum, the Third Circuit squarely held, "so long as PDVSA is Venezuela's alter ego under *Bancec*, the District Court had the power to issue a writ of attachment on that entity's non-immune assets." *Id.*

Certainly, if Crystallex could *seize* PDVSA's assets in a separate attachment action against Venezuela, Etrak can *probe* LNOC's relationship to Libya and assets following judgment in the original merits action against Libya. Etrak is not looking to separately impose new liability on LNOC but to discover Libyan assets, some of which may be held only nominally by LNOC, against which it can execute this Court's Judgment. Moreover, because Libya created LNOC to exploit the oil owned by the Libya and, at the end of the day, LNOC must surrender its profits to Libya, it is a near certainty that LNOC continuously controls and directs funds that are intended for Libya. This makes LNOC a textbook target for post-judgment discovery, and it is the precise purpose of this Court's ancillary jurisdiction. *See, e.g.*, *United States v. Facebook, Inc.*, 136 F.4th 1129, 1132 (D.C. Cir. 2025) ("Generally speaking," one purpose of ancillary jurisdiction is "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees ...."); Steven S. Gensler, 2 Federal Rules of Civil Procedure, Rules and Commentary, § 69:15 Ancillary jurisdiction over discovery in furtherance of enforcement ("The court's ancillary jurisdiction over enforcement includes jurisdiction to enforce post-judgment discovery.").

Only recently has a court ruled that a party with a foreign arbitral award may confirm and "enforce" the award against an alter ego in one fell swoop, though the consequence of LNOC's

10

arguments would be to *require* parties to establish alter ego status at the confirmation stage where jurisdiction is premised only on FSIA's arbitration exception to jurisdiction immunity *and* alter ego status. *See CFB Industria de Gusa S/A v. AMCI Holdings, Inc.*, 850 F.3d 58 (2d Cir. 2017) (holding that plaintiff was "not required to bring an action to confirm their foreign arbitral award before they can seek to enforce it" against alter ego). Flipping the analysis on its head in this fashion is unnecessary under the law and certain to lead to overwhelming inefficiencies and, ultimately, leave some judgment debtors with no avenue for relief. For example, where the foreign state judgment debtor actually honors a court's judgment, there is no need to enforce the judgment against any agency or instrumentality (and, therefore, to prove the fact-heavy alter ego relationship). And, for those judgment creditors like Etrak with judgments against foreign sovereigns who refuse to honor them, enacting such a sea change in the confirmation and enforcement scheme at this juncture could make it virtually impossible to collect.

LNOC's other authorities—primarily, *Peterson v. Bank Markazi* (2d Cir.) and *Butler v. Sukhoi* (11th Cir.)—are nonbinding and distinguishable for the same reason *Peacock* is distinguishable. They involve a plaintiff's post-judgment action filed against a party other than the judgment debtor, asserting claims against that third party, and seeking to impose fresh liability on that third party. *See Peterson v. Bank Markazi*, 121 F.4th 983, 991-92 (2d Cir. 2024) (explaining that the appeal arose from a separate "action against" parties other than the judgment debtor); *id.* at 1000-01 (stating that ancillary jurisdiction does not extend from the merits proceeding against a foreign sovereign to "a new proceeding seeking to establish liability for the judgment" that, post *Peacock*, *Bancec* continues to permit a judgment creditor to enforce a judgment against the sovereign-judgment-debtor's agency or instrumentality where *Bancec* factors are shown); *see also id.* at 1000 n.6 (distinguishing *Crystallex* on the grounds that there

11

"the plaintiffs brought their post-judgment proceeding against the foreign sovereign itself while seeking to attach assets belonging to the sovereign's instrumentality" such that "the district court had no need to exercise jurisdiction over a claim against the instrumentality"); *Butler v. Sukhoi Co.*, 579 F.3d 1307 (11th Cir. 2009) (explaining that appeal arose from a second lawsuit against parties not involved in first lawsuit that had resulted in judgment for plaintiff and second lawsuit sought to impose joint and several liability for the first lawsuit judgment on those new parties). To the extent that this Court views *Peterson* or *Butler* to be in conflict with *Crystallex*, it should adopt the approach of the well-reasoned *Crystallex* decision discussed above.[3]

**B. Etrak has met its burden of establishing LNOC as Libya's alter ego.**

Rather than face head-on the substantial evidence of LNOC's alter ego status, LNOC's briefing seeks to generate a fog of confusion over the issues presented in the hopes of securing an erroneous though advantageous ruling. Etrak endeavors here to lift the fog.

