**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

-------------------------------------------------------------------- X
ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM : ŞİRKETİ,

                            :

            Plaintiff,           :

                            :

        -against-        : Case No. 1:22-cv-00864-JMC

                            :

THE STATE OF LIBYA,        :

                            :

          Defendant.      :

                            :

-------------------------------------------------------------------- X

**RESPONSE TO THE STATE OF LIBYA'S  SUPPLEMENTAL MEMORANDUM
ADDRESSING THE UNITED STATES GOVERNMENT'S
<u>STATEMENT OF INTEREST</u>**

Petitioner Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak" or "Petitioner") respectfully files this Response to Respondent The State of Libya ("Libya")'s Supplemental Memorandum (ECF No. 97) ("Supplemental Brief") Addressing the United States Government's Statement of Interest ("Statement of Interest"). Libya's Supplemental Brief relies on a recent Statement of Interest filed in *Petersen Energía Inversora, S.A.U. v. Argentine Republic*, No. 15 Civ. 2739 (LAP) (S.D.N.Y. Feb. 26, 2026) ("*Petersen*") by the U.S. Department of Justice (the "Statement of Interest"). The Statement of Interest arises under the law of a different circuit and from highly distinguishable facts. Neither the Statement of Interest nor Libya's Supplemental Brief renders Etrak's post-judgment discovery, its related requests for relief, or this Court's orders related thereto in any way improper. For the reasons stated herein, this Court should reject Libya's successive challenges to Etrak's discovery and this Court's prior orders.

**INTRODUCTION**

With its Supplemental Brief on the Statement of Interest, Libya once again attempts to reframe the instant dispute to cast itself as the victim. Libya laments its prior lack of representation in this matter and accuses Etrak of capitalizing thereon to gain favorable rulings on monetary sanctions and waiver. Yet, Libya—unlike Argentina in the Statement of Interest—has only itself to blame. This Court's order issuing sanctions and finding waiver of objections is the direct result of Libya's deliberate though unwise post-judgment strategy of contempt. For this reason, Libya's invocation of the Statement of Interest falls flat. As explained herein, the Statement of Interest is factually distinguishable on its face, confirms that the law of this circuit is as Etrak previously argued, and, generally speaking, will not assist this Court. This Court properly issued sanctions and found waiver due to Libya's intentional and ongoing contempt. This Court should decline Libya's poorly disguised request for reconsideration, confirm the holdings of the September 19, 2025, Show Cause Order (ECF No. 49), and issue any other relief it finds warranted.

**LAW AND ARGUMENT**

**A. The Statement of Interest arises from distinguishable facts and law and will not assist this Court.**

The Statement of Interest is sufficiently distinguishable on its face that it lends little support to Libya's position here.

In *Petersen*, plaintiffs holding a judgment against Argentina engaged in post-judgment discovery to identify executable assets. *See* ECF No. 90-1.[1] According to the Statement of Interest itself, Argentina undertook efforts to comply with the plaintiffs' requests, including those

---

[1] The Second Circuit has since reversed the underlying judgment in *Petersen Energia Inversora S.A.U.* for distinguishable reasons.

"seeking high-level Argentine officials' communications relating to state-owned entities." *Id.* at 2. Nevertheless, ongoing failures to produce those "off-channel communications" caused the plaintiffs to seek a finding of contempt, monetary sanctions *of at least $1 million per day*, and an order precluding Argentina from contesting certain of its state agencies' alter ego status.

Here, Libya has made no effort to provide any information or documents in response to Etrak's discovery requests—not even to any unobjected-to requests or parts of requests—and further failed to even preserve any objections thereto. Instead, Libya chose to withdraw its counsel from this matter entirely, hoping that such a move would complicate service and delay or even halt post-judgment efforts. Though Libya now claims it was somehow the victim of its prior counsel and even complains that this Court improperly permitted the withdrawal, *see* ECF No. 85, at 9 no. 5, Libya in fact consented to its prior counsel's withdrawal and refused to hire substitute counsel despite this Court staying this action for a month to allow Libya to engage new counsel and further providing it an additional six weeks on top of the one-month stay to hire new counsel, explain its prior failures, and/or provide responses and documents. *See* ECF No. 40 (consenting to withdrawal); ECF No. 44 (same); July 31, 2025, Minute Order (entering one-month stay to permit Libya to enroll substitute counsel); ECF No. 49 (granting Libya the period running from September 19, 2025 through November 3, 2025 to explain its lack of discovery responses). Again, Libya refused. Now, Libya has the audacity to point the finger at everyone else—including this Court and its prior counsel, Eversheds Sutherland's Global Co-Head of International Arbitration William T. O'Brien—for the bed it made for itself. Libya's intransigence is the antithesis of any "efforts to comply" with discovery obligations, such as those undertaken by Argentina according to the Statement of Interest. Moreover, despite Libya's plain disregard for its discovery obligations and this Court's authority, Etrak sought and this

