**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ,<br>Plaintiff,<br><br>v.<br><br>STATE OF LIBYA,<br><br>Defendant. | Case No. 22-cv-864 (JMC) |

## ORDER

Plaintiff Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi served subpoenas upon the National Oil Corporation of Libya (NOC) during post-judgment discovery proceedings in this action against the State of Libya. ECF 66-3. NOC filed a motion for a protective order claiming that it is a foreign instrumentality separate and distinct from Libya and not subject to this Court's jurisdiction. Etrak opposed. At this stage, the Court does not have the factual record necessary to resolve the Parties' dispute about the relationship between NOC and Libya. Accordingly, the Court will deny NOC's motion for a protective order without prejudice, allow jurisdictional discovery, and set deadlines for further proceedings on this issue.[1]

The Foreign Sovereign Immunities Act (FSIA) "provides the sole basis for obtaining jurisdiction over a foreign sovereign in the United States." *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 611 (1992). "Under the Act, a foreign state *shall* be immune from the jurisdiction of the courts of the United States and of the States unless one of several statutorily defined

[1] Unless otherwise indicated, the formatting of citations has been modified throughout this order, for example, by omitting internal quotation marks, emphases, citations, and alterations and by altering capitalization. All pincites to documents filed on the docket in this case are to the automatically generated ECF Page ID number that appears at the top of each page.

exceptions applies." *Id.* at 610–11. This Court has already determined that Etrak holds "an authentic arbitration award" against Libya and that the Court has subject matter jurisdiction over Libya pursuant to the FSIA's arbitration exception. ECF 36 at 5–7.

Libya has not paid the judgment Etrak holds against it, and Etrak has served post-judgment discovery to identify assets that could be used to satisfy that outstanding judgment. Part of those efforts involved serving a subpoena on NOC, which Etrak believes has executable Libyan assets. The subpoenas sought information about NOC's resources and its relationship to Libya. NOC, however, insists that it is not subject to post-judgment discovery. In its motion for a protective order, NOC claims that the Court lacks subject matter jurisdiction over it because it is a separate "agency or instrumentality of Libya," which is "itself a 'foreign state' under the FSIA." ECF 66-1 at 6, 11. NOC then argues that no "exception to immunity applies" to it because it is not a party to the underlying action, including the arbitration proceedings giving rise to these proceedings. *Id.* at 11. Etrak opposes because it contends that NOC is Libya's "alter ego" and thus should not be considered a separate entity from Libya for purposes of post-judgment discovery. ECF 68 at 30. The question thus comes down to the relationship between NOC and Libya—whether NOC is a foreign instrumentality that is distinct from Libya or whether it is Libya's alter ego. If NOC is Libya's alter ego, the Court would have the same jurisdiction over it that it has over Libya. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 932 F.3d 126, 138 (3d Cir. 2019) (recognizing that "the District Court's jurisdiction over Venezuela would extend to PDVSA [(Venezuela's state-owned oil company)] so long as it is Venezuela's alter ego…").

To assess the Parties' arguments, the Court must apply the test laid out in *First National City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983) (*Bancec*). Generally, there is a "presumption" that a foreign government's "instrumentality is to be accorded separate

legal status." *Id.* at 628. Courts consider the following (*Bancec*) factors to determine whether that presumption should be rebutted:

> (1) the level of economic control by the government;
> (2) whether the entity's profits go to the government;
> (3) the degree to which government officials manage the entity or otherwise have a hand in its daily affairs;
> (4) whether the government is the real beneficiary of the entity's conduct; and
> (5) whether adherence to separate identities would entitle the foreign state to benefits in United States courts while avoiding its obligations.

*Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 210 (2018).

