**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---------------------------------------------------------------- X

| | | |
|---|---|---|
| ETRAK İNŞAAT TAAHHÜT VE TİCARET ANONİM ŞİRKETİ, | : | |
| Plaintiff, | : | |
| -against- | : | Case No. 1:22-cv-00864-JMC |
| THE STATE OF LIBYA, | : | |
| Defendant. | : | |

---------------------------------------------------------------- X

**RESPONSE TO THE STATE OF LIBYA'S SECOND NOTICE OF SUPPLEMENTAL AUTHORITY**

Petitioner Etrak İnşaat Taahhüt Ve Ticaret Anonim Şirketi ("Etrak") respectfully files this Response to Respondent The State of Libya ("Libya")'s Second Notice of Supplemental Authority (ECF No. 105) ("Second Notice"). Libya's Second Notice relies on an amicus brief filed by the U.S. Department of Justice in *PAO Tatneft v. Ukraine*, No. 26-7042 (D.C. Cir. Aug. 27, 2026) (the "Tatneft Brief").

## INTRODUCTION

Libya's Second Notice is its latest in a series of improper attempts to relitigate this Court's prior rulings. The threshold answer to each of Libya's arguments is the same: this Court has already held that Libya waived all objections to Etrak's discovery requests. *See* ECF No. 49. Libya's present arguments—that comity requires limiting discovery, that discovery may not reach assets outside the United States, and that discovery must be confined to "executable" assets—are the same objections that this Court ordered waived. Libya cannot undo that waiver by citing a DOJ

amicus brief from an unrelated case. This Court may reject all of Libya's arguments in its Second Notice and all other briefing on that ground alone, without reaching the merits.

But even if the Court were to reach the merits of Libya's untimely arguments, each one fails. The Tatneft Brief arises from distinguishable facts. In *Tatneft*, the DOJ urged caution because the judgment creditor—a Russian oil and gas company with "close ties to the Russian government"—sought sweeping discovery against Ukraine while Russia was prosecuting a full-scale invasion of that country. The DOJ's concern was that discovery would be "misused by Russia for non-litigation purposes that undermine the United States' national security interests by furthering the Russia–Ukraine war." Those wartime concerns are not remotely implicated here.

As explained below, the Tatneft Brief does not support Libya's position in this case, and controlling authority forecloses each of Libya's three arguments.

## LAW AND ARGUMENT

### A. The Tatneft Brief cannot revive arguments waived and is distinguishable in any case.

In its Show Cause Order, ECF No. 49 (Sept. 19, 2025), this Court held that Libya waived all objections to Etrak's discovery requests. The Court found waiver based on Libya's deliberate strategy of contempt: withdrawing counsel, refusing substitute counsel, failing to respond to Etrak's discovery requests and motion to compel, and failing to respond to the Show Cause Order. Despite that ruling, Libya has served nothing but the very objections this Court found waived. Libya cannot resuscitate those waived objections by citing a DOJ brief from an unrelated case, and the Court may reject Libya's arguments on waiver grounds alone.

Even setting waiver aside, the Tatneft Brief provides no support for Libya's position. The brief arises from an extraordinary set of facts: an active armed conflict between Russia and Ukraine, a judgment creditor with documented ties to the Russian government, and credible

evidence that discovery would compromise Ukraine's national security and ongoing peace negotiations. The Tatneft Brief's reasoning is expressly tethered to the "concrete threat that post-judgment discovery will be used to benefit Russia's continued prosecution of the war." ECF No. 105-1, at 23. That threat does not exist here.

**B. Comity does not require limiting Etrak's discovery.**

The comity concerns identified in the Tatneft Brief were allegedly "strong" due to the ongoing conflict between Russia and Ukraine conflict. That is simply not the case here.

Additionally, comity is a reciprocal equitable principle, not a one-way shield for a party that defies the Court whose protection it seeks. As federal courts have repeatedly held, "comity is a two-way street." *See NML Capital, Ltd. v. Republic of Argentina*, 2015 WL 1087488, at *7 (S.D.N.Y. Mar. 12, 2015). Libya has forfeited any equitable appeal to comity through its ongoing defiance—flouting this Court's judgment, defying its discovery orders, ignoring its Show Cause Order, and continuously failing to provide meaningful responses to Etrak's discovery. Libya cannot ask this Court to invoke comity against Etrak while refusing to honor the judgment and orders that bind Libya. And its comity concerns are more appropriately raised with Congress in any case. *See Republic of Argentina v. NML Cap., Ltd.*, 573 U.S. 134, 146 (2014). Indeed, Congress enacted the FSIA to address comity concerns, and it included no discovery immunity. *See, e.g.*, *Rubin v. Islamic Republic of Iran*, 583 U.S. 202, 208-09 (2018) (regarding FSIA's "careful balance" between comity and accountability).

**D. Post-judgment discovery is not limited to assets within the United States.**

Post-judgment discovery is not limited to Libya's assets in the United States. First, the U.S. Supreme Court specifically rejected the argument that the FSIA limits post-judgment discovery to assets within the United States, concluding that the FSIA contained no discovery immunity

whatsoever. The Supreme Court reasoned that "the reason for [post-judgment discovery] is that [the judgment creditor] does not yet know what property [the sovereign] has and where it is, let alone whether it is executable under the relevant jurisdiction's laws." *NML Cap., Ltd.*, at 144-45 & n.4; *see also, e.g.*, *Blasket Renewable Invs., LLC v. Spain*, No. CV 20-1081 (BAH), 2026 WL 1236125, at *4 (D.D.C. Apr. 10, 2026) (affirming that the FSIA includes no discovery immunity and specifying that, as a result, *a judgment creditor may conduct discovery into a sovereign debtor's assets prior to obtaining any order under section 1610(c)*).