First, LNOC has argued on the one hand that Etrak cannot obtain discovery about LNOC from *anyone* but on the other hand distinguishes Etrak's authorities regarding obtaining discovery from "foreign state *judgment debtors* themselves," which included such debtors' agencies or instrumentalities under sovereign control, as irrelevant. *See, e.g.*, ECF No. 66-1, at 2; ECF No. 69, at 4-5. Given the inherent contradiction that otherwise would result, Etrak understands LNOC to have conceded that Etrak is entitled to obtain discovery from Libya regarding LNOC. LNOC also states in its reply that, despite its prior position that Etrak is not entitled to discovery about LNOC from *anyone*, it does not believe it enjoys immunity from

---

[3] This is true for the additional reason that *Peterson*'s discussion of *Bancec* is dicta. The plaintiff in *Peterson* never even attempted to meet the *Bancec* factors such that its discussion was not essential to the case's holding. *See Peterson*, 121 F.4th at 1000-01 (explaining that the plaintiff believed "that there is no need to conduct a *Bancec* analysis in this instance because [state law] supersedes the *Bancec* requirements").

discovery. The issue, it says, is that this Court purportedly lacks jurisdiction to issue a subpoena to LNOC. That being the case, there is no jurisdictional issue with Etrak obtaining discovery regarding LNOC from banks, oil and gas companies, and others indisputably not immune under the FSIA. To be sure, Etrak's subpoenas to those entities request documents relating to Libya overall—not just LNOC. Though LNOC still asks this Court to quash all subpoenas, its arguments in support now seem to target discovery issued directly to LNOC. This would narrow substantially the issue before this Court.

Second, LNOC suggests that the *Bancec* analysis requires Etrak to show that LNOC "acted as agent or alter ego of [Libya] with respect to the underlying events giving rise to the plaintiff's injury." ECF No. 69, at 15. This is false. The U.S. Court of Appeals for the D.C. Circuit is clear that the so-called "agency exception" is established when the five *Bancec* factors are satisfied. *See Helmerich & Payne Int'l Drilling Co. v. Venezuela*, 153 F.4th 1316, 1330 (D.C. Cir. 2025). No further evidence of a "principal-agent" relationship is *required*, though it could be relevant. *See id.*; *Transamerica Leasing, Inc.*, 200 F.3d at 848. There is likewise no need to prove a nexus between Libya's control over LNOC or the alleged "fraud or injustice" that would result from respecting the entities' separateness and the plaintiff's injury. *See, e.g.*, *Crystallex*, 932 F.3d at 142 (holding that no link is required between the agency or alter ego status and the plaintiff's injury and acknowledging that requiring one would, with respect to the control test, read *Bancec* out of the doctrine). No such nexus existed in *Bancec*, and the Supreme Court has indicated that no such nexus is required. *See id.* (discussing *Bancec*, *Rubin*, and concluding that "the vast majority of circuits," including the D.C. Circuit, "have required no link").

Third, LNOC argues that Etrak's evidence of alter ego status is "flimsy" and limited to the expert report of Alaref Kashar. ECF No. 69, at 11-12. It is not. Mr. Kashar is a qualified