Court ordered only measured monetary sanctions targeted to encourage compliance with the Federal Rules and this Court's orders, in stark comparison with the "*at least $1 million per day*" addressed in the Statement of Interest.

Additionally, the Statement of Interest confirms that the law in the D.C. Circuit is on Etrak's side. First, the Statement of Interest acknowledges that the Supreme Court held in *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134 (2014) that the Foreign Sovereign Immunities Act ("FSIA") does not limit post-judgment discovery, such that the usual discovery rules under the Federal Rules of Civil Procedure apply to discovery issued to foreign sovereign judgment debtors. *See* ECF No. 90-1, at 1; 573 U.S. at 145-46; *see also id.* at 138-39 ("The rules governing discovery in postjudgment execution proceedings are quite permissive. Federal Rule of Civil Procedure 69(a)(2) states that, '[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person—including the judgment debtor—as provided in the rules or by the procedure of the state where the court is located.' The general rule in the federal system is that, subject to the district court's discretion, '[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense.'" (internal citations omitted)).

Second, though the Statement of Interest disputes that sanctions *should* be available against a foreign sovereign, it also acknowledges that the D.C. Circuit has already held that they *are* available in such cases. In *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373 (D.C. Cir. 2011), the D.C. Circuit affirmed a district court's monetary sanction of the Congo for its deficient post-judgment discovery responses, dismissing the same arguments that Libya raises here. The court reasoned, "there is not a smidgen of indication in the text of the FSIA that Congress intended to limit a federal court's inherent contempt power." *Id.* at 378.

Indeed, the D.C. Circuit quotes the House Report to the FSIA, which confirms that "*appropriate remedies would be available under Rule 37, F.R. Civ. P., for an unjustifiable failure to make discovery*." *Id.* (emphasis in original). For this reason, the D.C. Circuit held "that contempt sanctions against a foreign sovereign are available under the FSIA." *Id.* at 379; *see also Commissions Imp. Exp. S.A. v. Republic of the Congo*, No. CV 13-713 (RJL), 2017 WL 6626205, at *2 (D.D.C. Mar. 31, 2017) (ordering same monetary sanctions against Congo as this Court). Though the *FG Hemisphere* opinion deals specifically with monetary sanctions, its reasoning applies with equal force to all sanctions available under Rule 37, including "directing that [certain] designated facts be taken as established" or "prohibiting the disobedient party from supporting or opposing claims or defenses." *See* Fed. R. Civ. P. 37(b)(2)(A). It is therefore of little use for Libya to rely on the Statement of Interest to say that Rule 37 sanctions should be unavailable here, because the D.C. Circuit has already held to the contrary.

**B. The Statement of Interest cannot save Libya's waived and unfounded relevance objection.**

Libya's Supplemental Brief argues that post-judgment discovery requests are not relevant if they could sweep in information regarding assets of a state agency or instrumentality, located outside the United States, not used for commercial activity, or "categorically exempt[ed] from execution" under the FSIA. ECF No. 97, at 4. Setting aside for a moment that this Court already correctly held that Libya waived any relevance objections, Libya's arguments are without merit as explained below.