The current record does not allow the Court to undertake a fulsome analysis of these factors. Etrak has supplied the Court with some public documents, including news articles and press releases, as well as an expert report. ECF 68-1. This information, "both in the form of expert opinion and admissions attributed to defendants' own agents," for example NOC employees' statements in some of the public documents, certainly "give[s] rise to a colorable factual dispute" about whether NOC is an alter ego of Libya. *Funk v. Belneftekhim*, 861 F.3d 354, 367 (2d Cir. 2017).[2] But the Court does not believe that the record is developed enough to answer the question.

Etrak has asked that the Court provide it an opportunity to take jurisdictional discovery if the Court determines that it has not made a sufficient showing to establish jurisdiction. ECF 68 at

[2] In other cases, courts have relied upon sworn declarations to establish the relationship between a sovereign and its state-controlled entity. *See, e.g., Helmerich & Payne Int'l Drilling Co. v. Petroleos de Venezuela, S.A.*, 754 F. Supp. 3d 29, 48–50 (D.D.C. 2024) (relying upon the declaration of Venezuelan legal expert for plaintiffs Marcos Ruben Carrillo Perera in its *Bancec* analysis), *aff'd sub nom. Helmerich & Payne Int'l Drilling Co. v. Venezuela*, 153 F.4th 1316 (D.C. Cir. 2025) (noting that "after jurisdictional discovery, the court painstakingly reviewed the evidence supporting an alter-ego determination"); *Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, 333 F. Supp. 3d 380 (D. Del. 2018) (relying on, among other sources, "six substantive declarations and hundreds of exhibits" to analyze the relationship between Venezuela and its state-owned oil corporation), *aff'd and remanded*, 932 F.3d 126, 147–48 (3d Cir. 2019) (citing, for example, plaintiff's economic expert Dr. Roberto Rigobon's declaration to determine that "Venezuela controls PDVSA's debt structure" and that "PDVSA pays extraordinary taxes" to the Venezuela government); *see Crystallex*, 932 F.3d at 148 ("Crystallex introduced a declaration from Jose Ignacio Hernandez, a Venezuelan legal academic, which notes that it has been commonplace since 2002 for PDVSA's president also to serve as Venezuela's oil minister."); *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 21 F. Supp. 2d 47, 51–53 (D.D.C. 1998) (conducting Bancec analysis based on Bradley Declaration and Barroeta Declaration), *dismissed in part, remanded in part*, 200 F.3d 843 (D.C. Cir. 2000).

14. "A district court is typically within its discretion to order jurisdictional discovery where a plaintiff has made out a prima facie case for jurisdiction." *Funk*, 861 F.3d at 366. Accordingly, the Court will grant Etrak's request. Allowing such discovery will afford "ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *Phoenix Consulting Inc. v. Republic of Angola*, 216 F.3d 36, 40 (D.C. Cir. 2000); *see also Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990) ("Since entitlement of a party to immunity from suit is such a critical preliminary determination, the parties have the responsibility, and must be afforded a fair opportunity, to define issues of fact and law, and to submit evidence necessary to the resolution of the issues."). The Court also notes that there are outstanding discovery requests to Libya, which are the subject of a forthcoming Court order, that may be helpful to the Court's task in assessing the relationship between Libya and NOC once obtained. *See, e.g.*, ECF 42-3 at 2 (discovery requests asking for information about "Identified State Controlled Entities" including NOC).

Accordingly, NOC's motion for a protective order is **DENIED** without prejudice. The Court also **ORDERS** that Etrak is permitted to take jurisdictional discovery, if necessary, on factors relevant to the *Bancec* inquiry. The Court **FURTHER ORDERS** that the Parties shall submit a joint jurisdictional discovery plan on or before October 5, 2026, as well as an agreed upon deadline for a renewed motion for a protective order or motion to enforce Etrak's subpoena to NOC, which will include any supplemental declarations, exhibits, or other evidence that either Party seeks to submit and that would permit the Court to assess the relationship between NOC and Libya.

**SO ORDERED.**

JIA M. COBB
United States District Judge

Date: September 4, 2026