Second, the "permissive" scope of Rules 26 and 69 of the Federal Rules of Civil Procedure unquestionably permits discovery into worldwide assets. Courts in this circuit repeatedly have affirmed as much. *See NML Cap., Ltd.*, 573 U.S. at 138 ("The rules governing discovery in postjudgment execution proceedings are quite permissive."); *see also, e.g.*, *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 376, 380 (D.C. Cir. 2011) (affirming monetary contempt sanctions for noncompliance with a discovery order encompassing assets both within and outside the United States); *Amduso v. Republic of Sudan*, 288 F. Supp. 3d 90, 97 (D.D.C. 2017) ("District courts may order discovery related to assets abroad, even though plaintiffs may have to seek execution on those assets from a foreign court.").[1] Such a rule is not only well-documented but necessary. Discovery limited to assets in the United States is of little use against a judgment debtor dead set on dodging payment and at a time where so many assets are mobile. *See, e.g.*, *Stati v. Republic of Kazakhstan*, No. 19 MISC. 382 (PAE), 2024 WL 3442663, at *7 (S.D.N.Y. July 17, 2024) (reasoning that limiting post-judgment discovery against a sovereign to assets located within the United States would merely "incent foreign sovereigns to move their

---

[1] *See also, e.g.*, *In re Motion to Compel Compliance with Subpoena Directed to Cooke Legal Grp., PLLC*, 333 F.R.D. 291, 296 (D.D.C. 2019) (permitting discovery into Sudanese assets outside U.S.); *SAS Inst., Inc. v. World Programming Ltd.*, No. 5:10-CV-25-FL, 2018 WL 1144585, at *2 (E.D.N.C. Mar. 2, 2018) (holding Rule 69 permits post-judgment discovery into extraterritorial assets).

assets abroad to evade judgment enforcement”). A complete picture of assets and any business dealings affecting them is necessary to give Rule 69 its intended effect.

**C. Etrak is not required to prove assets are “executable” before obtaining discovery.**

Libya’s argument that discovery must be confined to assets Etrak can show are “executable” *without the discovery* was squarely rejected by the Supreme Court. Courts in this circuit have consistently held that requiring proof of executability as a threshold for discovery “would create an untenable catch-22, requiring petitioners to prove assets are not immune before obtaining the information necessary to make that determination.” *See, e.g.*, *Stati*, 2024 WL 3442663, at *5; *Cont’l Transfert Technique Ltd. v. Fed. Gov’t of Nigeria*, 308 F.R.D. 27, 35 (D.D.C. 2015) (reasoning it would be “fundamentally unfair” and refusing to “impose the perhaps impossible burden” “to demonstrate, as a threshold matter,” that “assets are subject to execution under the FSIA before permitting discovery concerning those assets to proceed”). This is unsurprising. If a judgment creditor knew it could show that an asset was executable, it would not seek discovery into that asset. It would execute against it.

## CONCLUSION

Libya’s Second Notice is yet another attempt to avoid compliance with this Court’s orders and to relitigate issues this Court has already decided. Libya’s objections are waived. The Tatneft Brief—a DOJ amicus filing driven by the extraordinary wartime circumstances of the Russia–Ukraine conflict—is inapposite. Comity, geographic limitations, and executability thresholds do not bar Etrak’s discovery, as controlling and persuasive authority from the Supreme Court, the D.C. Circuit, and this Court makes clear. This Court should decline Libya's invitation to reconsider its prior rulings; confirm the holdings of its prior orders; and grant such other relief as the Court deems appropriate, including Etrak’s pending Motion for Contempt (ECF No. 76).

**DATED:** September 14, 2026

Respectfully submitted,

_/s/ Molly L. Wells_
Molly L. Wells (*pro hac vice*)
Benjamin D. Reichard (*pro hac vice*)
**Fishman Haygood LLP**
201 St. Charles Ave., Suite 4600
New Orleans, LA 70170
Tel.: (504) 556-5505
Fax: (504) 586-5250
mwells@fishmanhaygood.com
breichard@fishmanhaygood.com

Gladstone N. Jones, III (*pro hac vice*)
Lynn E. Swanson (*pro hac vice*)
**JONES SWANSON HUDDELL LLC**
601 Poydras Street, Suite 2655
New Orleans, Louisiana 70130
Telephone: (504) 523-2500
Facsimile: (504) 523-2508
gjones@jonesswanson.com
lswanson@jonesswanson.com

Charles Owen Verrill, Jr., Esq.
Bar No. 13245
Verrill Advocacy, LLC
Suite M-100
1055 Thomas Jefferson St. NW
Washington, D.C. 20007
(202) 390-8245
charlesverrill@gmail.com

*Counsel for Etrak*

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served on all counsel of record this date via the Court's CM/ECF system.

_/s/ Molly L. Wells_
Molly L. Wells