expert on Libyan law and, more specifically, the control that Libya exercises over LNOC under Libyan law. ECF No. 68-2, at 186. In rendering his opinion, he relies on the Libyan law cited in and, in certain cases, attached to his opinion. *See id.* at 185-286. These laws offer irrefutable evidence of Libya's control over LNOC. *See id.*; *see also* ECF No. 68, at 15-22. The many admissions of LNOC in the form of press releases and other statements that Etrak attached to its opposition brief offer further valuable evidence regarding Libya's economic and managerial control over LNOC. *See id.* The deposition transcript of LNOC's former or current employee, Krystal Edwards, likewise demonstrates her understanding that Libya supplies LNOC's funding. *See id.*; ECF No. 68-2, at 119-20. The force of this combined evidence renders unsurprising the opinion of the Paris Court of Appeals—also attached to Etrak's opposition—authorizing another judgment creditor of the State of Libya to enforce its judgment against LNOC assets. *See id.* at 287-97. LNOC's complaint that Mr. Kashar is "not qualified" to provide an opinion on U.S. law is similarly misguided; this Court requires no expert assistance to interpret and apply U.S. law. *See* ECF No. 69, at 11. (And, in any case, if Etrak presented such an expert, LNOC would undoubtedly question his or her ability to speak to Libya's control over LNOC under Libyan law.) It is especially rich for LNOC, via its counsel, to decry Etrak's evidence as "flimsy" while Libya, with the assistance of that same counsel, continues to flout this Court's discovery order.

Fourth, LNOC suggests that Etrak's evidence demonstrates only that Libya is LNOC's majority stockholder and appoints LNOC board members. ECF No. 69, at 14. This grossly mischaracterizes Etrak's evidence, which in fact demonstrates that LNOC is subject to Libya's extensive control. For example, Libya decides LNOC's board makeup and their compensation; once constituted, Libya's approval is required for that board to make any substantial decisions; Libya has "politicized" the LNOC by instituting oversight thereof by, *inter alia*, its Prime

14

Minister; Libya's control extends to LNOC's budgets and strategic plans; LNOC's funding is provided by Libya; LNOC must surrender all profits to Libya; and Libya can and does dictate LNOC's sales practices. *See* ECF No. 68, at 15-22. These facts—coupled together with Libya's sole shareholder status and power to appoint LNOC board members—satisfy *Bancec*. *See Helmerich & Payne Int'l Drilling Co.*, 153 F.4th at 1330.

Finally, LNOC argues Etrak's evidence of "fraud or injustice" is limited to the fact that LNOC "has an office in Houston." Here again, LNOC chooses strawman over substance. Etrak argued two bases for "fraud or injustice." First, Etrak noted the "fraud or injustice" that will result if Libya and LNOC are able to capitalize on LNOC's pretextual separateness in order to prevent Etrak from obtaining information about LNOC from LNOC and other third parties, all while Libya refuses to provide that information in this case despite this Court having ordered it to do so and facing fines as a result of its contempt. Second, as for "fraud or injustice" related to LNOC's "office in Houston," the material point is that Libya chose to open an office in Houston precisely to capitalize on know-how in the market *and due to the strong legal framework that exists here*. Moreover, it is not just that such framework *exists*, but that LNOC clearly has *availed* itself of that framework to vindicate its rights. *See, e.g.*, *National Oil Corporation v. Libyan Sun Oil Co.*, 733 F. Supp. 800 (D. De. 1990) (affirming arbitral award in LNOC's favor). This is relevant, because it is that very same legal framework that LNOC (Libya) flouts here.

The law and the facts support a finding that LNOC is Libya's agent or alter ego under *Bancec*. LNOC's motion must be denied.

## CONCLUSION

For the reasons stated herein, this Court should deny LNOC's Motion for Protective Order on the basis that this Court has jurisdiction over LNOC to issue and enforce subpoenas

15

against LNOC and/or third parties with information about Libyan agencies or instrumentalities, including LNOC. In the alternative, this Court should permit Etrak to take jurisdictional discovery from LNOC regarding the *Bancec* factors.

**DATED:** January 22, 2026

Respectfully submitted,

/s/ *Molly L. Wells*
Molly L. Wells (*pro hac vice*)
Benjamin D. Reichard (*pro hac vice*)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
Email: mwells@fishmanhaygood.com

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Verrill Advocacy, LLC
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record this date via the Court's CM/ECF system.

/s/ *Molly L. Wells*

16