First, Etrak is entitled to conduct post-judgment discovery into Libya's state agencies. A foreign sovereign, like any other litigant in receipt of post-judgment discovery requests, must respond and provide responsive information and/or documents that are within its possession, custody, or control. *See, e.g.*, *Owens v. Republic of Sudan*, No. CV 01-2244 (JDB), 2020 WL

4039302, at *4 (D.D.C. July 17, 2020) ("As to [the foreign sovereign judgment debtor's] instrumentalities, if [such debtor] owns or controls a particular entity, any documents in that entity's possession are likely also within [the debtor]'s control and therefore subject to discovery. . . . Indeed, under Rules 33 and 34, a party against whom discovery is sought is under an obligation to actively search for relevant information it may not be aware of but is entitled to access."); *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 96 (D.D.C. 2017) (same); *see also LLC SPC Stileks v. Republic of Moldova*, No. 14-CV-1921 (CRC), 2023 WL 2610501, at *6 (D.D.C. Mar. 23, 2023) (permitting post-judgment discovery into assets of Moldova's agencies or instrumentalities). This rule extends even to a state agency's information and/or documents where the state has the ability to obtain them. *See, e.g.*, *Owens*, 2020 WL 4039302, at *4; *Amduso*, 288 F. Supp. 3d at 96; *LLC SPC Stileks*, 2023 WL 2610501, at *6. In failing to timely respond to Etrak's discovery requests, oppose Etrak's motion to compel, or respond to this Court's Show Cause Order, Libya likewise failed to demonstrate any such inability to obtain agency documents or information.

The Statement of Interest nevertheless suggests that discovery regarding state agencies is only permissible where factors announced in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) ("*Bancec*") are satisfied. *See* ECF No. 90-1, at 9-11. But courts in this circuit routinely confirm that the requisite possession, custody, or control does not necessitate a finding under *Bancec*. *See, e.g.*, *Owens*, 2020 WL 4039302, at *4; *Amduso*, 288 F. Supp. 3d at 96; *LLC SPC Stileks*,[2] 2023 WL 2610501, at *6; *see also Petruss Media Grp., LLC v. Advantage Sales & Mktg. LLC*, No. 22-CV-3278-RC-ZMF, 2025 WL 914076, at *4 (D.D.C. Mar. 26, 2025) ("As this Court has previously explained in this case,

---

[2] Though these cases likewise demonstrate that post-judgment discovery into a state agency is permissible where the *Bancec* factors are satisfied. *See, e.g.*, *Owens*, 2020 WL 4039302, at *4.

'[d]iscovery attempting to ascertain whether a judgment debtor has an alter ego concerning its assets, and whether it transferred its assets to that alter ego to defeat execution of the judgment, is perfectly proper.'"). In any case, Etrak has already established the *Bancec* factors here with respect to Libya and its National Oil Corporation ("LNOC"), and Etrak points this Court to a judgment of the Paris Court of Appeal permitting execution against LNOC assets of a judgment against Libya due to the LNOC's lack of independence from Libya. *See* ECF No. 68.

With respect to Libya's suggestion that discovery requests are not "relevant" to the extent they seek information regarding assets allegedly outside of the United States, not used for commercial activity, or "categorically exempt[ed] from execution" under the FSIA, *see* ECF No. 97, at 4, the Supreme Court's opinion in *NML Capital, Ltd.* is again instructive. There, the Supreme Court acknowledged that "the reason for [post-judgment discovery] is that [the judgment creditor] *does not yet know* what property [the foreign sovereign judgment debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's laws." 573 U.S. at 144. Thus, requests are relevant when they seek "information about [the judgment debtor's] assets generally, so that [the judgment creditor] can identify where [the judgment debtor] may be holding property that *is* subject to execution," as opposed to requests that *specifically seek* information that could not possibly lead to executable assets in the United States or abroad—e.g., requests for information about property "used in connection with a military activity" and "of a military character." *See id.* at 144-45; *see also* 28 U.S.C. § 1611(b)(2). The Supreme Court assumed that even the relevant requests about "worldwide assets generally" would "turn up information about property that [the judgment debtor] regards as immune," but that the judgment creditor regards as "*not* immune." *Id.* at 145. The Supreme Court then reasoned that in such cases the judgment debtor's "self-serving legal assertion [of immunity would] not automatically

prevail." *Id.* Any contrary rule allowing a foreign state judgment debtor to avoid identifying an asset based solely upon its own conclusion that such asset is immune from execution would effectively abrogate Rule 69(a)(2).

From the Supreme Court's reasoning *NML Capital, Ltd.*, at least the following two conclusions are evident: First, the Supreme Court did not limit its view of discoverable "executable" assets to only those that are executable in the United States. Otherwise, its reasoning would not confirm the judgment creditor's ability to conduct discovery into the foreign sovereign judgment debtor's worldwide assets. Nor would it have so strongly rebuked the dissent's conclusion that post-judgment discovery is limited to assets within the United States unless the judgment creditor proves that the information sought is relevant to execution under the laws of the foreign jurisdiction. *See* 573 U.S. at 145 n.4. In accordance with *NML Capital, Ltd.*, courts in this circuit permit discovery into worldwide assets. *See e.g.*, *Amduso*, 288 F. Supp. 3d at 97 ("District courts may order discovery related to assets abroad, even though plaintiffs may have to seek execution on those assets from a foreign court.").[3] Second, a foreign sovereign judgment debtor cannot rely upon its own determination that assets are not used for commercial activities or are exempted from execution.[4] *See id.* at 145. Courts repeatedly have recognized that permitting blanket immunity assertions to defeat post-judgment discovery "would create an untenable catch-22, requiring petitioners to prove assets are not immune before obtaining the

---

[3] Even if this Court disagrees, it is not as though Libya objected and provided information or documents related to its assets within the United States. Libya did nothing until well after this Court's last-ditch Show Cause deadline. In doing so, it waived its objections, as this Court has already ruled. ECF No. 49.

[4] Libya's arguments are further problematic in suggesting that there are no circumstances in which discovery should be allowed from or relating to a central bank. *See* ECF No. 97, at 4. Though assets of a central bank receive heightened protection "from attachment and from execution" under the FSIA, such protection is not absolute. Even with respect to attachment and execution as opposed to discovery, central bank immunity extends only to funds held by the central bank "for its own account." *See* 28 U.S.C. § 1611.

information necessary to make that determination." *See, e.g.*, *Stati v. Republic of Kazakhstan*, No. 19 Misc. 382 (PAE), 2024 WL 3442663, at *5 (S.D.N.Y. July 17, 2024); *see also Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 35 (D.D.C. 2015) ("Because it would be fundamentally unfair to Continental to do so, this Court will not impose the perhaps impossible burden on Continental to demonstrate, as a threshold matter, what Nigerian assets are subject to execution under the FSIA before permitting discovery concerning those assets to proceed.").

The Statement of Interest cannot save Libya's relevance arguments, which are both waived and wrong.

### C. Libya must take its reciprocity and comity concerns to Congress.

The remaining reciprocity and comity concerns raised in the Statement of Interest or Supplemental Brief do nothing to call into question Etrak's discovery and this Court's related orders. The Supreme Court reasons that such "apprehensions are better directed to that branch of government with authority to amend the FSIA." *See NML Capital, Ltd.*, 573 U.S. at 146. More importantly, "comity is a two-way street." *See, e.g.*, *NML Capital, Ltd. v. Republic of Argentina*, 2015 WL 1087488, at *7 (S.D.N.Y. Mar. 12, 2015). Libya in the name of comity asks this Court to deny Etrak the post-judgment discovery to which it is entitled, though if Libya were in fact concerned with comity it would simply honor this Court's judgment and obviate the need for any post-judgment discovery. *See id.* (reasoning that comity would urge a foreign sovereign to honor a U.S. court's judgment). Libya instead chooses to flout this Court's judgment and authority while further arguing that this Court cannot sanction it for its contempt.

Libya's appeals to reciprocity or comity arguments fail.

**CONCLUSION**

Etrak's post-judgment discovery and this Court's Show Cause Order are sound. This Court should decline Libya's thinly veiled request for reconsideration; confirm its prior order (ECF No. 49) granting Etrak's Motion to Compel, holding that Libya waived its objections by failing to respond and raise them timely, and issuing sanctions for Libya's ongoing failure to provide full and complete discovery responses and document productions; and affirm Etrak's right to conduct post-judgment discovery by denying LNOC's Motion for Protective Order (ECF No. 66) and granting Etrak's Motion to Strike (ECF No. 67) and Motion for Contempt (ECF No. 76), all as previously argued by Etrak.

**DATED:** April 21, 2026

Respectfully submitted,

/s/ *Molly L. Wells*
Molly L. Wells (*pro hac vice*)
Benjamin D. Reichard (*pro hac vice*)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
mwells@fishmanhaygood.com
breichard@fishmanhaygood.com

Gladstone N. Jones, III (*pro hac vice*)
Lynn E. Swanson (*pro hac vice*)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Verrill Advocacy, LLC
Suite M-100
1055 Thomas Jefferson St. NW

Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record this date via the Court's CM/ECF system.

/s/ Molly L. Wells
Molly L. Wells

11